# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

                *Plaintiffs*,

v.

DEUTSCHE TELEKOM AG, *et al.*,

                *Defendants*.

Case No. 1:19-cv-02232-TJK

# RESPONSE OF THE UNITED STATES TO
# STATES' MOTION TO FILE BRIEF AS AMICI CURIAE

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................ 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.  The Litigating States' "Amicus Brief" Is Procedurally Improper. ............................. 4

II. The Litigating States' Request Also Fails on the Merits. ......................................... 6

    A.  Legal Standard for Motions to Stay ...................................................................... 6

    B.  Granting the Litigating States' Request Would Prejudice the Public Interest, the United States, and DISH. ......................................................................................... 7

    C.  This Court's Review of the Settlement in This Case Is Governed by a Different Statute, the Tunney Act, and Would in No Way "Interfere" with Judge Marrero's Analysis Under the Clayton Act in the S.D.N.Y. Litigation. ...................................... 10

    D.  Granting the Litigating States' Request Would Not Promote Judicial Economy and Indeed May Lead to the Inefficient Use of Taxpayer Resources. ............................ 13

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Artis-Bey v. Thornburgh*, No. 88-3240, 1989 U.S. Dist. LEXIS 6868 (D.D.C. 1989)..................4

*Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724 (D.C. Cir. 2012)....................................6, 7

*Companion Life Ins. Co. v. Matthews*, 547 F. Supp. 836 (S.D.N.Y. 1982)..................................6

*Dellinger v. Mitchell*, 442 F.2d 782 (D.C. Cir. 1971).......................................................................7

*Ford Motor Co. v. United States*, 405 U.S. 562 (1972).................................................................11

*Heckler v. Chaney,* 470 U.S. 821 (1985) ...................................................................................9, 14

\**Landis v. N. Am. Co.*, 299 U.S. 248 (1936).........................................................................6, 10, 13

*Maryland v. United States,* 460 U.S. 1001 (1983) ......................................................................11

\**Nat'l Indus. for the Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131 (D.D.C. 2017)....7, 12

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061 (N.D. Cal. 2005) .......5

*Nken v. Holder*, 556 U.S. 418 (2009) ...........................................................................................6

*Puritan Sportswear Corp. v. Puritan Fashions Corp.*, 232 F. Supp. 550 (S.D.N.Y. 1964)...........6

*Sierra Club v. Salazar*, 177 F. Supp. 3d 512 (D.D.C. 2016) .........................................................5

*United States v. Aetna, Inc.*, 240 F. Supp. 3d 1 (D.D.C. 2017) ....................................................11

*United States v. AT&T,* 552 F. Supp. 131 (D.D.C. 1982).............................................................11

*United States v. Enova Corp.*, 107 F. Supp. 2d 10 (D.D.C. 2000) ................................................14

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952)..............................................15

*United States v. Michigan*, 940 F.2d 143 (6th Cir. 1991)...............................................................5

\**United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) ...............................9, 11, 14, 16

*United States v. Phillip Morris USA Inc.*, 841 F. Supp. 2d 139 (D.D.C. 2012) ............................6

*United States v. US Airways Group, Inc.*, 38 F. Supp. 3d 69 (D.D.C. 2014) ...............................13

*Virginian R. Co. v. United States*, 272 U.S. 658 (1926) ....................................................6

*Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542 (7th Cir. 2003)................................4

*WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41 (D.D.C. 2019)....................................4

*Woodford v. Ngo*, 548 U.S. 81 (2006) ..............................................................................15

*Wrenn v. Dist. of Columbia*, 179 F. Supp. 3d 135 (D.D.C. 2016)......................................6

**Statutes**

*15 U.S.C. § 16 .........................................................................................3, 11, 12, 14

15 U.S.C. § 18 ......................................................................................................2, 10

**Rules**

United States District Court for the District of Columbia Local Civil Rule 7(o)(1) ..............4, 5, 6

## SUMMARY OF ARGUMENT

Plaintiff the United States of America hereby responds to the Motion to File Brief as *Amici Curiae* submitted by a group of state attorneys general ("Litigating States") that have filed a lawsuit in the United States District Court for the Southern District of New York seeking to enjoin T-Mobile's proposed acquisition of Sprint ("S.D.N.Y. Litigation"). The Litigating States purport to rely on a local rule permitting government entities to file *amicus* briefs to submit what amounts to a *de facto* motion to stay this Court's proceedings. They cite no case supporting this extraordinary approach, and the Court should deny their request on procedural grounds alone.

If the Court nevertheless decides to entertain the Litigating States' request, the Court should evaluate it under the standard that applies to motions to stay. The request fails to meet this standard. First, the Litigating States fail to acknowledge the substantial public interest benefit from expeditious entry of the proposed Final Judgment ("PFJ"), which would trigger T-Mobile's obligation to prepare its network for DISH subscribers, a crucial step for DISH to begin offering mobile wireless services. Some of the benefits from this proposed merger and pending settlement hinge on DISH entering as a new mobile wireless services competitor, and no useful purpose would be served by delaying the deadline to enable that entry.

Second, and contrary to the Litigating States' claim, a decision by this Court would not "interfere" with the court's analysis in the S.D.N.Y. Litigation. The two cases present different legal questions evaluated under different statutes, and the issue in this case logically precedes the issue in the S.D.N.Y. Litigation. Rather than interfere with Judge Marrero's analysis, a determination by this Court as to whether the PFJ satisfies the Tunney Act could well narrow and simplify the question before him under Section 7 of the Clayton Act.

1

Finally, judicial economy dictates that this Court should deny the Litigating States' request and move forward with these proceedings.  Courts routinely make Tunney Act determinations based solely on the Competitive Impact Statement, the comments filed by the public, and the response filed by the Department of Justice ("Department").  The Litigating States' suggestion that this Court review the entirety of the evidentiary record in another trial in a different court with different parties that will not conclude for months would fly in the face of both D.C. Circuit precedent and Congress's intent for courts to adduce the information necessary for Tunney Act determinations through the least complicated and least time-consuming means possible.  It would also raise serious constitutional concerns.  Nor should the Court delay these proceedings based on the mere possibility that the S.D.N.Y. Litigation could render a Tunney Act review unnecessary.  Doing so would set a harmful precedent that would threaten the Department's ability to settle its cases in an efficient manner.

## BACKGROUND

On June 11, 2019, the Litigating States filed a complaint in the United States District Court for the Southern District of New York alleging that T-Mobile's acquisition of Sprint would violate Section 7 of the Clayton Act, 15 U.S.C. § 18, and asking the court to issue an injunction barring the merger.  Complaint, *State of New York v. Deutsche Telekom*, No. 19-5434 (S.D.N.Y. June 11, 2019).  On June 21, 2019, United States District Judge Victor Marrero scheduled that trial to begin on October 7, 2019.  Scheduling Order, *State of New York v. Deutsche Telekom*, No. 19-5434 (S.D.N.Y. June 21, 2019).

On July 26, 2019, the United States and the States of Kansas, Nebraska, Ohio, Oklahoma, and South Dakota ("Settling States") filed a complaint in this Court alleging that the transaction would violate Section 7, along with a proposed settlement that resolves those allegations for the

Court's review under the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16 ("APPA" or "Tunney Act").  Dkt. Nos. 1-2.  Since this initial filing, Plaintiffs have amended their complaint to add the State of Louisiana as a plaintiff, *see* Dkt. No. 28, and have moved to amend their complaint a second time to add the State of Florida as an additional plaintiff, *see* Dkt. No. 33.

On August 5, 2019, Judge Marrero granted the Litigating States' request to delay their trial until December 9, 2019.  Scheduling Order, *State of New York v. Deutsche Telekom*, No. 19-5434 (S.D.N.Y. Aug. 5, 2019).  The Litigating States had argued that they needed more time in order to incorporate into their case the Defendants' proposed settlement with the Department and the Settling States.  *See* Letter from Glenn D. Pomerantz to Hon. Robert W. Lehrburger, *State of New York v. Deutsche Telekom*, No. 19-5434 (S.D.N.Y. July 15, 2019) ("Pomerantz July 15 Letter"); Letter from Glenn D. Pomerantz to Hon. Robert W. Lehrburger, *State of New York v. Deutsche Telekom*, No. 19-5434 (S.D.N.Y. July 31, 2019).

As discovery in the S.D.N.Y. Litigation has moved forward, the Plaintiffs in this case have likewise advanced the process required under the Tunney Act for this Court's review of the PFJ.  On July 30, 2019, the United States filed a Competitive Impact Statement explaining, among other things, how the PFJ addresses the harms alleged in the complaint.  Dkt. No. 20.  On August 3-9, 2019, T-Mobile caused a newspaper notice regarding the proposed settlement to be published in the Washington Post.  On August 12, 2019, the United States published notice of its filings in this case in the Federal Register, initiating a 60-day public comment period.  *See* 84 Fed. Reg. 39,862 (Aug. 12, 2019).  That comment period concluded on October 11, 2019.  The United States received 31 comments regarding the proposed settlement—21 comments in

support of the merger and/or settlement and 10 in opposition.[1]  The United States plans to file its response to these comments and a motion to enter the PFJ in the coming weeks.

The Litigating States now ask this Court to stay its determination of whether the PFJ satisfies the Tunney Act until after the S.D.N.Y. Litigation has concluded.[2]  Due to the delay sought by the Litigating States, the trial is scheduled to begin on December 9, 2019 and to last for two-to-three weeks.  *See* Order, *State of New York v. Deutsche Telekom*, No. 19-5434 (S.D.N.Y. Sept. 25, 2019).  After accounting for the additional time that will be required for Judge Marrero to issue a decision in that case and the time lost by suddenly halting this court's proceedings, the Litigating States' unprecedented proposed approach would prevent resolution of this Tunney Act review until well into 2020.

## ARGUMENT

### I.    The Litigating States' "Amicus Brief" Is Procedurally Improper.

The Litigating States rely on Local Civil Rule 7(o)(1) for authority to file what they call an *amici curiae* brief.  *Amicus* briefs are appropriate where "'the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs.'"  *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 59 (D.D.C. 2019) (quoting *Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003)).  *Amici* generally are not considered to be "parties" to an action.  *Artis-Bey v. Thornburgh*, No. 88-3240, 1989 U.S. Dist. LEXIS 6868, at *3 (D.D.C. 1989).  Thus, courts impose restrictions on the extent to which *amici* may request relief that has not been requested by a party or raise issues that have not been

---

[1] This represents the total number of comments that the United States has received as of the date of this filing.  There may be additional comments that were postmarked by the October 11 deadline but that the Department has not yet received.

[2] It is not clear whether all of the Litigating States join in the motion, which was only signed by New York.  At a minimum, one state—Mississippi—has since left the S.D.N.Y. Litigation and another—Colorado—has announced its intention to do the same.

raised by a party. *See, e.g.*, *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1068 (N.D. Cal. 2005) ("[A]n *amicus curiae* is not a party and has no control over the litigation and no right to institute any proceedings in it, nor can it file any pleadings or motions in the case."); *Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 527 n.11 (D.D.C. 2016) (declining to consider issues raised by *amicus* that had not been raised by a party); *United States v. Michigan*, 940 F.2d 143, 163-64 (6th Cir. 1991) (rejecting the notion of a "litigating amicus curiae" that could participate as though it were a party as an improper "legal mutant").

The Litigating States are correct that Rule 7(o)(1) permits government entities to file *amicus* briefs, but their filing is an *amicus* brief in name only. It does not present any "ideas, arguments, theories, insights, facts, or data." Instead, it is devoted entirely to asking the Court for what amounts to a *stay* of this case. Given their desire to rely on *amicus* status, the Litigating States do not expressly request a "stay" and rely instead on words like "sequence," "schedule," and "defer." *See* States' Brief at 2 ("The States are requesting that the Court schedule any hearings and determination under the Tunney Act regarding the Settlement for a date after the Merger Litigation is concluded."); *id.* at 5 ("The decision to defer a public interest determination under the Tunney Act is within the Court's discretion."); *id.* at 8 ("[W]e urge the Court to sequence the Tunney Act proceedings so that this Court can benefit from the full vetting of the merits that will take place in the Merger Litigation."). The Litigating States' request would extend the review of the settlement well beyond the statutory 60-day comment period. Indeed, the merger itself has been pending since April 2018, and the Litigating States would have this court extend it significantly further still.

Tellingly, none of the cases that the Litigating States rely on involve *amici* requesting a stay.[3] No party has requested a stay in this case. The Litigating States cite no case supporting their extraordinary claim that they may seek relief from this Court that no party has requested. They cite no case suggesting that they may do so as *amici*. Moreover, they cite no case suggesting that Rule 7(o)(1) may be exploited for this purpose. The court thus should deny the Litigating States' request on procedural grounds alone.

## II.    The Litigating States' Request Also Fails on the Merits.

If the Court decides to reach the merits of the Litigating States' request, it should apply the legal standard that governs motions to stay. The Litigating States fail to meet this standard in any manner.

### A.   Legal Standard for Motions to Stay

A stay is "not a matter of right" but rather "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672-73 (1926)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* In particular, "a party requesting a stay of proceedings 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Wrenn v. Dist. of Columbia*, 179 F. Supp. 3d 135, 137 (D.D.C. 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

---

[3] States' Brief at 5 (citing *Companion Life Ins. Co. v. Matthews*, 547 F. Supp. 836 (S.D.N.Y. 1982) (stay sought by defendant); *Puritan Sportswear Corp. v. Puritan Fashions Corp.*, 232 F. Supp. 550 (S.D.N.Y. 1964) (stay sought by defendant); *United States v. Phillip Morris USA Inc.*, 841 F. Supp. 2d 139 (D.D.C. 2012) (deferral considered by court on its own initiative); *Belize So. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724 (D.C. Cir. 2012) (stay sought by defendant)).

When considering a motion to stay, "courts must 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties.'"  *Nat'l Indus. for the Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (quoting *Belize Soc. Dev. Ltd.*, 668 F.3d at 732-33); *see also id.* ("In other words, hardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay.").  Where a motion to stay is based on the pendency of a merely related case, that motion should be denied if "there is considerable uncertainty regarding whether or not the [other court] will actually reach the legal issue that is common to these cases."  *See id.* at 142 (citing *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971)). Where, as here, the two cases at issue present no legal issues in common, the rationale for denying a motion to stay is even stronger.

B.    Granting the Litigating States' Request Would Prejudice the Public Interest, the United States, and DISH.

In claiming that the requested stay would not "cause undue prejudice or delay to any interest of the parties," States' Brief at 6, the Litigating States fail to acknowledge the substantial interests of the public, the United States, and DISH in having the PFJ entered promptly.

In addition to other benefits this merger can provide, a main purpose of this settlement "is to preserve competition by enabling the entry of another national facilities-based mobile wireless network operator," PFJ at 2, and granting the Litigating States' request would delay the start of that entry by at least several months to the detriment of the American public.  Before the Prepaid Assets are to be divested to DISH, T-Mobile must first "take all actions required" to enable DISH to have "the ability to provision any new or existing customer of the Prepaid Assets" onto the T-Mobile network, "within ninety (90) days after notice of the *entry of this Final Judgment by the Court*."  PFJ § IV.A.1 (emphasis added).  The Prepaid Asset divestiture can then take

place as soon as fifteen days after this milestone is reached, launching DISH as a mobile wireless services provider.[4]

No useful purpose would be served by extending the deadline for DISH customers to be able to access the T-Mobile network or by delaying the divestiture of the Prepaid Assets.[5]  In the absence of the stay requested by the Litigating States, and barring any further proceedings requested by this Court, the United States expects to file its motion to enter the PFJ as soon as possible in early November.  At that point, the Court will have a record before it that will be sufficient to support a ruling on the motion.  If the PFJ is entered shortly thereafter, DISH could begin providing mobile wireless service as early as the beginning of March.  Under the Litigating States' requested schedule, the ninety-day deadline for T-Mobile to enable DISH to provision customers on T-Mobile's network would not begin to run until after the S.D.N.Y. Litigation has concluded, after post-trial briefing has ended, and, significantly, after Judge Marrero has issued a final and appealable order.  *See* Request at 6.  The Litigating States' request is silent on how they would have this Court proceed were there to be an appeal from Judge Marrero's decision.

Thus, the Litigating States' timeline would undermine the public's interest in reaping the benefits of this settlement through DISH's entry as a provider of mobile wireless services.  Even though the full benefit of the settlement will emerge over time as DISH builds out its network and takes its eventual place as a nationwide facilities-based mobile wireless services provider, the public has a substantial interest in starting DISH on this path as soon as possible.

---

[4] Although it is possible the Prepaid Asset Divestiture may not occur until the later of the consummation of the proposed merger or the receipt of any approvals required from "any material state public utility commission," PFJ § IV.A.1, if those conditions have been satisfied and the PFJ in this case is not entered until after the S.D.N.Y. Litigation is concluded, the deadline for the divestiture to take place would not arrive until after the ninety-day and fifteen-day periods described in the text have run.

[5] Delaying the Prepaid Assets divestiture would also delay a number of other deadlines triggered by the divestiture. *See* PFJ § IV.B.1 (deadline for divestiture of 800 MHz spectrum runs from Prepaid Assets divestiture); IV.C.1 (same re deadline for Cell Site decommissioning); IV.D.1 (same re deadline for Retail Location decommissioning); IV.F (same re deadline for DISH to offer nationwide postpaid retail mobile wireless service).

Similarly, an unnecessary delay in entry of the PFJ would reduce the time period in which DISH will benefit from the PFJ's protections against possible efforts by New T-Mobile to hire back its divested personnel.  In preparation for the Prepaid Assets divestiture, T-Mobile is required to provide certain information to DISH regarding the personnel who support the Prepaid Assets, to make them available for interviews, and to take certain steps in support of DISH's efforts to hire selected personnel.  PFJ § IV.A.2(a)-(c).  The PFJ further states that New T-Mobile "may not solicit to hire, or hire, any Prepaid Assets Personnel" hired by DISH, subject to certain conditions—but only for two years from when the Complaint was filed.  *Id.* § IV.A.2(d).  Thus, the period for which DISH is protected against having its Prepaid Assets Personnel hired away by the merged firm is running now and already has less than two years to run.  Delay in entry of the PFJ until after the S.D.N.Y. Litigation is resolved could result in DISH losing several more months of this protection and would run counter to the public interest in standing DISH up as a viable mobile wireless competitor.

In addition, the United States has a broader interest in ensuring that its proposed settlements are entered in an efficient manner.  So long as a Tunney Act review is pending, the Department must devote resources to it—resources that could otherwise be devoted to matters that the Department has *not* decided to settle.  *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995) (noting in an appeal of a Tunney Act decision that "a settlement, particularly of a major case, will allow the Department of Justice to reallocate necessarily limited resources"); *see also Heckler v. Chaney,* 470 U.S. 821, 831 (1985) (explaining that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion" because the agency must consider, among other things, "whether agency resources are best spent on this violation or another").

DISH also has legitimate interests in prompt entry of the PFJ.  For example, DISH has made commitments to the FCC establishing deadlines by which it must reach 5G network deployment milestones.[6]  DISH's obligation to reach certain milestones by June 14, 2023 was incorporated into the PFJ.  *See* PFJ § VIII.A.  This deadline is a date on the calendar, not one calculated by reference to entry of the PFJ or the closing of the transaction.  Delaying this Court's consideration of the PFJ until after the States Litigation would prejudice DISH by shortening the time available to DISH to comply with its buildout obligations.  In contrast, prompt resolution of this Tunney Act proceeding and entry of the PFJ will put DISH under a court order to work toward fulfilling those obligations now.

C.  <u>This Court's Review of the Settlement in This Case Is Governed by a Different Statute, the Tunney Act, and Would in No Way "Interfere" with Judge Marrero's Analysis Under the Clayton Act in the S.D.N.Y. Litigation.</u>

The Litigating States offer no basis to conclude that they would be prejudiced by allowing this Court to move forward, let alone "a clear case of hardship or inequity."  *See Landis*, 299 U.S. at 255.  Their only attempt to make this showing is an assertion, without explanation, that "a decision on the merits of the [s]ettlement could interfere with Judge Marrero's consideration of the States' claims."  States' Brief at 7.  But the legal question at issue in the S.D.N.Y. Litigation is different than the one at issue here.  Rather than "interfere" with Judge Marrero's analysis, a determination by this Court as to whether the PFJ satisfies the Tunney Act could actually crystallize the question before him.

While the S.D.N.Y. Litigation and this case both involve allegations that the transaction violates Section 7 of the Clayton Act, 15 U.S.C. § 18, they present different legal questions under different statutes.  In the S.D.N.Y. Litigation, Judge Marrero will be tasked with assessing

---

[6] Letter to Donald Stockdale (FCC) from Jeffrey H. Blum (DISH S.V.P. for Public Policy & Government Affairs), July 26, 2019, at Attachment A, *available at* https://www.fcc.gov/sites/default/files/dish-letter-07262019.pdf.

the merits of the Litigating States' Clayton Act Section 7 claim.  To do so, that court will evaluate the relevant markets at issue, analyze the anticompetitive effects alleged in those markets, and determine whether a remedy that would be in place if the merger were to proceed is sufficient to "restore the competition" lost as a result of the merger.  *See United States v. Aetna, Inc.*, 240 F. Supp. 3d 1, 60 (D.D.C. 2017) (citing *Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972)).  In contrast, the merits of whether the transaction violates Section 7 of the Clayton Act are not at issue in this case.[7]  Under the Tunney Act, courts do not examine the transaction as a whole and determine whether or not it is anticompetitive.  Instead, they determine whether, taking the allegations in the complaint as true, entry of the proposed settlement of the case as presented in the proposed Final Judgment would be "in the public interest." 15 U.S.C. § 16(e)(1).  As the D.C. Circuit has explained, the review under the Tunney Act invokes a different, lower standard than the legal standards applied in Section 7 litigation because "a proposed decree must be approved even if it falls short of the remedy the court would impose on its own, as long as it falls within the range of acceptability or is 'within the reaches of the public interest.'"  *United States v. AT&T,* 552 F. Supp. 131, 151 (D.D.C. 1982) (citation omitted), *aff'd without opinion sub nom. Maryland v. United States,* 460 U.S. 1001 (1983).[8]  Thus, Section 7 litigation does not involve an analysis of whether a proposed settlement satisfies the Tunney Act's "public interest" standard, and there is no reason that Judge Marrero would reach this

---

[7] *See* PFJ at 1 (stating that the Final Judgment is entered "without trial or adjudication of any issue of fact or law" and does not "constitut[e] any evidence against or admission by any party regarding any issue of fact or law").

[8] There are several reasons why different standards are applied in Tunney Act cases and Section 7 litigation.  For one, because "there are no *findings* that the defendant has actually engaged in illegal practices" in Tunney Act cases, it would be "inappropriate for the judge to measure the remedies in the decree as if they were fashioned after trial."  *Microsoft Corp.*, 56 F.3d at 1460-61.  In contrast, Section 7 cases by definition *do* involve findings regarding the legality of the defendant's conduct. In addition, in Tunney Act reviews, "[r]emedies which appear less than vigorous may well reflect an underlying weakness in the government's case, and for the district judge to assume that the allegations in the complaint have been formally made out is quite unwarranted."  *Id.*

question in the S.D.N.Y. Litigation. *Cf. Nat'l Indus. for the Blind*, 296 F. Supp. 3d at 142

(denying stay where there was "considerable uncertainty regarding whether or not the [other

court would] actually reach the legal issue that is common to these cases").

Furthermore, if this Court has not yet decided whether the PFJ satisfies the Tunney Act

by the time Judge Marrero must analyze the merits of the Litigating States' Section 7 claim,

Judge Marrero would not know whether the PFJ would in fact be in place if he were to permit

the merger to proceed. A decision by this Court would eliminate that uncertainty and aid judicial

efficiency. If this Court were to decide that the PFJ satisfies the Tunney Act, Judge Marrero

would have the benefit of knowing that a decision clearing the merger would leave in place the

PFJ's protections. By contrast, if this Court were to determine that the PFJ does not satisfy the

Tunney Act, Judge Marrero would know that a decision clearing the merger would leave no

restraints on the merged firm, unless the parties to the PFJ were to return with a revised proposal.

Either way, the outcome of this case can be highly relevant to Judge Marrero's determination,

while the reverse is not true.[9]

The Litigating States themselves acknowledged the importance of the PFJ as an input to

the S.D.N.Y. Litigation when it benefitted them to do so. Just two-and-a-half months ago, while

advocating for a delayed trial date, they argued to that court that they needed more information

about the Department's settlement before they could effectively litigate their case. *See*

Pomerantz July 15 Letter at 3 ("Plaintiff States cannot prepare for trial without knowing the

complete terms of the merger Defendants are proposing. . . . Plaintiff States must understand the

---

[9] Notably, a litigant may file a Section 7 lawsuit challenging the legality of a transaction at any time, regardless of whether the transaction has been consummated. Thus, a litigant could challenge a merger after the conclusion of a Tunney Act review of a proposed settlement and entry of a final judgment. The fact that a court had decided whether the settlement was in the public interest would not unduly "interfere" with the disposition of such a subsequent case. *See* 15 U.S.C. § 16(a) (stating that "consent judgments or decrees entered before any testimony has been taken" do not constitute prima facie evidence in later proceedings).

precise contours of those remedies and any related agreements implementing them in order to address their competitive implications, if any."). Now, they propose that Judge Marrero make his Section 7 determination without knowing whether and in what form that remedy will actually take effect. The Litigating States' claim that denying this proposal would somehow "interfere" with their case does not come close to establishing the kind of "clear case of hardship or inequity" that is required to justify a stay. *See Landis*, 299 U.S. at 255.

> D.  <u>Granting the Litigating States' Request Would Not Promote Judicial Economy and Indeed May Lead to the Inefficient Use of Taxpayer Resources.</u>

The Litigating States also claim that a delay would promote judicial economy because it would allow this Court to review "all the evidence and testimony developed" in the S.D.N.Y. Litigation before reaching its decision, and because if the Litigating States prevail the Tunney Act proceeding would be "render[ed] unnecessary." States' Brief at 5. The Litigating States are wrong on both counts.

First, contrary to the Litigating States' suggestion, this Court will not need to conduct an independent evaluation of that evidentiary record before reaching a decision on whether the settlement is in the public interest. Courts can, and routinely do, make Tunney Act determinations based solely on the Competitive Impact Statement, comments filed by the public, and the Department's response thereto. *E.g.*, Order, *United States v. Bayer AG*, No. 18-1241 (D.D.C. Feb. 8, 2019) (entering proposed Final Judgment without further factfinding despite opposition from a number of commenters, including several of the Litigating States); *United States v. US Airways Group, Inc.*, 38 F. Supp. 3d 69 (2014) (entering proposed Final Judgment without further factfinding despite opposition from commenters); *see also id.* at 76 ("A court can make its public interest determination based on the competitive impact statement and response to public comments alone.") (citing *United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C.

2000)).  While the Tunney Act provides the Court with the ability to engage in further factfinding, the statute clearly states that such factfinding is not required.  *See* 15 U.S.C. § 16(e)(2) ("Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene.").

Moreover, the Litigating States do not explain *how* they expect the evidentiary record in their case would factor into this Court's analysis.  Much of that record will pertain to the merits of the Section 7 challenge and thus will not be relevant here.  Much of that evidence will also pertain to legal claims that the United States chose not to bring, as the Litigating States brought certain claims that the United States did not.  Considering these claims would violate separation of powers principles.  *See Heckler*, 470 U.S. at 832 (noting that the decision about which claims to bring "has long been regarded as the special province of the Executive Branch"); *Microsoft Corp.*, 56 F.3d at 1461 (noting that district courts engaging in Tunney Act review are "barred from reaching beyond the complaint to examine practices the government did not challenge"). Even as to evidence that could arguably be relevant, the United States will not have participated in the creation of that record, and it would violate fundamental principles of procedural fairness to rely on such evidence.  It would be burdensome and inappropriate to ask this Court to review the full record, which will have been created by different parties in a different court, and determine how portions of that record might impact its analysis in this case.  This approach would fly in the face of Congress's desire for courts making public interest determinations under the Tunney Act to "adduce the necessary information through the least complicated and least time-consuming means possible."  S. Rep. No. 93-298, at 6 (1973).

As mentioned above, the public comment period in this case closed on October 11, and 31 comments were filed—21 in support of the proposed merger and/or settlement and 10 in

opposition.  The Department will be filing a response to these comments in the coming weeks.

The combination of the Competitive Impact Statement, the comments, and the Department's

response will provide the Court an ample basis on which to decide whether the proposed Final

Judgment is in the public interest, the sole consideration under the Tunney Act.

Notably, the Litigating States did not file comments during the statutorily defined period,

even though states (including members of the Litigating States) have frequently done so in other

cases.[10]  The Litigating States should not be permitted to forego their opportunity to participate

in the statutorily prescribed Tunney Act process and create their own process by asking the Court

to review an evidentiary record from another case, and to do so before the United States has had

an opportunity to respond.  Such a process would represent the opposite of judicial economy and

would undermine the appropriate division of authority between the Executive and Judiciary,

contrary to Congressional intent.  *Cf. United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33,

36-37 (1952) ("We have recognized in more than a few decisions, and Congress has recognized

in more than a few statutes, that orderly procedure and good administration require that

objections to the proceedings of an administrative agency be made while it has opportunity for

correction in order to raise issues reviewable by the courts."); *Woodford v. Ngo*, 548 U.S. 81,

901-91 (2006) (quoting *L.A. Tucker* and observing that "no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings").

Second, the fact that one possible outcome of pending litigation could eliminate the need

for the Tunney Act proceeding is not a sufficient basis to justify a stay.  Delaying entry of the

---

[10] *E.g.*, Comments of the Attorneys General of California, Iowa, Massachusetts, Mississippi, and Oregon, *United States v. Bayer AG*, No. 18-1241 (D.D.C. Aug. 10, 2018), *available at* https://www.justice.gov/atr/page/file/1111086 /download; Comments of Elliot Spitzer, Attorney General, State of New York, *attached as* Attachment 3 to Plaintiff United States' Response to Public Comments, *United States v. SBC Commc'ns, Inc.* and *United States v. Verizon Commc'ns Inc*, No. 05-2103 (D.D.C. Mar. 21, 2006).

Department's proposed settlement whenever a private or state actor files a lawsuit regarding the same underlying transaction or conduct would unduly interfere with the process of settling lawsuits alleging civil antitrust violations.  While third parties are free to file such cases, the Department must retain its ability to bring its cases to an efficient resolution, as Congress intended.  *See Microsoft Corp.*, 56 F. 3d at 1456 ("The Tunney Act was not intended to create a disincentive to the use of the consent decree." (citing legislative history)).  Uncertainty that Tunney Act proceedings may be stayed pending resolution of separate lawsuits can be expected to serve as a disincentive to a negotiated settlement, undermining the confidence that parties to future proceedings would have in the process, and unnecessarily burdening scarce taxpayer resources.  Moreover, a decision to grant the Litigating States' request would open the courts to the possibility of routine requests for stays in light of lawsuits that, as here, can easily be resolved efficiently on separate tracks.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Litigating States' request for delay and proceed with the process prescribed by the Tunney Act.

Dated:  October 23, 2019

Respectfully submitted,

     /s/
_____
Frederick S. Young (D.C. Bar #421285)
Matthew R. Jones (D.C. Bar #1006602)
U.S. Department of Justice Antitrust Division
450 Fifth Street NW, Suite 7000
Washington, D.C. 20530
(202) 307-2869

16

## CERTIFICATE OF SERVICE

I, Frederick S. Young, hereby certify that on October 23, 2019, I caused a copy of the

foregoing document to be served upon all counsel of record via the Court's CM/ECF system

and by electronic mail on:

Beau Buffier
Chief, Antitrust Bureau
New York State
Office of the Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6124
Beau.Buffier@ag.ny.gov

_____/s/_____
Frederick S. Young
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 4100
Washington, D.C. 20530
(202) 307-2869
Frederick.Young@usdoj.gov