# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Department of Justice, Antitrust Division<br>450 5th Street, N.W.<br>Washington, D.C. 20530<br><br>STATE OF KANSAS,<br>120 S.W. 10th Avenue, 2nd Floor<br>Topeka, Kansas 66612-1597<br><br>STATE OF NEBRASKA,<br>2115 State Capitol<br>Lincoln, Nebraska 68509<br><br>STATE OF OHIO,<br>150 East Gay Street, 22nd Floor<br>Columbus, Ohio 43215<br><br>STATE OF OKLAHOMA,<br>313 N.E. 21st Street<br>Oklahoma City, Oklahoma 73105-4894<br><br>STATE OF SOUTH DAKOTA,<br>1302 E. Highway 14, Suite 1<br>Pierre, South Dakota 57501-8501<br><br>STATE OF LOUISIANA,<br>1885 North Third Street<br>Baton Rouge, LA 70802<br><br>and<br><br>STATE OF FLORIDA,<br>PL-01, The Capitol<br>Tallahassee, FL 32399-1050<br><br>                *Plaintiffs*,<br><br>       v. | Case No. 1:19-cv-02232-TJK<br><br>Filed: October 2, 2019 |

DEUTSCHE TELEKOM AG,
Friedrich-Ebert-Allee 140
Bonn, Germany 53113

T-MOBILE US, INC.,
12920 SE 38th Street
Bellevue, Washington 98006

SOFTBANK GROUP CORP.,
1-9-1 Higashi-shimbashi, Minato-ku,
Tokyo, Japan 105-7303

and

SPRINT CORPORATION,
6200 Sprint Parkway, Overland Park,
Kansas 66251-4300

*Defendants*.

## SECOND AMENDED COMPLAINT

The United States of America and the States of Kansas, Nebraska, Ohio, Oklahoma, South Dakota, Louisiana, and Florida ("Plaintiff States") bring this civil antitrust action to prevent the merger of T-Mobile and Sprint, two of the four national facilities-based mobile wireless carriers in the United States. The United States and Plaintiff States allege as follows:

### I. NATURE OF THE ACTION

1. Mobile wireless service is an integral part of modern American life. The average American household spends over $1,000 a year on mobile wireless service, not including the additional costs of wireless devices, applications, media content, and accessories. Many Americans now rely on mobile wireless service to communicate, pay bills, apply for jobs, do schoolwork, get directions, shop, read the news, and otherwise stay informed and connected from nearly any location in the country.

2. Competition has kept mobile wireless service prices down and served as a catalyst for innovation. Preserving this competition is critical to ensuring that consumers will continue to have reasonable and affordable access to an essential service that, for many, serves as a gateway to the modern economy.

3. By combining two of the only four national mobile facilities-based wireless carriers, without appropriate remedies, the merger of T-Mobile and Sprint would extinguish substantial competition.

4. As the nation's third and fourth largest mobile wireless carriers, T-Mobile and Sprint have positioned themselves as challengers to Verizon and AT&T, their larger and more expensive rivals, targeting retail customers who particularly value affordability. Some of these customers purchase mobile wireless service on a postpaid basis and are billed monthly after receiving service. Others, including those who may lack ready access to credit, purchase prepaid mobile wireless service and pay for service in advance of using it.

5. The merger would eliminate Sprint as an independent competitor, reducing the number of national facilities-based mobile wireless carriers from four to three. The merger would cause the merged T-Mobile and Sprint ("New T-Mobile") to compete less aggressively. Additionally, the merger likely would make it easier for the three remaining national facilities-based mobile wireless carriers to coordinate their pricing, promotions, and service offerings. The result would be increased prices and less attractive service offerings for American consumers, who collectively would pay billions of dollars more each year for mobile wireless service.

6. Because the merger of T-Mobile and Sprint likely would substantially lessen competition for retail mobile wireless service, the Court should permanently enjoin the proposed transaction.

## II.  THE PARTIES AND THE PROPOSED MERGER

7. Deutsche Telekom AG ("Deutsche Telekom") is a German corporation headquartered in Bonn, Germany, and is the controlling shareholder of T-Mobile US, Inc. ("T-Mobile"), with 63% of T-Mobile's shares.  Deutsche Telekom is the largest telecommunications operator in Europe, with net revenues of €75.7 billion (approximately $85 billion) in 2018.

8. T-Mobile is a Delaware corporation headquartered in Bellevue, Washington, and is the third largest mobile wireless carrier in the United States.  In 2018, T-Mobile had nearly 80 million wireless subscribers, and approximately $43.3 billion in total revenues.  T-Mobile sells postpaid mobile wireless service under its T-Mobile brand, and prepaid mobile wireless service primarily under its Metro by T-Mobile brand.  T-Mobile also sells mobile wireless service indirectly through mobile virtual network operators ("MVNOs"), such as TracFone and Google Fi, that lack wireless networks of their own.  These MVNOs obtain network access from T-Mobile and resell mobile wireless service to consumers.

9. SoftBank Group Corp. ("SoftBank"), a Japanese corporation and the controlling shareholder of Sprint, owns 85% of Sprint's shares.  SoftBank's operating income during its 2018 fiscal year was ¥2.3539 trillion (approximately $21.25 billion).

10. Sprint Corporation ("Sprint") is a Delaware corporation headquartered in Overland Park, Kansas.  It is the fourth largest mobile wireless carrier in the United States.  At the end of its 2018 fiscal year, Sprint had over 54 million wireless subscribers, and its fiscal year 2018 operating revenues were approximately $32.6 billion.  Sprint sells postpaid mobile wireless service under its Sprint brand, and prepaid mobile wireless service primarily under its Boost Mobile and Virgin Mobile brands.  Sprint also sells mobile wireless service indirectly through MVNOs, which resell the service to consumers.

11.     On April 29, 2018, T-Mobile and Sprint agreed to combine their respective businesses in an all-stock transaction, pursuant to a Business Combination Agreement. The merged firm would be owned 42% by Deutsche Telekom and 27% by SoftBank.

### III.  INDUSTRY OVERVIEW AND RELEVANT MARKETS

#### A.     Industry Overview

12.     Mobile wireless service includes voice, text messaging, and data service used to access the internet from a mobile device. Consumers access these services through a variety of devices, including phones, tablets, and smart watches. Mobile wireless carriers compete for retail customers by offering a variety of service plans and devices at a variety of prices.

13.     Mobile wireless carriers deliver service over certain frequencies of spectrum. To build a national wireless network and become a facilities-based wireless carrier, a firm must acquire licenses to a sufficient amount of spectrum across a sufficiently wide geographic footprint. The firm also must deploy network infrastructure—including cell sites, radio transmitters and receivers, and equipment to transmit (or "backhaul") signals to a core network—to transmit and receive signals over its licensed spectrum. The firm also must invest in building a distribution network and marketing its services to retail customers. Facilities-based mobile wireless carriers like T-Mobile and Sprint promote their prices, plan features, device offerings, customer service, and network quality as they compete for retail customers. MVNOs typically do not operate their own mobile wireless networks. Instead, these providers buy capacity wholesale from facilities-based providers like T-Mobile and Sprint and then resell mobile wireless service to consumers under their own brand name.

#### B.     Retail Mobile Wireless Service Is a Relevant Product Market

14. Retail mobile wireless customers include consumers and small and medium businesses who use mobile wireless service for voice communications, text messaging, and internet access. These customers purchase mobile wireless service at retail stores or online, and choose from pricing and service plans made available to the general public. Retail customers are distinct from large business and government customers, who purchase mobile wireless service through a bid process and receive different pricing than that available to the general public. A hypothetical monopolist of retail mobile wireless service profitably could raise prices by at least a small but significant, non-transitory amount. Accordingly, retail mobile wireless service is a relevant product market under Section 7 of the Clayton Act, 15 U.S.C. § 18.

**C. The United States Is a Relevant Geographic Market**

15. Mobile wireless carriers generally price, advertise, and market their services on a nationwide basis. Consumers who seek mobile wireless service in the United States cannot turn to carriers who do not provide service in the United States. A hypothetical monopolist of retail mobile wireless service in the United States profitably could raise prices by at least a small but significant, non-transitory amount. Thus, the United States is a relevant geographic market under Section 7 of the Clayton Act, 15 U.S.C. § 18.

**IV.   ANTICOMPETITIVE EFFECTS**

16. The proposed merger would substantially lessen competition and harm consumers in the relevant market. Post-merger, the combined share of T-Mobile and Sprint would account for roughly one-third of the national retail mobile wireless service market, leaving only two other national wireless carriers of roughly equal size (AT&T and Verizon).

17. American consumers, including those who are customers of Verizon and AT&T, have benefitted from the competition T-Mobile and Sprint have brought to the mobile wireless

industry. For instance, it was not until after T-Mobile and Sprint introduced unlimited data plans to retail customers in 2016 that Verizon and AT&T followed with their own standalone unlimited data offerings to retail customers in 2017.

18. T-Mobile and Sprint have been particularly intense competitors for the roughly 30% of retail subscribers who purchase prepaid mobile wireless service. These customers tend to be even more value conscious, on average, than postpaid subscribers.

19. The head-to-head competition between T-Mobile's Metro brand and Sprint's Boost Mobile brand has exerted significant downward pressure on prices. When Boost introduced a family plan of four lines for $100 in February 2017, Metro countered with an aggressive promotion that a Sprint executive described this way: "We gave them a jab and they punched back with a left hook." In the fall of 2017, when Metro responded to a Boost four lines for $100 promotion with a three lines for $90 promotion of its own, Boost executives countered with a "Metro attack plan." Boost's "Combat Metro" strategy upped the ante further by offering five lines for $100. Observing in March 2018 that Sprint postpaid and prepaid plans were priced 50% lower than the competition, the senior leadership at T-Mobile's Metro reduced prices to $40 per month and then to $30 per month for entry level plans.

20. The competition between T-Mobile and Sprint also has led to improvements in the quality of devices and the plan features available to prepaid subscribers. As one Sprint senior executive observed in 2015, "The prepaid space is experiencing a severe price war. We now have two competitors (Cricket and Metro) spending at postpaid-like advertising levels with strong, best in class nation-wide networks. We need to find ways to differentiate our service beyond device and rate plan price." To "one up Metro" in May 2017, for example, Boost offered unlimited calling to Mexico and unlimited voice roaming to customers traveling in Mexico. That

same year, Boost introduced its "BoostUp!" program, which allowed prepaid customers with a solid payment history to purchase a phone for $1 down and pay for it over 18 months with no interest.  And in February 2018, Boost offered an iPhone 6 for $49 to customers who switched to Boost and kept their phone number.

21.     If the merger were allowed to proceed, this competition would be lost.  After the elimination of Sprint, the industry's low-price leader, New T-Mobile would have the incentive and the ability to raise prices.  In a post-merger world, the other remaining national facilities-based mobile wireless carriers, Verizon and AT&T, also would have the incentive and the ability to raise prices.  Additionally, the merger would leave the market vulnerable to increased coordination among these three competitors.  Increased coordination harms consumers through a combination of higher prices, reduced quality, reduced innovation, and fewer choices.

22.     Competition between Sprint and T-Mobile to sell mobile wireless service wholesale to MVNOs has benefited consumers by furthering innovation, including the introduction of MVNOs with some facilities-based infrastructure.  The merger's elimination of this competition likely would reduce future innovation.

## V.     ABSENCE OF COUNTERVAILING FACTORS

23.     Given the high barriers to entry in the retail mobile wireless service market, entry or expansion of other firms is unlikely to occur in a timely manner or on a scale sufficient to replace the competitive influence now exerted on the market by Sprint.

24.     Any efficiencies generated by this merger are unlikely to be sufficient to offset the likely anticompetitive effects on American consumers in the retail mobile wireless service market, particularly in the short term, unless additional relief is granted.

## VI.  JURISDICTION AND VENUE

25. The United States brings this action, and the Court has subject matter jurisdiction over this action, under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain Defendants Deutsche Telekom, Softbank, T-Mobile, and Sprint ("Defendants") from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

26. The Plaintiff States bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain the Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.  The Plaintiff States, by and through their respective Attorneys General, bring this action as *parens patriae* on behalf of and to protect the health and welfare of their citizens and the general economy of each of their states.

27. T-Mobile and Sprint are engaged in, and their activities substantially affect, interstate commerce.  T-Mobile and Sprint sell mobile wireless service throughout the United States.  As parties to the Business Combination Agreement, which will have effects throughout the United States, Deutsche Telekom and Softbank have submitted to the jurisdiction of the United States.  All four of the Defendants have consented to venue and personal jurisdiction in this District.

28. Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c)(2), for Defendants T-Mobile and Sprint, and venue is proper for Defendants Deutsche Telekom, a German corporation, and SoftBank, a Japanese corporation, under 28 U.S.C. § 1391(c)(3).

## VII.  VIOLATION ALLEGED

29. The merger of T-Mobile and Sprint likely would lessen competition substantially in interstate trade and commerce in the relevant geographic market for retail mobile wireless service, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

30. Unless enjoined, the transaction likely would have the following effects in the national retail mobile wireless market described above:

   a. competition would be lessened substantially; and

   b. prices likely would be higher, quality of service likely would be lower, innovation likely would be lessened, and consumer choice likely would be more restricted than in the absence of the merger.

## VIII.  REQUEST FOR RELIEF

31. Plaintiffs request that this Court do the following:

   a. adjudge the combination of T-Mobile and Sprint's mobile wireless businesses to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

   b. permanently enjoin T-Mobile and Sprint from carrying out the Business Combination Agreement dated April 29, 2018, or from entering into or carrying out any agreement, understanding, or plan, the effect of which would be to bring the mobile wireless businesses of T-Mobile and Sprint under common ownership or control;

   c. award Plaintiffs costs of this action; and

   d. award Plaintiffs other relief as the Court may deem just and proper.

Dated this 2d day of October, 2019

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

/s/
_____
Makan Delrahim
Assistant Attorney General for Antitrust

/s/
_____
Bernard A. Nigro, Jr. (D.C. Bar #412357)
Deputy Assistant Attorney General

/s/
_____
Patricia A. Brink
Director of Civil Enforcement

/s/
_____
David J. Shaw (D.C. Bar #996525)
Counsel to the Assistant Attorney General

/s/
_____
Andrew J. Robinson (D.C. Bar #1003748)
Counsel to the Assistant Attorney General

/s/
_____
Lawrence A. Reicher
Counsel to the Assistant Attorney General

/s/
_____
Scott Scheele (D.C. Bar #429061)
Chief, Telecommunications & Broadband Section

/s/
_____
Jared A. Hughes
Assistant Chief, Telecommunications & Broadband Section

/s/
_____
Frederick S. Young (D.C. Bar #421285)
Patricia C. Corcoran (D.C. Bar #461905)
Matthew R. Jones (D.C. Bar #1006602)

Attorneys for the United States
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7000
Washington, DC 20530
Telephone: (202) 514-5621
Facsimile: (202) 514-6381
Email:  Frederick.Young@usdoj.gov

**FOR PLAINTIFF STATE OF KANSAS:**

/s/
_____
Derek Schmidt
Attorney General
State of Kansas
120 S.W. 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
(785) 296-2215


**FOR PLAINTIFF STATE OF NEBRASKA**:

/s/
_____
Douglas J. Peterson
Attorney General
State of Nebraska
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-3811


**FOR PLAINTIFF STATE OF OHIO**:

/s/
_____
Dave Yost (0056290)
Attorney General
State of Ohio
150 E. Gay St., 22nd Floor
Columbus, Ohio 43215
(614) 466-4328


**FOR PLAINTIFF STATE OF OKLAHOMA:**

/s/
_____
Mike Hunter
Attorney General of Oklahoma
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105-4894
(405) 521-3921

**FOR PLAINTIFF STATE OF SOUTH DAKOTA:**

/s/
_____
Jason R. Ravnsborg
Attorney General
State of South Dakota
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
(605) 773-3215


**FOR PLAINTIFF STATE OF LOUISIANA:**

/s/
_____
Jeff Landry
Attorney General
Patricia H. Wilton (LA Bar # 18049)
Assistant Attorney General
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, LA 70802
(225) 326-6000

**FOR PLAINTIFF STATE OF FLORIDA:**

ASHLEY MOODY
Attorney General

*/s/ Patricia A. Conners*

PATRICIA A. CONNERS
Chief Associate Deputy Attorney General
LIZABETH A. BRADY
Chief, Multistate Enforcement
CHRISTOPHER R. HUNT
Assistant Attorney General
RACHEL S. BRACKETT
Assistant Attorney General
Office of the Attorney General of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Phone: (850) 414-3300
Fax: (850) 488-9134