```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA, et al., CV No. 1:19-cv-02232-TJK

                  Plaintiffs,     Washington, DC
v.                                Friday, January 10, 2020
                                  2:00 p.m.


DEUTSCHE TELEKOM AG, et al.,

                  Defendants.
- - - - - - - - - - - - - - - - - x
```

_____

TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES VIA TELECONFERENCE:

For the Plaintiffs:   Makan Delrahim, Esq.
                      Frederick S. Young, Esq.
                      U.S. DEPARTMENT OF JUSTICE
                      Antitrust Division
                      450 Fifth Street, NW
                      Suite 7000
                      Washington, DC 20530
                      (202) 514-5621

                      Lynette R. Bakker, Esq.
                      OFFICE OF THE ATTORNEY GENERAL OF KANSAS
                      120 SW 10th Avenue
                      2nd Floor
                      Topeka, KS 66612
                      (785) 368-8451

                      Rachel S. Brackett, Esq.
                      OFFICE OF THE ATTORNEY GENERAL OF FLORIDA
                      PL-01, The Capitol
                      Tallahassee, FL 32399
                      (850) 414-3300

                      Meghan E. Stoppel, Esq.
                      OFFICE OF THE NEBRASKA ATTORNEY GENERAL
                      Consumer Protection Division
                      2115 State Capitol
                      Lincoln, NE 68509
                      (402) 471-2811

APPEARANCES VIA TELECONFERENCE CONTINUED:

For the Plaintiffs:   Dustin Danos, Esq.
                      LOUISIANA DEPARTMENT OF JUSTICE
                      1885 North Third Street
                      Baton Rouge, LA 70802
                      (225) 326-6000

                      Mithun Mansinghani, Esq.
                      OFFICE OF THE ATTORNEY GENERAL OF OKLAHOMA
                      Solicitor General
                      313 NE 21st Street
                      Oklahoma City, OK 73105
                      (405) 522-4392

                      Bret L. Fulkerson, Esq.
                      TEXAS OFFICE OF THE ATTORNEY GENERAL
                      300 W. 15th Street
                      Austin, TX 78701
                      (512) 517-5184

For the Defendants:   Mark W. Nelson, Esq.
                      CLEARY GOTTLIEB STEEN & HAMILTON LLP
                      2112 Pennsylvania Avenue, NW
                      Suite 1000
                      Washington, DC 20037
                      (202) 974-1500

                      Steven C. Sunshine, Esq.
                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                      1440 New York Avenue, NW
                      Washington, DC 20005
                      (202) 371-7860

                      David L. Meyer, Esq.
                      MORRISON AND FOERSTER LLP
                      2000 Pennsylvania Avenue, NW
                      Suite 6000
                      Washington, DC 20006
                      (202) 887-1500

                      Pantelis Michalopoulos, Esq.
                      STEPTOE & JOHNSON LLP
                      1330 Connecticut Avenue, NW
                      Washington, DC 20036
                      (202) 429-6494

APPEARANCES VIA TELECONFERENCE CONTINUED:

For the Defendants:   Bradley P. Smith, Esq.
                      SULLIVAN & CROMWELL LLP
                      125 Broad Street
                      New York, NY 10004
                      (212) 558-1660

Court Reporter:       Timothy R. Miller, RPR, CRR, NJ-CCR
                      Official Court Reporter
                      U.S. Courthouse, Room 6722
                      333 Constitution Avenue, NW
                      Washington, DC 20001
                      (202) 354-3111


Proceedings recorded by machine shorthand; transcript produced
by computer-aided transcription.

<u>**P R O C E E D I N G S**</u>

THE DEPUTY CLERK:  Your Honor, this is civil matter 19-2232, United States of America, et al., v. Deutsche Telekom AG, et al.

Will counsel please state your appearance for the record, beginning with the plaintiffs.

MR. DELRAHIM:  This is Makan Delrahim on behalf of the United States.

MR. YOUNG:  Oh, and also on behalf of the United States, Fred Young.

MS. BAKKER:  Lynnette Bakker on behalf of the State of Kansas.

MS. BRACKETT:  Rachel Brackett on behalf of the State of Florida.

MS. STOPPEL:  Meghan Stoppel on behalf of the State of Nebraska.

MR. DANOS:  Dustin Danos on behalf of the State of Louisiana for information purposes.

MR. MANSINGHANI:  Mithun Mansinghani on behalf of the State of Oklahoma.

MR. FULKERSON:  Bret Fulkerson on behalf of the State of Texas.

MR. NELSON:  Mark Nelson from Cleary Gottlieb on behalf of T-Mobile and Deutsche Telekom.

MR. SUNSHINE:  Good afternoon, Your Honor.  Steve

Sunshine, Skadden, Arps, representing Sprint.

MR. MEYER:  David Meyer, Morrison & Foerster, representing Defendant SoftBank.

MR. MICHALOPOULOS:  Hello, Your Honor.  Pantelis Michalopoulos with Steptoe representing Dish Network Corporation.

MR. SMITH:  Good afternoon, Your Honor.  Brad Smith from Sullivan & Cromwell also for Dish.

THE COURT:  All right.  As I run down my list, I think we have everyone represented or at least I think I have lawyers from all the parties here.

First of all, thank you all for gathering so quickly.  I wanted to first just start out by saying -- to, sort of, briefly apologize to the parties.  I think at one point during November/December, I had six preliminary injunctions before me, and so that was -- that is one reason why it took me so long to turn to your matter.  That having been said, I wished I had turned to it sooner, but we are where we are.  So I am doing my best now to try to move things forward as rapidly as we can.

My thought going forward -- and I know that the statute affords me a lot of flexibility here in terms of, sort of, setting a procedure going forward.  What I'd like to do is enter an order that will govern how amici can participate.  I do think, given the number of comments that

were filed -- and, obviously, I also know that there was another proceeding up in New York dealing with some of the same issues, although some different issues, too -- my thought is to at least give any amici that want to participate the opportunity to file a brief in this case, lay out their concerns just so I have a record of it, and I can consider those positions going forward. I'd like to set a deadline toward the end of the month for that to happen.

And I guess my first question is for you all -- for the parties is -- I'll, obviously, give you an opportunity to respond to whatever is filed. So I guess my first question is, how long do the parties think it makes sense for me to give all of you to respond to what gets filed? Obviously, you don't -- as I understand on the call here today, you don't know what's going to be filed, but you have a -- you probably have a better idea than I do about who's likely to file and what they're likely to say. So let me ask anyone who would like to pipe up how long you think I should give all of you to respond.

MR. DELRAHIM: Well, Your Honor, thank you for taking the time for this conference. This is Makan Delrahim on behalf of the United States.

First, again, we respect any decision you make through this. In the Tunney Act process, if there are objectors -- so there's a period of -- public notice and

comment are filed.  In our motion, we provided the responses to any of those comments in the normal order.  If there's amici that file a request to be part of this Tunney Act process during the pendency -- as far as I'm -- I understand, I don't believe any have requested that, you know?  We had the state AGs who requested the stay pending the trial in New York, but my understanding, there isn't.  So you know, that is two months, you know, since the motion, but there's a process and we put up the remedy along with the competitive impact statement for public notice and then we respond to any comments, at which time, we file the proposed final judgment, and then in the, you know -- in, you know -- I think there was one instance in the CVS-Aetna where Judge Leon held a hearing, although that was the only time in history that that was done under a Tunney Act -- Judge Boasberg oversaw the Bayer-Monsanto process.  And so the normal process would be, if amici request entry and comment, then at that time we would -- but they haven't done any.

THE COURT:  They -- well, let me just respond to that, Mr. Delrahim.  I -- so I totally understand your point.  And on the point of a hearing, I'm not making any -- I'm not suggesting that I necessarily would have a hearing here.  I mean, as I reviewed the cases, there were -- well, let's put it this way.  I think that judges have the

flexibility to tailor a process that is appropriate for a given proposed transaction, given the -- its -- the transaction's complexity and given how many comments end up that -- how many other parties -- how many -- well, how many other parties file comments and the size of the transaction, etcetera.  So I'm not necessarily suggesting I'm going to have a hearing the way, as you mentioned, Judge Leon did, but I do think it's fair to give -- to at least give an opportunity -- you're right.  As to this point, the only, you know, amici that attempted to file -- the only amicus that attempted to file a brief -- that filed something was that -- what came in on the docket from the State of New York and those other folks that are pressing the litigation up in New York.  That really wasn't anything -- I mean, as you mentioned, that was an attempt to stay these proceedings.  It really wasn't anything of substance.

I do take your point that, look, there is a comment period or a comment process that's already built into this process and I don't want to totally -- I don't want to duplicate that, and so I will ask especially the folks who -- I will order that folks just not simply repeat what they've already commented -- the comments that they've already provided and that you've already provided me, but I do think -- a transaction of this importance and magnitude, I do think it's appropriate to give -- whoever out there

wants to come forward as an amicus curiae and say their piece, to give them a little breathing room to do that and then to allow you all to respond. I don't think it will take too terribly long, but that's in part why I wanted to ask you all what you think an appropriate turnaround time -- if I were to do that, for you to -- how much time you'd like to respond.

MR. DELRAHIM: Well, if we had -- Your Honor, through the -- just through that process of the notice and comment that the statute laid out -- there are about 32 comments that did come in. So the folks who publicly did, and then we provided a response in that. We can provide that on the record. I just want to understand. Would your order make a public request for additional comments in addition to those who filed during the 60-day Tunney Act process?

THE COURT: It would not request comment. I don't think that's my -- I don't think that's part of -- if that's -- that's part of the process, but it's not -- that's not my job. It would not request comment. It would just say that if there is any non-party to this case that wants to file an amicus brief, that the deadline to do so is date X and that's it. I mean, it would also say, you know, that it should not -- for those -- and particularly for those who -- for those other than government actors -- for other than --

for those who do not -- cannot file as amici as of right, for those actors, it would say, you know, I don't want you to just repeat what you already filed in the comments.  If you've filed something in the comments -- if you're -- if you -- then -- and you don't have the right -- you don't have standing as of right under the local rules of this court to file anything, then I don't want you just to repeat what you already submitted in the comments.  You have the comments; I have the comments; I don't need any more.  But I do want to give at least anyone who has -- particularly those who have a -- can file as an amicus as of right, to just give them -- under our local rules -- and, basically, that's -- it's the United States, although, obviously, you're already a party here, but any state, for example, that wants to step in and file something in addition to or to supplement whatever comments they've already submitted, to give them that opportunity; to give you all the opportunity to respond; and then to just -- and then move forward.

MR. DELRAHIM:  Okay.  Well, I mean, we'll defer to your judgment, Your Honor.  We -- I mean, we think, given the process that has occurred and in addition to the whole, you know, 18-month-or-so review process where any complainants would come to the division and the states parties with any concerns they had for us to consider as we

reviewed the transaction -- so you know, as short of a period for any new amici that would come in would be great, and I think we'd be able to turn them around within 14 days. I guess -- depends on the volume, but just reserving the right to possibly come to you for additional time, should we need it, but I think we'd be able to turn that around as quickly as possible.

And just if I could understand better, it would be anybody who didn't already file a comment and no -- none of the state actors who have already been engaged here?

THE COURT:  No, what my thought is, you know -- I'm -- my ability to -- obviously, our local rules make a distinction between those who can file an amicus brief as of right.  For example, the United States, its officers or agencies or any state.  My thought is to let those parties -- which, in this case, really just amounts to whatever group of states -- whatever the states would like to do -- whatever any particular state would like to do -- to just give them the opportunity to say their piece, whatever that piece may be, because they do have the right to file such a brief without my permission anyway, frankly.

With regard to any other actor, whether they, frankly -- well, with regard to any other actor, I'll set a date.  It will -- this will all be the same date.  And with regard to those actors that have already filed -- this other

category of actors that have already -- or parties that -- potential parties that have already filed comments, just to instruct them not to just repeat the comments they've already filed.  So take, you know, for example, any one of the many, sort of, interest group-type organizations that have already filed comments.  I would tell them, Look, I don't want you to just regurgitate your comments.  If you have something new to say, fine, but if -- and you're not required to.  This is just an opportunity to file a brief saying something other than what you said in your comments.

So I don't -- hopefully, that doesn't make more, you know -- make more work than is necessary for you all.  And certainly, Mr. Delrahim, I'd rather set a shorter turnaround time for you.  If, obviously, there's some -- there are some -- more comes in than we anticipate for you to respond to, then, obviously, I'm -- I'd be open to extending that if you need it.

MR. DELRAHIM:  That would be great, you know?  And, Your Honor, it would be, you know -- we just would ask if you would consider, you know, some kind of a page limit on some of these other parties in addition to them, you know, not repeating what they have said --

THE COURT:  Yeah.

MR. DELRAHIM:  -- again, because a lot of them, you know -- given the extent of the process that they have

had, you know, maybe, if it's a, you know, 15-page limit or so, however your rules are -- you think in your judgment would be the best.  We just ask just to make it manageable for us and the resources we have here.

THE COURT:  Yep, that's a good thought, and I will certainly think about a page limit.  That's -- I think that's a reasonable request.  So once I --

MR. SUNSHINE:  Your Honor --

THE COURT:  Oh, go ahead.  Please.

MR. SUNSHINE:  Yeah.  No, I'm sorry, Your Honor. Steve Sunshine from Sprint.

One other thought, too, kind of, in regard to the order -- and we totally agree with the short process if we're going to do this process -- but one thing just watching Tunney Act processes work in many other cases.  I think from our perspective, we believe that the standard of approval before the Court is dictated by the D.C. Circuit's Microsoft decision looking for the broad, kind of, reaches of public interest in approving the settlement, and that standard is very different than what private parties might view as an opportunity to express all sorts of interests and ranges.  It -- I think it would be our suggestion, Your Honor, that if you were going to issue such an order that you might remind people of, kind of, to have their views under that prevailing standard to make sure the inquiry is

more limited, I think, as this Circuit has interpreted the law.

THE COURT:  Let me read you, since I have you all on the line, the language that I had anticipated using.  So I -- let me just back up.  I -- that's a great point and I had already wanted to address it in some way.  My thought was just to order them to -- order all -- anyone who files an amicus brief to address only the precise and limited issues before the Court in this proceeding, and that was my, sort of, nod to the point you're making.  Maybe I will think about -- your point is, maybe, I should just go ahead and reference that particular standard.  I didn't want to limit it even to that, although I hadn't really thought enough about that perhaps.  So I agree with you.  We'll look at using that language you suggest or the language I just mentioned or some combination of the two to make sure that the -- I think the last thing I want -- I'm sure it's the last thing you want, but I can tell you it's also the last thing I want to get a whole bunch of argument that has -- that is not geared toward the standard I need to apply that may or may not be the standard that's being applied in some other proceeding.  So I take your point.

MR. SUNSHINE:  Thank you, Your Honor.

MR. MICHALOPOULOS:  Your Honor, if I may, Pantelis Michalopoulos for Dish.

On the point of the admonition against the duplication and regurgitation which I agree is a very important one to make, I would also add -- because what we have seen running through the 30-some comments that have been filed is the same three or four themes echoed over and over again. So perhaps a particularly strong formulation that said, Even if you're planning to put the same concepts in different clothes; in different words, that will not escape the rule against duplicating, would be great particularly since, then, the Justice Department -- our colleagues at Justice would be in the uncomfortable position of filing a response that looks very much like the response they have already filed. So that's our first point.

And then secondly, on the question of timing, Dish -- one of the defendants, of course, T-Mobile, had several timing-related concerns of the utmost importance, as well -- we have launched this request for proposal. One hundred vendors have responded. It all depends on whether the merger in question will be consummated, and so there is great interest in expedition, and so to the extent it's possible the 14 days that Mr. Delrahim mentioned sounds like a great short response time.

Thank you.

THE COURT: All right. I'll take -- your point about, you know, putting the same comments or reformulating

your comments in different words is a good one.  I mean, I think there are practical limits to what I can say and how I can enforce them, but I will make the point, I think, as cleanly as I can that it won't be looked upon with favor from the Court to merely be repeating what a particular party has already said.

Any other comments in terms of -- from any party in terms of either the turnaround time -- which, if it can be two weeks, I will -- that's certainly how -- what I'll order -- or -- in terms of the time or the content of an order laying this out?

MR. DELRAHIM:  Your Honor, if -- I don't know if you intended to address the appointment of the monitoring trustee.  If you intend to do that after this, we can defer. I don't have any further comments on the order or the timing, but I do want to discuss that with you, with your permission.

THE COURT:  Yes.  If no one else has any -- that was the next thing on my list of things to raise with all of you.  If there's no -- if there's nothing further on the first point, then, yes, I'm happy to hear you on that.  I mean, my -- I guess my question is, is there any reason that I should decide that now as opposed to waiting to approve the merger and doing it then?  I -- as I looked at it, I guess it struck me -- and I -- look, I understand that the

parties want to move with all dispatch here.  But it -- is there any reason that I should do that ahead of actually approving the merger, assuming that I do?

MR. DELRAHIM:  Your Honor, again, this is Makan on behalf of the United States.

And it is -- I think, especially if you're going to seek outside -- additional amici comments, it's even more urgent to appoint the monitoring trustee, and I'll mention a couple of reasons.  There's a number of obligations that the parties have that is ongoing that, you know -- asset preservations that would be divestiture assets; there is technical work that needs to lead up, should the order be entered and the transaction move forward that requires that; there's a number of dates that are fixed on behalf that -- for example, Dish and T-Mobile have a January 26th deadline to reach an agreement for T-Mobile to leave certain megahertz, a spectrum; there's also finite deadlines that Dish would have to build out and Mr. Ullyot, whose motion I believe is before you, is a highly qualified former Justice Department official; former partner at a firm; general counsel; and he has a number of obligations to set up for his infrastructure which he can't move forward until he's appointed and we fully, you know -- it's only in the interim period, and this is normally done where, you know, the monitoring trustees are put in during the pendency of the

proposed final judgment.  Again, both Bayer-Monsanto and CVS-Aetna, Judges Boasberg and Leon, respectively, appointed the nominees -- the monitoring trustees prior to the review, and in this case it is critical because of the number of assets that need to be preserved, and also, transferred so that the consumer benefits, and I think it's not only in the United States's interest, but it's in the public interest for that monitoring trustee to start as soon as possible.

THE COURT:  All right.  As you -- well, does anyone else on the -- I'll cut right to the chase and just say, as you describe it, then, Mr. Delrahim, I don't see any reason -- I have -- I -- what my concern was was whether this was signaling in any way one way or the other whether the merger would be approved.  You're telling me, as you mentioned, that it's not only common, it sounds like it's -- it is par for the course that this is entered beforehand, and you've laid out some very good reasons why I should enter it immediately.

Does anyone else want -- so I'm inclined to do so.  Is there -- does anyone else on the phone want to be heard on that?

MR. NELSON:  Mark Nelson on behalf of T-Mobile and Deutsche Telekom.

We're supportive of doing that now.  I think it's in all parties' interests for that to move forward sooner

rather than later.

THE COURT:  All right.  These are all very good advocates which means when -- they know that when they have the judge doing what they want, to not say anything.

All right.  So I would anticipate -- I'll look that over, but I would anticipate that I will enter that order if not today, then, by Monday, extremely shortly.

MR. GELFAND:  Your Honor, this is David Gelfand on behalf of T-Mobile and Deutsche Telekom.  If I can take one more minute of your time?

THE COURT:  Please.

MR. GELFAND:  I apologize for backtracking to the earlier topic.  I'm one of the trial counsel in the New York case, and I probably am going to show a little bit of my exhaustion dealing with the plaintiffs in that case, but I think the, you know -- one likely set of parties that will take you up on this invitation are the plaintiffs in that case who have already previously filed an amicus brief with the Court, and I'm -- I would suggest these folks have had their day in court up in New York.  We had a two-week trial.  We have closing arguments coming up next week.  Judge Marrero will make a decision on their request for an injunction.  I would suggest that that would be one set of parties that should not have this, sort of, late opportunity to put another amicus brief in.  They already had the

opportunity.  They did it.  They had their say in your court.  They've had their day in court in New York.  And I'm just a little concerned that the brief that they file will just require us to, once again, litigate a bunch of issues that we've already been litigating in New York.  So I would make that request, Your Honor.

THE COURT:  All right.  Well, let me lay out my thoughts on that.

I do think some of what you're -- well, we started -- part of another request directed to me was to recognize the difference between the two proceedings.  So it's hard for me to count against these parties in some way the fact that they have decided to initiate a separate proceeding with a separate standard that doesn't necessarily -- well, for which there might be evidence that's relevant to that proceeding that's not relevant to this proceeding and, as has been pointed out, the different standards.  So it is a little -- I don't know how much I can really count against them the fact that they've chosen to avail themselves of a separate proceeding and vindicate their interests that way.  I do think that we do have some other things we can build in here in terms of page limits and in terms of, maybe, thinking through, again, not just repeating certain comments.

And the other piece of it is, you know, their --

you mentioned that they had filed an amicus brief in this case, although that really wasn't anything of substance, of course. It was just an opportunity for them to, sort of, attempt to argue that we should -- I should delay these proceedings. So I think it is incumbent upon me to give them -- I hear that you don't want to relitigate that case in this case, and I'm going to do my best to make sure that doesn't happen, and I'm very attuned to the differences in the two proceedings and the fact that I have a more limited task in front of me, and I'm not going to get distracted by things that are not relevant to that task.

That having been said, I think, obviously, these are a bunch of sovereign states of the United States who feel strongly about the transaction, and I want to give them a reasonable opportunity to be heard on a prompt schedule and in a way that doesn't require you to relitigate that case but allows them a reasonable opportunity to be heard about the things that matter in this case. So I hear your -- I'm hopeful that I can craft something that won't make it -- well, won't -- I'm confident that I can craft something that won't have you relitigating that case here.

MR. GELFAND: No, I appreciate that, Your Honor, and I commend the Court for its interest in giving everybody a fair opportunity, and I'm not going to try your patience any longer, but I will note that my point wasn't just that

they had availed themselves of the different forum to challenge the transaction outright, but they obviously knew about these proceedings.  They chose to file a more limited amicus brief and it just, at a certain point, becomes difficult for us when parties can come in and keep getting additional chances and additional bites at the apple and we have to keep responding.  These are obviously very committed litigants.  They have already imposed enormous costs on the company through this case, and so I'm just trying to do, you know -- protect my clients' interests in not having to continually respond over and over again.

But I would say this.  They're also very educated about the proceeding.  They know all about it.  They have a huge team of lawyers.  I think probably dozens of lawyers on behalf of the plaintiff states in New York have entered appearances.  So you know, Judge Marrero could decide this case in the very near future and the merger has been pending for, I don't know, a year and nine months or something.  I would encourage the Court to give them, you know, a week to get this on file.  They shouldn't need more time than that.  They know what their points are and especially with a page limit and, you know, the -- it shouldn't take a lot of work for them to write this up.  They've written these arguments up 100 times already, and so anyway just in the interest of speed, I would encourage the Court to just give them a week

to get this on file.

Anyway, Your Honor, I appreciate your hearing me out on this, and I know you want to do this process and I commend you for it, but that's my thoughts on it.

THE COURT:  I appreciate those thoughts and, again, I -- if I had been able to get out from under the pretty time sensitive stuff I had in -- I guess my point is I'm not going to criticize you for wanting to move this as quickly as possible, given the fact that I wasn't able to get to you until now.  So you're going to be able to say your piece in front of me about that, and I'll take all that under advisement in terms of how quickly we move things.

MR. GELFAND:  Thank you, Your Honor.

THE COURT:  Absolutely.

Is there -- so we've gone through now -- especially with having covered the motion to appoint the trustee -- everything that was on my list of things to address today.  As I said, I -- once I have all those submissions and your responses, my goal will be to get up to speed on those very quickly and then, at that point, have a status -- well, either -- at that point, it, I guess, could go one of a number of different ways.  If I think I need more process, I will reach out to you all and convene a call quickly or I'll just make a decision on everything as soon as I have it as quickly as I can.

But with all of that said, I'm through all the issues that I wanted to tick through.  Are there any other issues that any of the parties online think that they want to bring to my attention today?

MR. DELRAHIM:  Nothing on behalf of the United States, Your Honor, and we're grateful for your time today.

THE COURT:  Anyone but the United States?

MR. GELFAND:  Nothing else here.

MR. MICHALOPOULOS:  Thank you, Your Honor.

MR. SUNSHINE:  Thank you.

THE COURT:  All right.  You're all very welcome.  It is my job, after all.  So I will get the -- I will get both orders on the docket promptly; we'll go forward; and I'll look forward to your submissions responding to whatever happens to come in and we'll go from there.

With that, then, the parties are dismissed.  Everyone have a good weekend.

THE DEPUTY CLERK:  All rise.  This Honorable Court is adjourned.

(Proceedings concluded at 2:46 p.m.)

* * * * * * * * * * * *

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and**

complete transcript of the proceedings to the best of my

ability, dated this 18th day of January 2020.

/s/Timothy R. Miller, RPR, CRR, NJ-CCR
Official Court Reporter
United States Courthouse
Room 6722
333 Constitution Avenue, NW
Washington, DC 20001