## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, et al.,

*Plaintiffs*,

v.

DEUTSCHE TELEKOM AG, et al.,

*Defendants*.

Civil Action No. 1:19-cv-02232-TJK

## RESPONSE OF PLAINTIFF
## THE UNITED STATES TO BRIEFS *AMICUS CURIAE*

The United States respectfully submits this response to the amicus briefs filed pursuant to the Court's Minute Order of January 10, 2020, and requests that the Court grant the United States' motion for entry of the proposed Final Judgment pursuant to the Tunney Act. The United States expects the proposed Final Judgment will provide substantial long-term benefits for American consumers by, among other benefits, ensuring that large amounts of currently unused or underused spectrum are made available to American consumers in the form of two new advanced 5G networks that this proposed Final Judgment will help facilitate. The proposed Final Judgment further provides for a substantial divestiture which, when combined with the mobile wireless spectrum already owned by DISH Network Corp. ("DISH"), will enable DISH to enter the market as a new 5G mobile wireless services provider as well as an additional nationwide facilities-based wireless carrier. The unprecedented required divestitures and related obligations in the proposed Final Judgment are intended to ensure that DISH can begin to offer

competitive services and become an independent and vigorous competitor in the retail mobile wireless service market.

Nothing in the recent amici filings provides a basis for denying the motion for entry of judgment.  Notably, the Litigating States have declined again in their second amicus brief to take a position on the specific question before this Court, and they agree with the United States that their merger challenge and this Tunney Act proceeding present different legal questions under two different statutes.  Moreover, this Court should reject efforts by other amici – non-parties to both this matter and the S.D.N.Y. Litigation – to import testimony from the Litigating States' trial into this proceeding.  Any attempt to do so would be without precedent, unworkable, create serious constitutional issues, and cause significant harm to antitrust enforcement via consent decree settlement.  Further, notwithstanding the Court's instructions, amici fail to address the precise and limited issues before the Court.

The United States thus respectfully submits that, having given the public this additional opportunity to comment on this settlement, the Court has a more than sufficient record on which to find that the proposed Final Judgment is well within "the reaches of the public interest."  The United States has complied with all of the requirements of the Tunney Act, including responding to the public comments received during the 60-day comment period.[1]  The United States thus requests that the Court enter the proposed Final Judgment without further proceedings.

## ARGUMENT

In response to this Court's January 10, 2020 Order, seven briefs were filed.  Notably, the Litigating States do not appear to object to entry of the proposed Final Judgment at this time, and

---

[1] *See* United States' Motion for Entry of Final Judgment, Dkt. No. 44 (Nov. 8, 2019).

their filing makes clear that it is unnecessary to delay resolving the United States' pending

motion to enter final judgment.  Additionally, a majority of the filings the Court accepted support

the settlement.  Only two amici groups opposed entry of the proposed Final Judgment, a group of

economics professors and a group including the Rural Wireless Association, Inc., New

America's Open Technology Institute, and Consumer Reports.[2]  The Court may recognize that

these amici had already made their views known to this Court,[3] and their new submissions do not

provide any basis for denying the United States' pending motion.

## I.      This Tunney Act proceeding and the S.D.N.Y. Litigation present different legal questions under different statutes, and this Court need not wait to enter the proposed Final Judgment.

In its response to the Litigating States' first amicus filing,[4] the United States explained

that the S.D.N.Y. Litigation and this case present different legal questions under two different

statutes.[5]  The Litigating States' second amici filing shows that they agree.  In the S.D.N.Y.

Litigation, Judge Marrero is tasked with evaluating the relevant markets at issue, analyzing the

anticompetitive effects alleged in those markets, and determining whether the remedies secured

by the FCC and the United States that would be in place if the merger were to proceed are

sufficient to "restore the competition" that he may find is lost as a result of the merger.[6]  In

contrast, this Court need not resolve the merits of whether the transaction violates Section 7 of

the Clayton Act.  Under the Tunney Act, this Court need only determine whether entry of the

---

[2] NTCH, Inc. also filed a Motion for Leave to File Brief as *AMICUS CURIAE* (Dkt. No. 58), but the Court denied the motion because "NTCH has already made, in its public comments, most if not all of the arguments it suggests it will make in its brief."  Minute Order, Jan. 29, 2020.
[3] *See* Dkt. Nos. 42-1 at Ex. 12 (Economists' Tunney Act Comments on the DOJ's Proposed Remedy in the Sprint/T-Mobile Merger Proceeding); 42-2 at Ex. 24 (Tunney Act Comments of the Rural Wireless Association, Inc.).
[4] States' Brief as Amici Curiae (Dkt. No. 34-1) ("States' First Amicus") at 2.
[5] *See* Response of the United States to States' Motion to File Brief as Amici Curiae (Dkt. No. 36) at 10-13 ("Response to States' First Amicus").
[6] *See id.* at 10-11 (citing cases).

proposed Final Judgment would be "in the public interest."[7]  Under established D.C. Circuit

precedent, this Tunney Act review invokes a different, lower standard than the legal standards

applied in Section 7 litigation, because "a proposed decree must be approved even if it falls short

of the remedy the court would impose on its own, as long as it falls within the range of

acceptability or is 'within the reaches of the public interest.'"[8]

The United States also explained that this Court is not required to conduct an independent

evaluation of the evidentiary record in the S.D.N.Y. Litigation before reaching a decision on

whether the settlement is in the public interest.[9]  Courts can, and routinely do, make Tunney Act

determinations based solely on the Competitive Impact Statement, comments filed by the public,

and the Department's response.[10]

The Litigating States' second amici filing further shows that they agree with these

principles.  The Litigating States previously asked this Court to defer its decision until after

Judge Marrero issues his decision.[11]  Now, they agree with the United States that "the two cases

'present different legal questions under different statutes,'"[12] and that this Court will do no harm

---

[7] *See id.* at 11; 15 U.S.C. § 16(e)(1).

[8] *See* Response to States' First Amicus at 11; *United States v. AT&T,* 552 F. Supp. 131, 151 (D.D.C. 1982) (citation omitted), *aff'd without opinion sub nom. Maryland v. United States,* 460 U.S. 1001 (1983); *see also United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995).

[9] *See* Response to States' First Amicus at 13-16.

[10] *E.g.*, Order, *United States v. Bayer AG*, No. 18-1241 (D.D.C. Feb. 8, 2019) (entering proposed Final Judgment without further factfinding despite opposition from a number of commenters, including several of the Litigating States); *United States v. US Airways Group, Inc.*, 38 F. Supp. 3d 69 (D.D.C. 2014) (entering proposed Final Judgment without further factfinding despite opposition from commenters).  The Tunney Act expressly states that further factfinding is not required.  *See* 15 U.S.C. § 16(e)(2) ("Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene.").

[11] States' First Amicus at 5, 7.

[12] States' Supplemental Brief as Amici Curiae (Dkt. No. 66) at 2 ("States' Second Amicus") (citing Response to States' First Amicus at 10).

to the S.D.N.Y. Litigation by entering the consent judgment here, since it "will enter Judge

Marrero's analysis as 'a fact of economic and legal life in th[e] industry.'"[13]

All of the Tunney Act requirements have been met, and the Court has given all interested

parties more than ample opportunity to submit their views for consideration.  The United States

respectfully submits that the Court can and should proceed to enter the proposed Final Judgment.

## II.    Amici Support Entry of the Proposed Final Judgment

As noted, a majority of the amicus filings the Court accepted support the settlement.

INCOMPAS believes that "the proposed merger, conditioned on the Department of Justice

settlement, is in the interest of small telecommunications carriers throughout the United

States."[14]  INCOMPAS believes the benefits from the proposed Final Judgment will include the

following:

- Lowering prices for better service, because DISH's entry, "as well as T-Mobile's own wholesale and buildout commitments, will increase the availability of wholesale to small rural carriers."
- Greater use of eSIM, because under the proposed Final Judgment, "both T-Mobile and DISH will be required to support eSIM technology, which will give consumers greater portability and flexibility to switch providers."
- Enforcement mechanisms, because the monitoring trustee appointed by the DOJ and approved by this Court "will have the power to police T-Mobile's compliance with its commitments," and New T-Mobile "risks contempt of court if it violates the Proposed Final Judgment." [15]

In summary, INCOMPAS believes this decree "would result in better service and lower prices

for wireless customers and smaller providers alike, including those in rural America."[16]

---

[13] *Id.* at 4 (citing *Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 13 (1979)).

[14] Brief of INCOMPAS as *Amicus Curiae* in Support of Defendants, Dkt. No. 59-1 at 1.  INCOMPAS states that it "is the leading industry association representing competitive telecommunications carriers, including fixed and mobile voice and broadband carriers, throughout the United States."  *Id.*  In its brief, INCOMPAS notes that its longstanding counsel, Steptoe & Johnson LLP, also serves as DISH's counsel.  *Id.* at n.1.

[15] *Id.* at 4-6.

[16] *Id.* at 2.

Another amicus, Major General Robert E. Wheeler, USAF (Ret.)[17] states the merger will bring "swifter deployment of secure, nationwide 5G networks stimulated by the T-Mobile/Sprint transaction and its accompanying security agreement," "faster buildout of 5G infrastructure in both cities and rural areas," "more true choices" and "essential new capacities to the U.S. military services and the Department of Defense."[18]  The merger and settlement, in his view, "will further allow T-Mobile to use both the 600 MHz spectrum as well as the mid-band spectrum at 2.5 GHz, presently owned by Sprint, to further increase the speed and depth of rural coverage – all in the public interest."[19]

The Prepaid Wireless Group ("PWG") also supports the settlement because it would "foster[] a competitive wireless market for the 5G era,"[20] by:

- "Preserv[ing] competition in the wireless market and put[ting] downward pressure on prices, particularly for lower-income subscribers to mobile voice and broadband services," by extending existing T-Mobile and Sprint agreements with MVNOs under their current terms and conditions for a minimum of seven years;
- "Encourag[ing] the development of emerging eSIM technology on smartphones, which would spur competition by affording consumers greater portability and flexibility to switch wireless providers"; and
- "Foster[ing] the rapid deployment of a robust 5G network nationwide and create a strong third wireless competitor in rural America."[21]

---

[17] Brief of Robert E. Wheeler, Major General, USAF (Ret.) as Amicus Curiae, Dkt. No. 65-1.  General Wheeler "previously served as the deputy Department of Defense Chief Information Officer, in which capacity he was responsible for all networks in the United States military and served as a subject matter expert on the T-Mobile/ Sprint U.S. National Security Agreement for T-Mobile."  *Id.* at 1.
[18] *Id.* at 1, 2, 5.
[19] *Id.* at 5.
[20] Brief of Prepaid Wireless Group, LLC as *Amicus Curiae* in Support of Defendants, Dkt. No. 74.  Prepaid Wireless Group, LLC ("PWG") states that it "is a provider of next-generation wireless service options," in that it "connects its Mobile Virtual Network Operator ("MVNO") partners to the extra capacity offered by wireless carriers," such as T-Mobile and Sprint.  *Id.* at 1. PWG describes itself as a "longstanding supporter of the merger" and filed comments in support of the merger at the FCC.  *See* Comments of Prepaid Wireless Group, WT Docket No. 18-197 (Aug. 28, 2018), available at https://ecfsapi.fcc.gov/file/108300381029207/PWG%20FCC%20comments%20FrNAL.pdf.
[21] *Id.* at 2.

In summary, PWG believes that New T-Mobile's planned investment in its network will "promote MVNO competition in the near-term with improved 4G coverage and lead to a competitive 5G market going forward across the entire nation, including in rural areas."[22]

### III.   This Court should reject amici's other proposals for an unprecedented importing of evidence from the S.D.N.Y. Litigation into this proceeding.

Two amici – non-parties to both the S.D.N.Y. Litigation and this proceeding – have attempted to offer materials from the S.D.N.Y. Litigation.  The request by the RWA Amici that the Court, without any precedent or legal support, take judicial notice of the entire S.D.N.Y. Litigation trial record[23] – which the United States understands runs to more than 2,300 pages – would put the burden on the Court and the United States to review the entire record, determine what portions of it may be relevant here, and determine the impact of other trial testimony on these assertions.  Such a process would substantially erode the benefits from efficient antitrust enforcement.[24]

The United States has noted previously that much of that record would not be relevant here, because it would "pertain to the merits of the Section 7 challenge" or would "pertain to legal claims that the United States chose not to bring."[25]  Indeed, "the United States will not have participated in the creation of that record, and it would violate fundamental principles of

---

[22] *Id.* at 4.

[23] Brief of Amici Curiae the Rural Wireless Association, Inc. New America's Open Technology Institute and Consumer Reports (Dkt. No. 71) at 6-7 n.15, 12-13 ("RWA Amici") (asking court "to take judicial notice of the testimony and evidence presented in the State AG Merger Challenge," although they make this request sight unseen, since they have not obtained copies of the transcripts themselves).

[24] *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995) (noting in an appeal of a Tunney Act decision that "a settlement, particularly of a major case, will allow the Department of Justice to reallocate necessarily limited resources"); *see id.* at 1456 ("The Tunney Act was not intended to create a disincentive to the use of the consent decree." (citing legislative history)).

[25] Response to States' First Amicus at 14.  As we noted, considering these claims would violate separation of powers principles. *See id.* (citing cases).

procedural fairness to rely on such evidence."[26]  We further noted that "it would be burdensome and inappropriate to ask this Court to review the full record, which will have been created by different parties in a different court, and determine how portions of that record might impact its analysis in this case."[27]  Finally, we explained that this approach would fly in the face of Congress's desire for courts making determinations under the Tunney Act to "adduce the necessary information through the least complicated and least time-consuming means possible."[28]

Indeed, the Litigating States also seem to agree with the United States that this Court need not entertain evidence developed in the S.D.N.Y. Litigation, since they have again declined to put before this Court any of the evidence from that case.[29]  Rather than submit evidence they believe might undercut the proposed Final Judgment, the states say that since they are litigating these matters before Judge Marrero, they "did not seek to intervene or submit a comment in this action, and they do not endeavor to address the merits of the consent judgment in this brief."[30]

Moreover, testimony in a separate trial, in a different court, under a different statutory scheme, with different litigants, is not a proper subject of judicial notice.  Under Federal Rule of Evidence 201(b), courts may take judicial notice only when the fact at issue is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The note to this rule makes clear that judicial notice is appropriate

---

[26] *Id.*
[27] *Id.*
[28] *Id.* (citing S. Rep. No. 93-298, at 6 (1973)).
[29] The Litigating States declined to submit public comments during the Tunney Act comment period, and they declined to provide any such evidence with their first amicus filing.
[30] States' Second Amicus at 1-2.

only when the fact is "outside the area of reasonable controversy," such that the ordinary evidentiary process is "dispensed with as unnecessary."[31]  Evidence at a trial, however, is surely subject to dispute, so "[i]mportantly, 'a court cannot notice pleadings or testimony as true simply because these statements are filed with the court."[32]

The Economics Professors' approach of submitting portions of the S.D.N.Y. transcript[33] suffers from the same problems.  The excerpts submitted total less than 450 pages, or less than 20 percent of the trial record, and appear to have been selected to highlight testimony the Amici seem to find favorable.[34]  The problems posed by Amici's effort to import portions of the S.D.N.Y. trial record into this proceeding are most apparent in their attacks on DISH's post-divestiture business prospects.  Indeed, they omitted all of the direct and redirect examinations of Mr. Charlie Ergen, DISH's Chairman and CEO, and they also failed to include any testimony from Mr. Tom Cullen, DISH's Executive Vice President for Corporate Development, who has been a senior executive responsible for DISH's wireless efforts for several years.[35]  To assess

---

[31] Advisory Committee Note to Fed. R. Evid. 201.

[32] *See In re Omnicare, Inc. Securities Litig.*, 769 F.3d 455, 468 (6th Cir. 2014) (quoting 21B Charles Alan Wright et al., *Federal Practice and Procedure* § 5106.4 (2d ed. 2005)); *see also id.* (noting that "generally a court will recognize only indisputable court actions").

[33] Brief of Amici Curiae Nicholas Economides, John Kwoka, Thomas Philippon, Robert Seamans, Hal Singer, Marshall Steinbaum, and Lawrence J. White in Support of Plaintiffs (Dkt. No. 70) ("Economics Professors Amici") at Dkt. Nos. 70-1 at 6 & 70-1 (Amici Economists relying on "the relevant portions" of testimony for six witnesses, while not seeking judicial notice or otherwise explaining the basis on which this Court could rely on such materials).

[34] The Economics Professors Amici submitted testimony of the Litigating States' economics experts Carl Shapiro (Ex. F) and Fiona Scott Morton (Ex. A), but these Amici did not submit any testimony from the Defendants' experts, so what's before this Court is one-sided.  The excerpt from the testimony of DISH's Charlie Ergen (Ex. B) contains 33 pages, but includes excerpts only from the cross and does not even include all the cross, as it omits 15 pages from within the page ranges submitted.  The excerpt does not include any portion of the Ergen direct, and it cuts off as soon as the re-direct begins.  The excerpt of testimony from Sprint's Marcelo Claure (Ex. C) consists of only two pages of cross.  The excerpt of testimony from Deutsche Telekom's Thorstein Langheim  (Ex. D) consists of only 24 pages, or less than one third of his (adverse) direct, and nothing from his friendly cross.  The excerpt of testimony from Deutsche Telekom's Timotheus Hottges (Ex. E) consists of only 8 pages, or less than one sixth of his (adverse) direct, and nothing from his friendly cross.

[35] Instead, the Economics Professors Amici relies on testimony from executives of other companies regarding their view of DISH's business from before the settlement was final and the proposed Final Judgment was submitted to the Court.  *See* Economics Professors Amici at 8 (DOJ deposition of Sprint's Claure took place January 17, 2019,

and respond to Amici's arguments, the Court and the United States would have to review, again, in an unprecedented manner, the other four-fifths of the testimony and all of the exhibits in a trial over which this Court did not preside in a case in which the United States was not a party.[36]  For the same reasons we give to reject the RWA Amici's position, the Court should reject the arguments by the Economics Professors.

The RWA Amici offered yet another approach by submitting the Litigating States' and the Defendants' proposed findings of fact and conclusions of law.[37]  This approach only highlights, however, the problem of asking this Court to rely on portions of or even all of the materials adduced in a trial in another court, involving different legal standards and different parties.  This Court did not observe the witnesses, and therefore would not have any reasonable basis to decide the factual issues presented.

The United States thus requests that this Court reject Amici's attempts to incorporate the S.D.N.Y. transcripts as irrelevant and unworkable.  As discussed in the next section, the materials submitted by the United States and the Response to Public comments provide the necessary foundation for the Court to enter the proposed Final Judgment.

## IV.    The United States has satisfied fully the Tunney Act requirements and provided a factual foundation for its conclusion the proposed settlement is reasonable.

Notwithstanding the Court's instruction that amici should address "only the precise and limited issues before the Court in this proceeding," Minute Order (Jan. 10, 2020), the Economics

---

during the investigation, more than six months before the proposed Final Judgment was filed with the court, and the testimony addressed DISH's previous buildout plan, not its commitment to build out a 5G retail wireless network pursuant to this proposed Final Judgment); *id.* at 9 and Dkt. No. 60-6 at Tr. 320:2-4 (Deutsche Telekom's Langheim testified regarding the analysis being discussed that "it's very important to understand this is June; this is before we got the final remedies with the DOJ").

[36] The United States understands that Defendant DISH will be filing its own response to amici and that it will be addressing these issues as well.

[37] RWA Amici at Exs. B & C.

Professors and the RWA Amici continue to ignore the Tunney Act statutory standard as further defined by the D.C. Circuit. As discussed in more detail in our Response to Comments, the Court's inquiry is a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest."[38] With respect to the adequacy of the relief secured by a proposed final judgment, a court's role is "not to make de novo determination of facts and issues," and "[t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General."[39] The court's function "is not to determine whether the resulting array of rights and liabilities is one that will *best* serve society, but only to confirm that the resulting settlement is within the *reaches* of the public interest."[40] More demanding requirements would "have enormous practical consequences for the government's ability to negotiate future settlements," and the Tunney Act "was not intended to create a disincentive to the use of the consent decree."[41]

The United States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms."[42] The Tunney Act requirements are satisfied by establishing the "factual basis for concluding that the [proposed consent judgment] is a reasonably adequate remedy for the harm predicted in the Complaint,"[43] and "a court must

---

[38] *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *see* Response of Plaintiff the United States to Public Comments on the Proposed Final Judgment (Dkt. No. 42) ("Response to Comments") at 4-8.
[39] *United States v. W. Elec. Co.*, 993 F.2d 1572, 1577 (D.C. Cir. 1993) (quotation marks omitted).
[40] *Microsoft*, 56 F.3d at 1460 (quotation marks omitted).
[41] *Id.* at 1456.
[42] *United States v. Iron Mountain, Inc.*, 217 F. Supp. 3d 146, 152–53 (D.D.C. 2016).
[43] *United States v. Abitibi-Consol. Inc.*, 584 F. Supp. 2d 162, 165 (D.D.C. 2008).

simply determine 'whether there is a factual foundation for the government's decisions such that its conclusions regarding the proposed settlements are reasonable.'"[44]

The Economics Professors do not address this Tunney Act case law at all and otherwise fail to address the precise issue before this Court as to whether the settlement should be approved under Tunney Act standards.  Nor do the RWA Amici address any of these precedents, ignoring the vast bulk of Tunney Act case law and citing only one recent case in which a district court held a Tunney Act hearing.[45]  The RWA Amici also fail to note that, in that case, Judge Leon *approved* the settlement.  The RWA Amici argue that a hearing would allow the Court "to determine if the 'DISH Fix' is likely to occur in a timely and sufficient manner such that it will counteract the competitive concerns raised by the Division and those opposed to the merger."[46] The question for this court, however, is much narrower than that – as set forth in *Iron Mountain*, the relevant inquiry is whether the United States has "provide[d] a factual basis for concluding that the settlements are reasonably adequate."  The Court does not make its own de novo determination as to the facts at issue, and certainly would not apply the burden of proof suggested by amici.[47]

The United States respectfully submits that no proceeding is necessary, as the record before the Court provides a solid factual basis for concluding this settlement more than meets the Tunney Act standard.  The Response to Comments details the elements of the proposed Final

---

[44] *United States v. US Airways*, 38 F. Supp. 3d 69, 75-76 (D.D.C. 2014)  (citation omitted); a*ccord, e.g.*, *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *United States v. Iron Mountain, Inc.*, 217 F. Supp. 3d 146, 152–53 (D.D.C. 2016); *United States v. Sinclair Broad. Grp., Inc.*, 74 F. Supp. 3d 468, 473 (D.D.C. 2014); *United States v. Republic Servs., Inc.*, 723 F. Supp. 2d 157, 160 (D.D.C. 2010).
[45] RWA Amici at 4-5 (citing *United States v. CVS Health Corp. et al.*, 407 F. Supp. 3d 45, 48 (D.D.C. 2019)).
[46] RWA Amici at 7; *see also* Economics Professors Amici at 10-11.
[47] *See United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the "district court must accord due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case").

Judgment and provides a detailed factual basis for the United States' conclusion that the settlement is appropriate.[48]  The United States has already addressed concerns regarding DISH's viability as a competitor, including detailed arguments addressing DISH's assets and track record and its incentive and ability to compete.[49]

Aside from failing to address the Tunney Act standard and the difficulties in attempting to import the trial record into this proceeding, the Amici's specific rejoinders have either already been addressed in the Response to Comments,[50] do not identify a specific complaint about the United States' response,[51] or are otherwise incorrect,[52] inapposite[53] or unpersuasive.[54]

---

[48] Response to Comments at 8-14, 19-31.

[49] Id. at 19-31.

[50] The RWA Amici's points regarding "full" vs. traditional" MVNOs and prepaid vs. post-paid subscribers actually go to the time frame over which consumers are expected to benefit from this remedy.  RWA Amici at 8-10.  The Response to Comments addressed this timing issue at 25-29, and it does not appear the RWA Amici responded to that discussion.  Similarly, the Response to Comments already addressed concerns regarding the scope of DISH's nationwide buildout, see RWA Amici at 10-11 & Economics Professors Amici at 4, where we pointed out that "the proposed Final Judgment fulfills the twin goals of a merger remedy" in that it "permits the merger to proceed, enabling rural consumers to benefit from its promised efficiencies, while adopting remedies that will protect consumers in and bring new competition to urban areas that may have been at greater risk from the merger without this settlement."  Response to Comments at 31.  Neither group of Amici responds to this point.

[51] For example, the RWA Amici claim the United States "summarily dismissed" certain issues with "deflection or false premises," RWA Amici at 7, provides no specifics.

[52] The Economics Professors Amici miss the larger significance of recent events involving Drillisch, an MVNO buyer of network capacity in a transaction that resolved a 4 to 3 wireless merger in Germany.  After acquiring the network capacity in divestiture, Drillisch successfully secured financing to participate in a German spectrum auction and won 70 MHz worth of spectrum licenses to support its network deployment plan.  Response to Comments at 41 n.119.  More recently, Drillisch announced that it would lease spectrum for the installation of its own 5G mobile network at Telefónica, which will be available in January 2026, when the frequencies it acquired will become operational.  See "1&1 Drillisch : leases spectrum to build its own 5G network," Market Screener (Dec. 18, 2019), available at https://www.marketscreener.com/1-1-DRILLISCH-435990/news/1-1-Drillisch-leases-spectrum-to-build-its-own-5G-network-29745806/T.  Thus, to the extent events involving a divestiture buyer in a different transaction in a different market are even relevant here, the Drillisch story shows another such buyer continuing to move ahead in making the transition from MVNO to facilities-based carrier, as DISH has committed to do here.

[53] The RWA Amici complaint about harm to wholesale customers, RWA Amici at 12, discusses claims that were not made in the United States Complaint in this matter, and thus are outside the scope of Tunney Act review.  Response to Comments at 37-40.  Notably, based on a review of the proposed findings of fact and conclusions of law from the S.D.N.Y. Litigation that RWA Amici attached to their brief, it appears these claims were not made by the Litigating States either.  See Dkt. No. 63-1, Exs. B & C (no discussion in S.D.N.Y. post-trial filings of wholesale product market); see also Redacted Complaint at 11-12, Case No. 1:19-cv-05434 (S.D.N.Y. June 11, 2019) (sole product market alleged was market for "retail mobile wireless telecommunications services").

[54] Although the RWA Amici complain that Sprint announced that it was transferring current Virgin Mobile subscribers to its Boost service, RWA Amici at 9, there is no reason to believe this will materially change the

The Tunney Act places a specific question before the Court:  is the proposed consent judgment in the public interest.  In answering that question, the court considers whether a proposed final judgment is a "reasonably adequate remed[y] for the alleged harm."[55]  This is an objective question that can be supported by a review of the Complaint, the Competitive Impact Statement, and the Response to Comments.[56]  By remaining focused on the substance of the settlement, the Tunney Act avoids the constitutional problems that would inhere in any subjective review of the Division's decision-making process.[57]

---

number of subscribers DISH will gain in the divestiture.  Additionally, the Economics Professors place unreasonable weight on a remark by John Legere at an earnings call very shortly after the settlement was announced, without any apparent understanding of what analysis may have been done on that issue.  Economics Professors Amici at 3.  The absence of any mention of this remark in the S.D.N.Y. litigants' respective proposed findings of fact and conclusions of law, RWA Amici at Exs. B & C, suggests either that no one bothered to ask Mr. Legere about this remark at trial or that his answer made the remark immaterial.

[55] *See United States v. Iron Mountain, Inc.*, 217 F. Supp. 3d 146, 152-53 (D.D.C. 2016).

[56] *See United States v. U.S. Airways Grp., Inc.*, 38 F. Supp. 3d 69, 76 (D.D.C. 2014) ("A court can make its public interest determination based on the competitive impact statement and response to public comments alone.") (citing *United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000)); *see also* 15 U.S.C. § 16(e)(2) ("Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to permit anyone to intervene.").

[57] *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992) (citations omitted) (discussing the prohibition on individuals turning the courts into "continuing monitors of the wisdom and soundness of Executive action"); *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (describing the Executive's prosecutorial decisions as having "long been regarded as the special province of the Executive Branch"); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citations omitted) (noting that the presumption of regularity requires that, "in the absence of clear evidence to the contrary, courts presume that [officials] have properly discharged their official duties"); *accord U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 17 (2001).

## <u>CONCLUSION</u>

For the foregoing reasons, the United States requests that the Court find that the proposed

Final Judgment is well within the reaches of the public interest and grant the United States'

Motion for Entry of Final Judgment without further proceedings.

Dated: February 3, 2020

Respectfully submitted,

/s/

_____
Frederick S. Young
D.C. Bar No. 421285
Trial Attorney
Telecommunications and Broadband Section
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 7000
Washington, D.C. 20530
Telephone: (202) 307-2869

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2020, I caused a copy of the foregoing Response of

Plaintiff the United States to Briefs *Amicus Curiae* to be served by ECF on all counsel who have

appeared in this matter, which includes counsel for *amici curiae*.


/s/   Frederick S. Young
Frederick S. Young
D.C. Bar No. 421285
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 7000
Washington, DC  20530
Tel:  202-307-2869