# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202 974 1622
mnelson@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

February 4, 2020

<u>VIA ECF</u>

The Honorable Timothy J. Kelly
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

      Re: <u>*United States, et al. v. Deutsche Telekom AG, et al.*, No. 1:19-cv-02232-TJK (D.D.C.) – Amicus Briefs</u>

Dear Judge Kelly:

      I write on behalf of Defendants Deutsche Telekom AG, T-Mobile US, Inc., SoftBank Group Corp., and Sprint Corporation (collectively, "Defendants") regarding the various amicus briefs and responses submitted in this matter pursuant to the Court's January 10, 2020 Minute Order.

      Defendants agree with the United States and DISH Network Corporation ("DISH") that entry of the Proposed Final Judgment is in the public interest under the Tunney Act.[1]  In light of the responses from the United States and DISH that fully address the issues raised by amici, as well as the extensive record before this Court demonstrating that the Proposed Final Judgment is in the public interest, Defendants do not plan to submit any further response to the various amicus briefs.

      As the Court has a full record on which to make the public interest determination required by the Tunney Act, Defendants respectfully submit that an evidentiary hearing is not necessary and request that the Court enter the Final Judgment as expeditiously as possible.[2]

---

[1] *See* Response of Plaintiff United States to Briefs *Amicus Curiae*, ECF No. 77, at 1-2, 10-15 (Feb. 3, 2020); Response of Defendant DISH Network Corporation to *Amici*, ECF No. 78, at 1-5, 16 (Feb. 3, 2020).

[2] *See* Response of Plaintiff United States to Briefs *Amicus Curiae*, ECF No. 77, at 2 (Feb. 3, 2020) ("[T]he Court has a more than sufficient record on which to find that the proposed Final Judgment is well within 'the reaches of the public interest.' . . . The United States thus requests that the Court enter the proposed Final Judgment without further proceedings."); *id.* at 12-13 ("The United States respectfully submits that no proceeding is necessary, as the record before the

The Honorable Timothy J. Kelly
February 4, 2020
Page 2 of 5

While review of a consent judgment under the Tunney Act "may well overlap" with the evidence and issues being litigated by other plaintiffs in other forums,[3] this Court has an independent statutory responsibility to proceed to judgment on the Tunney Act public interest determination (as the small number of States that are still litigating this merger acknowledge).[4] There is no reason for further delay. As this Court recognized in declining the litigating States' invitation to postpone a decision in this case, both the parties and the public "would, in one way or another, be harmed by a delay."[5] And, as the United States explained previously, there is a "substantial public interest benefit from expeditious entry of the proposed Final Judgment" because it "would trigger T-Mobile's obligation to prepare its network for DISH subscribers, a crucial step for DISH to begin offering mobile wireless services."[6]

As the submissions before the Court demonstrate, entry of the Proposed Final Judgment will substantially benefit the public interest by, among other things:

- Enabling consumers to benefit from the merger's recognized efficiencies, including the ability for T-Mobile to offer 5G wireless services, a more advanced technology, more cost-effectively.[7]

- Enhancing the availability of a higher quality mobile wireless network to consumers, including through the Defendants' commitments to provide 5G coverage to 97% of the U.S. population within three years, and 99% within six years, including specific additional commitments to ensure that the network provides specified, high-quality 5G download speeds.[8]

---

Court provides a solid factual basis for concluding this settlement more than meets the Tunney Act standard. The Response to Comments details the elements of the proposed Final Judgment and provides a detailed factual basis for the United States' conclusion that the settlement is appropriate.").

[3] *See* States' Supp. Brief as Amici Curiae, ECF No. 66, at 4 (Jan. 24, 2020).

[4] *See* States' Brief as Amici Curiae, ECF No. 54, at 3 (Jan. 8, 2020) (noting that "the Court is tasked with making an independent determination" under the Tunney Act).

[5] Jan. 8, 2020 Minute Order.

[6] Response of the United States to States' Motion to File Brief as Amicus Curiae, ECF No. 36, at 1 (Oct. 23, 2019); *see also* Response of Plaintiff United States to the Public Comments on the Proposed Final Judgment, ECF No. 42, at 46-47 (Nov. 6, 2019) ("DOJ Response to Public Comments") (similar).

[7] *See* DOJ Response to Public Comments, at 33-34; Statement of Interest of the United States of America, ECF No. 52-1, at 4 (Dec. 20, 2019) ("Statement of Interest of the United States") ("The Antitrust Division also recognized . . . that the merger, if accompanied by appropriate relief, would yield 'significant efficiencies' that would benefit consumers nationwide.").

[8] *See* Statement of Interest of the United States, at 8 & n.3.

The Honorable Timothy J. Kelly
February 4, 2020
Page 3 of 5

- Providing specified benefits for the nation's rural residents, including through Defendants' commitments to provide 5G coverage to 85% of the rural population within three years, and 90% within six years.[9]

- Creating a new competitor through the divestiture of Sprint's prepaid business to DISH, coupled with other commitments to provide DISH with network support, spectrum licenses, and the option to purchase retail stores and cell sites—all of which will enable DISH to quickly enter the market as an effective competitor.[10]

Under the terms of the consent judgment, moreover, DISH will receive assets and a wholesale arrangement that will enable it to immediately enter the market as a viable, new competitor.[11]  Those assets would not be available to DISH through any other means.[12]  In this way, the consent judgment "will enable DISH to enter the market as a new 5G mobile wireless services provider."[13]  More specifically, the consent judgment "will provide substantial long-term benefits for American consumers by ensuring that large amounts of currently unused or underused spectrum are made available to American consumers in the form of advanced 5G networks."[14]  Consumers will benefit because "expanded output provides further downward pressure on prices moving forward."[15]

And the DISH divestiture is only one component of the merger at issue here. More broadly, the merger of T-Mobile and Sprint will produce a market that is far more competitive than it would be without the merger.  Indeed, the merger promises to deliver a world-class 5G network of unparalleled scope and capacity at extremely competitive prices.[16] This network will vastly improve and expand 5G coverage, including in rural areas, and will help attract significant investment as the United States seeks to lead in the international race to robust

---

[9] *See id.* at 2, 8-9, 17.

[10] *See id.* at 10-11; *see also* Competitive Impact Statement, ECF No. 20, at 8-12 (July 30, 2019).

[11] *See* DOJ Response to Public Comments, at 22; Statement of Interest of the United States, at 10-11.

[12] *See* DOJ Response to Public Comments, at 8-14.

[13] *Id.* at 1.

[14] *Id.* at 2; *see also id.* at 18-19 (agreeing with public comments noting that the consent judgment "will ensure that valuable spectrum resources will finally be put to productive use by Dish," among other benefits); *id.* at 20 ("DISH's spectrum assets make it a prime candidate for entry into the mobile wireless market.  DISH has invested more than $20 billion in spectrum licenses. As a result, DISH currently has far more spectrum at its disposal than any other company aside from the existing nationwide wireless carriers.").

[15] *Id.* at 26.

[16] *See* DOJ Response to Public Comments, at 2, 18, 33; Statement of Interest of the United States, at 10.

5G services.[17] By contrast, the market without the merger would be significantly less competitive.[18] Not only would DISH be deprived of the competitive benefits contemplated by the consent judgment, but Sprint's diminishing competitive position would compel it to retreat from the national market and become a regional player.[19] Accordingly, the "competitive considerations" that this Court must evaluate weigh strongly in favor of approving the consent judgment.[20]

       The substantial public interest benefits of the Proposed Final Judgment are further underscored by the conclusions of the Federal Communications Commission ("FCC") based on its independent review of the transaction. Contemporaneously with the Antitrust Division's investigation, the FCC undertook its own extensive review of the transaction in connection with the Defendants' application to transfer licenses, authorizations, and spectrum leases held by Sprint to T-Mobile.[21] Pursuant to its statutory mandate under the Communications Act, the FCC was required to determine whether the "public interest, convenience, and necessity" would be served by the proposed transfers, including consideration of the merger's potential impact on competition.[22] After "conduct[ing] an exhaustive review of the proposed transaction," the FCC concluded that "the transaction, as conditioned, will result in significant public interest benefits," including by "encouraging the rapid deployment of a new 5G mobile wireless network, and improving the quality of the Applicants' services for American consumers"; that "[c]ompared to the capabilities of the standalone companies . . . the transaction will significantly increase the quality and geographic reach of their wireless networks for the foreseeable future"; and that "[i]n an economy increasingly dependent upon access to broadband services for innovation in a wide variety of sectors and services, these network deployment synergies will yield significant public interest benefits."[23]

---

[17] *See* DOJ Response to Public Comments, at 30-31, 33; Ex. B, Part 1 to Statement of Interest of the United States of America, ECF No. 52-3, at 3-5 ("FCC Decision").

[18] *See, e.g.*, FCC Decision, at 75-76; *id.* at 168 ("Increasing the quality of the Applicants' network will deliver benefits directly to their customers, while also yielding dynamic competitive benefits as they create a strong alternative to the two leading national networks.").

[19] *See, e.g.*, DOJ Response to Public Comments, at 8-14, 18; FCC Decision, at 37 & n.274.

[20] *See* 15 U.S.C. § 16(e)(1)(A).

[21] *See* FCC Decision, at 3-11.

[22] *See id.* at 4-5, 18-19.

[23] *Id.* at 4; *see also id.* at 168 (concluding that "the combination of T-Mobile and Sprint will yield significant network deployment benefits, increasing the quality and availability of advanced wireless services" which "will occur nationwide, but will be particularly significant for rural areas, where the conditions require robust broadband services deployment well beyond what the Applicants would deliver in the absence of the transaction").

The Honorable Timothy J. Kelly
February 4, 2020
Page 5 of 5

   The record before the Court, including the aforementioned findings and many others, confirm that the Proposed Final Judgment is in the public interest.  No further process is needed, and we respectfully urge prompt approval by the Court.

   We thank the Court for its time and consideration.

               Respectfully submitted,

               */s/ Mark W. Nelson*

               Mark W. Nelson (D.C. Bar #442461)
               mnelson@cgsh.com
               CLEARY GOTTLIEB STEEN & HAMILTON LLP
               2112 Pennsylvania Avenue, NW
               Washington, DC 20037-3229
               T: 202-974-1500
               F: 202-974-1999

               *Counsel for Defendants Deutsche Telekom AG and T-Mobile US, Inc.*