

U.S. Department of Justice

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20001*

May 29, 2020

**BY E-MAIL**

Mark W. Nelson, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Mnelson@cgsh.com

Jeffrey Blum, Esq.
Senior Vice President, Public Policy &
  Government Affairs
DISH Network
1110 Vermont NW, Suite 750
Washington, DC 20005
Jeffrey.Blum@dish.com

   Re: *United States v. Deutsche Telekom, et al.*, No. 19-cv-2232 (D.D.C. 2020)

Dear Mark and Jeff:

  In a joint letter, you asked the Department of Justice for approval to modify the Prepaid Assets T-Mobile US, Inc. ("T-Mobile") is to divest to DISH Networks Corporation ("DISH") pursuant to the Final Judgment entered in the above-captioned matter, to permit T-Mobile to retain approximately 11,000 Boost customers that are participating in a California Lifeline Pilot Program. M. Nelson and J. Blum, Letter to F. Young, May 27, 2020 ("Joint Letter") at 2. Your request was prompted by a provision in the order of the California Public Utilities Commission ("CPUC") approving the merger of T-Mobile and Sprint Corporation ("Sprint") that directed T-Mobile to "make a good faith effort to secure any necessary approvals from the Federal Communications Commission and Department of Justice to maintain the Boost customer base currently receiving service under the California Lifeline Pilot Program and avoid their transfer to DISH under the terms of the divestiture." *Id*. at 1 (citing CPUC Decision 20-04-008 at 54 (rel. Apr. 27, 2020), *available at* http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M335/K378/335378035.PDF).

  As explained in a letter to the Federal Communications Commission ("FCC") from Marybel Batjer, President of the CPUC, which the CPUC also provided to the Department, the CPUC partnered with Sprint Spectrum L.P. ("Sprint Spectrum"), through its prepaid brand, Boost, to develop the Boost Pilot Programs beginning in 2018. Letter

from M. Batjer (CPUC) to M. Dortch (FCC), May 15, 2020 ("CPUC Letter") at 2. Through these pilot programs, the CPUC "sought to increase participation in the California Lifeline program and to improve customer choice and access to wireless services." *Id*. In the CPUC's view, "the continued success of the pilot programs also depends on their continued operation by a New T-Mobile entity and on the New T-Mobile network." *Id*.

The Final Judgment entered in this matter on April 1, 2020, provides that the "divestitures pursuant to this Final Judgment will include the entire Divestiture Assets" "[u]nless the United States otherwise consents in writing." Final Judgment at § IV.E. The Final Judgment also provides that the divestitures are to be "accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquiring Defendant as part of a viable, ongoing operation relating to the provision of retail mobile wireless service" and that "none of the terms of any agreement between Acquiring Defendant and Divesting Defendants gives the Divesting Defendants the ability unreasonably to raise the Acquiring Defendant's costs, to lower the Acquiring Defendant's efficiency, or otherwise to interfere with the ability of the Acquiring Defendant to compete." *Id*.

Applying the standards set forth in § IV.E of the Final Judgment, the United States consents to your request. T-Mobile is willing to retain these subscribers and DISH is willing to have T-Mobile retain them and continue the pilot program already in place. The impetus for this decision was the CPUC's order entered in April 2020, long after the proposed Final Judgment was filed with the Court on July 26, 2019. The Final Judgment agreed to at that time and later entered by the Court specifically exempted from the Prepaid Assets divestiture the prepaid wireless business conducted by Virgin Mobile under the Assurance Lifeline brand. Final Judgment at § II.A, II.K. As the Competitive Impact Statement filed in this matter explained, the Assurance Lifeline assets were not included in the divestiture "due to various contractual and regulatory obligations." CIS at 8 n.2. The same considerations that led the Department to agree to exclude the Assurance Lifeline subscribers from the divestiture assets support excluding these Boost Lifeline subscribers as well.

Moreover, the Department concludes that T-Mobile's retention of these subscribers will not undermine DISH's ability to operate a viable, ongoing retail mobile wireless service or give T-Mobile the ability unreasonably to raise DISH's costs, lower its efficiency, or interfere with its ability to compete. These 11,000 subscribers represent a de minimis fraction of Boost's overall subscribers. As noted by the CPUC, T-Mobile's agreement to retain these subscribers also relieves DISH of the obligations to provide service at "below market rates" and to invest the time and resources to work with the CPUC to modify the existing authorization and receive permission to continue operating the pilot programs. CPUC Letter at 2. Thus, T-Mobile's agreement has the effect of improving DISH's competitiveness as it enters the retail mobile wireless business.

      For all of these reasons, and subject to T-Mobile and DISH reaching agreement on appropriate modifications to the Asset Purchase Agreement, Reverse Transition Services Agreement, or other business documents to reflect this change in the assets being divested, the Department consents to T-Mobile retaining these Boost Lifeline subscribers.

                                                      Sincerely,

                                                    /s/

                                              Frederick S. Young  
                                            Trial Attorney