**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEUTSCHE TELEKOM AG, T-MOBILE US, INC., SOFTBANK GROUP CORP., SPRINT CORPORATION, and DISH NETWORK CORPORATION, <br><br> *Defendants*. | Case No. 19-cv-2232 <br><br> Filed: |

## [PROPOSED] FINAL JUDGMENT

WHEREAS, Plaintiffs, United States of America and the States of Kansas, Nebraska, Ohio, Oklahoma, and South Dakota ("Plaintiff States"), filed their Complaint on July 26, 2019, the Plaintiffs and Defendants Deutsche Telekom AG, T-Mobile US, Inc., SoftBank Group Corp., and Sprint Corp., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, pursuant to a Stipulation and Order among Deutsche Telekom AG, T-Mobile US, Inc., SoftBank Group Corp., Sprint Corp., and DISH Network Corp. (collectively, "Defendants") and the United States, the Court has joined DISH Network Corp. as a defendant to this action for the purposes of settlement and for the entry of this Final Judgment;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the purpose of this Final Judgment is to preserve competition by enabling the entry of another national facilities-based mobile wireless network operator;

AND WHEREAS, Plaintiffs require Divesting Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to Plaintiffs that the divestitures and other relief required by this Final Judgment can and will be made and carried out, and that Defendants will not later raise any claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Divesting Defendants and Parent Defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18. Pursuant to the Stipulation and Order filed simultaneously with this Final Judgment joining DISH as a defendant to this action, DISH has consented to this Court's exercise of specific personal jurisdiction over DISH in this matter solely for the purposes of settlement and for the entry and enforcement of the Final Judgment.

## II. **DEFINITIONS**

As used in this Final Judgment:

A. "Acquiring Defendant" or "Acquirer" or "DISH" mean Defendant DISH Network Corporation, a Nevada corporation with its headquarters in Englewood, Colorado; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B. "Assurance Wireless" means the prepaid wireless business conducted by Virgin Mobile under the Assurance Lifeline brand.

C. "Cell Site" or "Tower Site" mean any wireless communications towers, rooftops, water towers, or other wireless communications facilities owned or leased by Divesting Defendants and the physical location and wireless equipment thereto.

D. "Decommissioned" or "Decommissioning" means, with respect to a Cell Site, when the Cell Site is no longer transmitting on Divesting Defendants' networks. With respect to Retail Locations, Decommissioned or Decommissioning means when Divesting Defendants cease customer service operations.

E. "Deutsche Telekom" means Deutsche Telekom AG, a German corporation headquartered in Bonn, Germany, that is the controlling shareholder of T-Mobile; its successors and assigns; and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F. "Divesting Defendants" means T-Mobile and Sprint.

G. "Divestiture Assets" means the Prepaid Assets, the 800 MHz Spectrum Licenses, the Decommissioned Retail Locations, and the Decommissioned Cell Sites.

3

H. "Fifth Generation Broadband Services" or "5G Services" means at least 3GPP Release 15, capable of providing enhanced mobile broadband (eMBB) functionality.

I. "Full MVNO Agreement" means an agreement that (1) provides the Acquiring Defendant the ability to sell retail mobile wireless services as an MVNO using the Divesting Defendants' wireless networks, (2) provides Acquiring Defendant the option to deploy its own core network with all associated service platforms to be offered in combination with services provided by Divesting Defendants' wireless networks, and (3) requires Divesting Defendants to provide network connectivity between Divesting Defendants and Acquiring Defendant's network for all traffic.

J. "MVNO" means a mobile virtual network operator, such as TracFone and Google Fi, that obtains network access from facilities-based providers like T-Mobile and Sprint and resells that mobile wireless service to consumers under its own brand name.

K. "Parent Defendants" means Deutsche Telekom and SoftBank.

L. "Prepaid Assets" means all tangible and intangible assets primarily used by the Boost Mobile, Sprint-branded prepaid, and Virgin Mobile businesses today, including but not limited to Boost and Virgin Mobile Retail Locations, licenses, personnel, facilities, data, and intellectual property, as well as all relationships and/or contracts with prepaid customers served by Sprint, Boost Mobile, and Virgin Mobile. Prepaid Assets do not include the Assurance Wireless business and the prepaid wireless customers of Shenandoah Telecommunications Company and Swiftel Communications, Inc.

M. "Prepaid Assets Personnel" means all employees whose jobs currently focus on the support of the Prepaid Assets, or whose jobs have previously focused on supporting the

4

Prepaid Assets at any time between January 1, 2016 and the date on which the Prepaid Assets are divested to the Acquirer. Prepaid Assets Personnel shall include no fewer than 400 current employees of the Divesting Defendants, which shall include employees involved in sales management, marketing management, distribution support, sales support, and finance.

N. "Retail Locations" means any retail locations owned or operated by Divesting Defendants and from which either T-Mobile or Sprint sells mobile wireless service under any of their affiliated brands, including Sprint, Boost Mobile, Virgin Mobile, T-Mobile, Metro by T-Mobile, and MetroPCS.

O. "800 MHz Spectrum Licenses" means all of Sprint's 800 MHz spectrum holdings as listed and described in Attachment A to this Final Judgment.

P. "600 MHz Spectrum Licenses" means all of DISH's 600 MHz spectrum holdings as listed and described in Attachment B to this Final Judgment.

Q. "SoftBank" means SoftBank Group Corp., a Japanese corporation and controlling shareholder of Sprint; its successors and assigns; and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

R. "Sprint" means Defendant Sprint Corporation, a Delaware corporation with its headquarters in Overland Park, Kansas; its successors and assigns; and its subsidiaries, divisions, groups, affiliates (other than SoftBank), partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

S. "T-Mobile" means Defendant T-Mobile US, Inc., a Delaware corporation with its headquarters in Bellevue, Washington; its successors and assigns; and its subsidiaries, divisions,

groups, affiliates (other than Deutsche Telekom), partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

## III. APPLICABILITY

A. This Final Judgment applies to the Divesting Defendants, Parent Defendants, and Acquiring Defendant, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. If any of the terms of an agreement between (i) Divesting Defendants and the Acquiring Defendant to effectuate the divestitures required by the Final Judgment or (ii) Defendants and the Federal Communications Commission (FCC) to effectuate the divestitures required by the Final Judgment varies from the terms of this Final Judgment then, to the extent that Defendants cannot fully comply with both terms due to a conflict between the terms, this Final Judgment will determine Defendants' obligations. Provided, however, that if there is an inconsistency between this Final Judgment and any commitment any of the Defendants have made to the FCC, the more stringent obligations will control.

## IV. DIVESTITURES

A. **Prepaid Assets**

1. The Divesting Defendants shall take all actions required to enable Acquiring Defendant to have, within ninety (90) days after notice of the entry of this Final Judgment by the Court, the ability to provision any new or existing customer of the Prepaid Assets holding a compatible handset device onto the T-Mobile network pursuant to the terms of any Full MVNO Agreement. Divesting Defendants are ordered and

6

all agreements related to the Prepaid Assets. To the extent consent cannot be obtained and the agreement is not otherwise assignable, Divesting Defendants shall use best efforts to obtain or provide for Acquiring Defendant, as expeditiously as possible, the full benefits of any such agreement as it relates to the Prepaid Assets by assisting Acquiring Defendant to secure a new agreement and by taking any other steps necessary to ensure that Acquiring Defendant obtains the full benefit of the agreement as it relates to the Prepaid Assets. Divesting Defendants will not assert, directly or indirectly, any legal claim that would interfere with Acquiring Defendant's ability to obtain the full benefit from any transferred third-party agreement to the same extent enjoyed by Divesting Defendant prior to the transfer.

6. At Acquiring Defendant's option, on or before the divestiture of the Prepaid Assets, Divesting Defendants shall provide contact information and make introductions to distributors and suppliers that support the Prepaid Assets. Divesting Defendants shall not interfere with Acquiring Defendant's attempts to negotiate with these distributors or suppliers.

B.  **800 MHz Spectrum License Transfer**

1. Divesting Defendants are ordered and directed, within three (3) years after the closing of the divestiture of the Prepaid Assets or within five (5) business days of the approval by the FCC of the transfer of the 800 MHz Spectrum Licenses, whichever is later, to divest the 800 MHz Spectrum Licenses in a manner acceptable to the United States, in its sole discretion, after consultation with the affected Plaintiff States. The United States, in its sole discretion, after consultation with the affected Plaintiff States,

11

Case 1:19-cv-02232-TJK   Document 85   Filed 04/01/20   Page 12 of 64

may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and will notify the Court in such circumstances. Acquiring Defendant will make timely application to the FCC for the transfer of the spectrum to comply with this Paragraph.

2.  Acquiring Defendant shall pay a penalty of $360,000,000 to the United States if it elects not to purchase the 800 MHz Spectrum Licenses. The Acquiring Defendant shall pay the penalty within thirty (30) days of declining to purchase the 800 MHz Spectrum Licenses. Notwithstanding the foregoing, the Acquiring Defendant will not be required to pay such penalty if it has deployed a core network and offered 5G Service to at least 20% of the U.S. population over DISH's facilities-based network within three (3) years of the closing of the divestiture of the Prepaid Assets.

3.  If, at the expiration of this Final Judgment, Acquiring Defendant has acquired the 800 MHz Spectrum Licenses, but has not deployed all of the 800 MHz Spectrum Licenses for use in the provision of retail mobile wireless services, Acquiring Defendant shall forfeit to the FCC, at the United States' sole discretion, after consultation with the affected Plaintiff States, all of the 800 MHz Spectrum Licenses that are not being used to provide retail mobile wireless services, unless Acquiring Defendant already is providing nationwide retail mobile wireless services over DISH's facilities-based network.

4.  If the Acquiring Defendant does not purchase the 800 MHz Spectrum Licenses, Divesting Defendants shall conduct an auction of the 800 MHz Spectrum Licenses within six (6) months of Acquiring Defendant declining to purchase the

licenses. In such auction, Divesting Defendants will not divest the 800 MHz Spectrum Licenses to any other national facilities-based mobile wireless network operator, without the prior written approval of the United States, in its sole discretion, after consultation with the affected Plaintiff States, and will not be required to divest the 800 MHz Spectrum Licenses at a price that is lower than the price the Acquiring Defendant originally agreed to pay for such licenses. In addition, Divesting Defendants may apply to the United States to be relieved from the commitment to sell the 800 MHz Spectrum Licenses if (i) Acquiring Defendant declines to purchase the 800 MHz Spectrum License and (ii) the sale of the 800 MHz Spectrum Licenses is no longer needed fully to remedy the competitive harms of the merger, as determined by the United States in its sole discretion, after consultation with the affected Plaintiff States.

C.  **Decommissioned Cell Sites**

1. Divesting Defendants shall make all Cell Sites Decommissioned by Divesting Defendants within five (5) years of the closing of the divestiture of the Prepaid Assets, which shall not be fewer than 20,000 Cell Sites, available to Acquiring Defendant immediately after such Decommissioning.

2. Divesting Defendants shall provide, no later than the closing of the Prepaid Assets divestiture, the Acquiring Defendant and Monitoring Trustee with a detailed schedule identifying, over the next five (5) years: (i) each Cell Site that the Divesting Defendants plan to Decommission; (ii) the forecasted date for Decommissioning; and (iii) whether a given Cell Site is freely transferrable. For a period of five (5) years following the closing of the divestiture of the Prepaid Assets, on the first day of each

however, that following the divestiture of the 800 MHz Spectrum Licenses, the Divesting Defendants will be permitted to lease back from the Acquiring Defendant up to 4 MHz of spectrum as needed for up to two (2) years following the divestiture of the 800 MHz Spectrum Licenses.

## XVI. NOTIFICATIONS

A. Acquiring Defendant shall notify the United States at least thirty (30) calendar days prior to any change in the corporation(s) that may affect compliance obligations arising under this Final Judgment, including, but not limited to: a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Final Judgment; the proposed filing of a bankruptcy petition; or a change in the corporate name or address. Provided, however, that, with respect to any proposed change in the corporation(s) about which Acquiring Defendant learns fewer than thirty (30) calendar days prior to the date such action is to take place, Acquiring Defendant shall notify the United States as soon as is practicable after obtaining such knowledge.

B. For transactions that are not subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Divesting Defendants shall not, without providing advanced notification to the United States, directly or indirectly acquire a financial interest, including through securities, loan, equity, or management interest, in any company that competes for the provision of mobile wireless retail services. Acquiring Defendant shall not sell any of the

32

Divestiture Assets or any currently held substantially similar assets, directly or indirectly, without providing advance notification to the United States.

C.  Such notification will be provided to the United States in the same format as, and per the instructions relating to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended. Notification will be provided at least thirty (30) calendar days prior to acquiring any such interest, and will include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within thirty (30) calendar days after notification, the United States makes a written request for additional information, Defendants shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting and certifying, in the manner described in Part 803 of Title 16 of the Code of Federal Regulations as amended, the truth, correctness, and completeness of all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section will be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section will be resolved in favor of filing notice. Defendants may, however, provide informal notice and request that the United States waive the requirement of formal notice for any transaction.

D.  Defendants represent and warrant to the United States that they have disclosed all agreements between Acquiring Defendant and either Divesting Defendants or Parent Defendants

related to the settlement of this action and their obligations and commitments put forth in this Final Judgment. Defendants will provide thirty (30) days written notice to the United States of any intent to enter into or execute any amendment, supplement, or modification to any of the agreements between Divesting Defendants or Parent Defendants and Acquiring Defendant. Notwithstanding any provision to the contrary in the agreements between Divesting Defendants or Parent Defendants and Acquiring Defendant, Divesting Defendants or Parent Defendants may not amend, supplement, terminate, or modify any of the agreements or any portion thereof without obtaining the consent of the United States in its sole discretion. The United States will not withhold consent to amendment, supplementation, modification, or termination of any of the agreements or portion thereof if Divesting Defendants demonstrate to the United States, in its sole discretion, that a refusal to amend, supplement, modify, or terminate the agreements would prevent Divesting Defendants from meeting any build out requirements imposed by the FCC.

## XVII. RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XVIII. ENFORCEMENT OF FINAL JUDGMENT

A. The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may

establish a violation of the decree and the appropriateness of any remedy therefore by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.  The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.  In any enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved prior to litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.  For a period of four (4) years after the expiration or termination of the Final Judgment pursuant to Section XIX, if the United States has evidence that a Defendant violated this Final Judgment before it expired or was terminated, the United States may file an action against that Defendant in this Court requiring that the Court order (i) Defendant to comply with

the terms of this Final Judgment for an additional term of at least four (4) years following the filing of the enforcement action under this Section, (ii) any appropriate contempt remedies, (iii) any additional relief needed to ensure that Defendant complies with the terms of the Final Judgment, and (iv) fees or expenses as called for in Paragraph XVIII(C).

## XIX. EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment expires seven (7) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestitures, buildouts and other requirements have been completed and that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XX. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, any comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: **April 1, 2020**

[Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16]

_____
United States District Judge

36