*Execution Version*

LICENSE PURCHASE AGREEMENT

by and between

T-MOBILE USA, INC.

and

DISH NETWORK CORPORATION

Dated as of July 1, 2020

US-DOCS\115630591.1    **CONFIDENTIAL TREATMENT REQUESTED**

ARTICLE 2
PURCHASE AND SALE OF LICENSES

Section 2.1   Purchase and Sale of Seller Licenses

(a)   Subject to the terms and conditions set forth in this Agreement, Seller hereby agrees to, or to cause the Licensing Subsidiaries to, sell, convey, transfer, deliver and assign to Purchaser at the Closing, and Purchaser hereby agrees to purchase from Seller and the Licensing Subsidiaries at the Closing, all right, title and interest of Seller and the Licensing Subsidiaries in and to the Seller Licenses, free and clear of all Liens (but subject to the Specified Leases, to the extent that any remain in effect as of the Closing), in exchange for the payment by Purchaser of $3,589,738,864 (the "Purchase Price"); *provided*, that, in the event that the Rebanding has not been completed prior to the Closing (other than in respect of Excluded Rebanding Activities), the Purchase Price shall be reduced to $3,517,944,087 and Seller shall promptly reimburse Purchaser for its reasonable, documented, out of pocket costs and expenses incurred in the relocation of Seller Licenses and the licenses of other incumbent 800 MHz licensees that are needed to complete the Rebanding (for the avoidance of doubt, neither the failure to complete non-technical administrative tasks relating to the Rebanding that will not interfere with Purchaser's use and enjoyment of the wireless spectrum covered by the Seller Licenses (such as delivery of invoices or proof of payment, or reconciling contracts of Seller and its Affiliates), nor the failure to complete or obtain any required regulatory or administrative processes or determinations (such as the need to obtain a certification or order of completion by the FCC or other Governmental Authority) so long as all technical Rebanding work (other than Excluded Rebanding Activities) has been completed, shall be considered a failure to complete the Rebanding); *provided further*, that Purchaser is not prevented from using the Seller Licenses as of the Closing and does not have to perform any Rebanding or incur any costs or expenses related to the Rebanding.

(b)   At the Closing, Purchaser shall pay the Purchase Price to Seller by wire transfer of immediately available funds to such account(s) as Seller shall designate no later than three Business Days prior to the Closing Date.

(c)   Following the Closing, nothing contained herein or in any Transaction Document (other than the Spectrum Lease) shall restrict the Purchaser's right to use and deploy the spectrum granted by the FCC pursuant to the Seller Licenses in whatever manner it chooses (subject to the rights of the lessees under the Assigned Specified Leases).

Section 2.2   No Assumption of Liabilities

THIS IS A PURCHASE AND SALE OF ASSETS AND PURCHASER SHALL NOT ASSUME, BE BOUND BY OR BE RESPONSIBLE OR LIABLE FOR, OR BE DEEMED TO HAVE ASSUMED, BECOME BOUND BY OR RESPONSIBLE OR LIABLE FOR, UNDER THIS AGREEMENT OR BY REASON OF THE TRANSACTIONS CONTEMPLATED HEREBY, ANY LIABILITIES OF SELLER OR ANY OTHER PERSON OF ANY KIND OR NATURE, KNOWN OR UNKNOWN, CONTINGENT OR OTHERWISE, THAT EXISTED, AROSE, WERE INCURRED, OR OTHERWISE PERTAIN TO ACTIONS EVENTS OR CIRCUMSTANCES OCCURRING OR EXISTING PRIOR TO THE CLOSING WITH RESPECT TO THE SELLER LICENSES.  PURCHASER SHALL BE LIABLE FOR ALL LIABILITIES ARISING FROM AND AFTER THE CLOSING OUT OF OR RELATING TO

# ARTICLE 6
## CONDITIONS TO CLOSING

Section 6.1   Conditions to the Obligations of Purchaser

The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the satisfaction on or prior to the Closing Date of each of the following conditions, unless waived in writing by Purchaser:

(a)   The FCC Consents shall have been obtained by one or more FCC Orders, free of any conditions that, individually or in the aggregate, are materially adverse to the business of Purchaser and its Affiliates or that would reasonably be expected to materially impair the Seller Licenses (taken as a whole), except for conditions on any Seller License that are generally applicable to 800 MHz licenses or licensees.

(b)   The representations and warranties of Seller contained in ARTICLE 3 shall be true and correct in all material respects (without giving effect to any qualifications or limitations therein as to materiality or Material Adverse Effect) as of the Effective Date and as of the Closing Date as if made on such date (except that representations and warranties that are made as of a specific date need to be so true and correct in all material respects only as of such date).

(c)   Seller shall have performed in all material respects all covenants and agreements required by this Agreement to be performed by it prior to or at the Closing.

(d)   Purchaser shall have received at the Closing a certificate signed by an executive officer of Seller to the effect that such executive officer has read Section 6.1(b) and Section 6.1(c) and the conditions set forth therein have been satisfied as of the Closing Date.

(e)   No Law or award, order, writ, decree, injunction or judgment by any arbitrator or Governmental Authority shall be in effect that enjoins or prohibits the consummation of the transactions contemplated hereby.

(f)   Any applicable waiting period under the HSR Act relating to the transactions contemplated by this Agreement shall have expired or been terminated.

(g)   Except as permitted by the Spectrum Lease (if the Lease-Back Option has been timely exercised by Seller) and except for the lease of spectrum under the Assigned Specified Leases (if any), Seller and its Subsidiaries shall have discontinued all of their respective operations on and uses of the spectrum covered by the Seller Licenses.

(h)   Purchaser shall have received at the Closing each of the deliveries set forth in Section 2.3(b) required to be delivered to Purchaser.

Section 6.2   Conditions to the Obligations of Seller

The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the satisfaction on or prior to the Closing Date of each of the following conditions, unless waived in writing by Seller:

**CONFIDENTIAL TREATMENT REQUESTED**

(a) The FCC Consents shall have been obtained by one or more FCC Orders, free of any conditions that, individually or in the aggregate, are materially adverse to the business of Seller and its Affiliates.

(b) The representations and warranties of Purchaser contained in ARTICLE 4 shall be true and correct in all material respects (without giving effect to any qualifications or limitations therein as to materiality) as of the Effective Date and as of the Closing Date as if made on such date (except that representations and warranties that are made as of a specific date need to be so true and correct in all material respects only as of such date).

(c) Purchaser shall have performed in all material respects all covenants and agreements required by this Agreement to be performed by it prior to or at the Closing.

(d) Seller shall have received at the Closing a certificate signed by an executive officer of Purchaser to the effect that such executive officer has read Section 6.2(b) and Section 6.2(c) and the conditions set forth therein have been satisfied as of the Closing Date.

(e) No Law or award, order, writ, decree, injunction or judgment by any arbitrator or Governmental Authority shall be in effect that enjoins or prohibits the consummation of the transactions contemplated hereby.

(f) Any applicable waiting period under the HSR Act relating to the transactions contemplated by this Agreement shall have expired or been terminated.

(g) Seller shall have received at the Closing each of the deliveries set forth in Section 2.3(c) required to be delivered to Seller.

## ARTICLE 7
## TERMINATION

Section 7.1    Termination

(a) This Agreement may be terminated, and the transactions contemplated hereunder abandoned, without any further obligation of any Party (except as set forth herein) at any time prior to the Closing Date as follows:

(i) by mutual written consent of the Parties;

(ii) by either Party if the Closing does not occur by the first anniversary of the Filing Deadline (the "Outside Date"); provided, however, that the right to terminate this Agreement pursuant to this Section 7.1(a)(ii) shall not be available to either Party if such Party's failure to comply with its obligations under this Agreement has materially contributed to the failure of the Closing to occur before the Outside Date;

(iii) by Seller, if Purchaser fails to consummate the transactions contemplated by this Agreement within five Business Days after the satisfaction or waiver of the conditions set forth in ARTICLE 6 (except those conditions that by their nature will be satisfied at the Closing) and as required by Section 2.3 or by such later time for the Closing Date as may be agreed upon in writing by Purchaser and Seller;

19

    (iv) by Purchaser, if (x) Seller fails to consummate the transactions contemplated by this Agreement within five Business Days after the satisfaction or waiver of the conditions set forth in ARTICLE 6 and as required by Section 2.3 (except those conditions that by their nature will be satisfied at the Closing) or by such later time for the Closing Date as may be agreed upon in writing by Purchaser and Seller, and (y) a court of competent jurisdiction has determined by final, non-appealable order or decree that the remedy of specific performance is not available to Purchaser to specifically enforce the consummation of the transactions contemplated hereunder;

    (v) by either Party upon any other material breach by the other Party of its obligations under this Agreement; *provided* that the breaching Party has not cured such breach within 30 days following written notice of such breach and that the terminating Party is not otherwise in breach of its obligations under this Agreement which has prevented or would prevent the satisfaction of any condition for the benefit of the breaching party set forth in ARTICLE 6 (for the avoidance of doubt, if a Party is ready and willing to file the FCC Applications on the Filing Deadline subject only to the substantially concurrent filing of the FCC Applications required by the other Party, the Party ready and willing to so file the FCC Applications shall not be deemed to be in breach of its obligations under this Agreement and the other Party (if not so ready and willing) shall be deemed to be in material breach of Section 5.5(a) and the Party ready and willing to file the FCC Applications may terminate this Agreement if such material breach is not cured within 30 days following written notice of such breach);

    (vi) by either Party if the consummation of the transactions contemplated hereby shall be prohibited by a final, non-appealable order, decree or injunction of a court of competent jurisdiction; or

    (vii) by Purchaser in the event that Seller opts to deliver an Updated Disclosure Schedule pursuant to Section 5.9.

  (b) In the event of the termination of this Agreement, this Agreement shall become void and have no effect, and, subject to Section 7.1(c) and Section 7.1(d), neither Party shall have any Liability or further obligation to the other Party in respect of this Agreement, except that this ARTICLE 7 and ARTICLE 9 shall survive termination of this Agreement (it being understood that the survival of Section 9.15 shall not preclude a Party's expenses from being included in damages for a breach of this Agreement by the other Party).

  (c) In the event that Seller terminates this Agreement pursuant to Section 7.1(a)(iii) or Section 7.1(a)(v), or either Party terminates this Agreement pursuant to Section 7.1(a)(ii), at a time when Seller could have terminated this Agreement pursuant to Section 7.1(a)(iii) or Section 7.1(a)(v), then, in any such case, Purchaser shall pay to Seller a termination fee of $71,794,777 in cash (the "Termination Fee"), which shall be paid by Purchaser to Seller by wire transfer of immediately available funds within three Business Days after such termination of this Agreement. Notwithstanding any other provision of this Agreement, including Section 9.9, prior to the Closing, payment of the Termination Fee shall be the sole and exclusive remedy of Seller and its Affiliates against Purchaser and its Affiliates with respect to the transactions contemplated by this Agreement, including for any breach by Purchaser of its obligations hereunder, and Seller and its Affiliates hereby forfeit any right to bring an action prior to the

Closing to specifically enforce Purchaser's obligations under this Agreement, including Purchaser's obligation to consummate the transactions contemplated hereunder. The Termination Fee shall be considered liquidated damages (and not a penalty) for any and all Losses suffered or incurred by Seller in connection with this Agreement.

(d) The sole and exclusive remedy of Purchaser in the event that Seller fails to consummate the transactions contemplated hereunder when required by this Agreement shall be an action for specific performance in accordance with Section 9.9; *provided*, that if a court of competent jurisdiction has determined by final, non-appealable order or decree that the remedy of specific performance is not available to Purchaser to specifically enforce the consummation of the transactions contemplated hereunder, then following termination of this Agreement in circumstances when the Termination Fee is not payable, Purchaser shall be entitled as its sole and exclusive remedy to seek damages against Seller for any uncured material breach of this Agreement by Seller that occurred prior to such termination, up to a maximum amount of damages of $71,794,777 in the aggregate.

(e) The Parties acknowledge and agree that in the event the FCC Applications are filed and the FCC fails to approve the transactions contemplated hereby, neither Party shall have any liability to the other Party hereunder, except as expressly provided in Section 7.1(c) or Section 7.1(d) above.

(f) The Parties acknowledge that the agreements set forth in this ARTICLE 7 are an integral part of the transactions contemplated by this Agreement and that, without these agreements the Parties would not enter into this Agreement.

## ARTICLE 8
## SURVIVAL AND INDEMNIFICATION

Section 8.1    Survival

All representations and warranties made by the Parties in this Agreement shall survive for a period lasting 18 months after the Closing and shall expire at such time, except for the Purchaser Fundamental Representations and the Seller Fundamental Representations which shall survive for a period lasting three years after the Closing and then expire at such time. All covenants and agreements set forth herein which by their terms contemplate actions or impose obligations prior to or at the Closing shall survive the Closing for eighteen (18) months from the Closing Date and then expire. All covenants and agreements set forth herein which by their terms contemplate actions or impose obligations following the Closing shall survive the Closing and remain in full force and effect in accordance with their terms. Any claim by a Party based upon breach of any representation, warranty, covenant or agreement must be submitted to the other Party prior to the expiration of such survival period.

Section 8.2    General Indemnification Obligation

(a) From and after the Closing, each Party (the "Indemnifying Party") agrees to indemnify and hold harmless the other Party and its Affiliates, and its and their respective Representatives, successors and assigns (each, an "Indemnified Party"), against and in respect of any and all Losses incurred or suffered by any Indemnified Party, that result from, relate to or arise out of (i) any inaccuracy in any representation or warranty made by the Indemnifying Party