UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE TELECOM AG, *et al.*,<br><br>Defendants. | Case No. 1:19-cv-02232 (TJK) |

BRIEF OF COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION
AND INCOMPAS
AS *AMICI CURIAE* IN SUPPORT OF
MOTION FOR RELIEF FROM JUDGMENT (ECF 94)

Stephanie A. Joyce, Esq.
D.C. Bar No. 464778
Computer & Communications Industry
   Association
25 Massachusetts Avenue, N.W.
Suite 300C
Washington, DC 20001
Email: stephaniejoyce@ccianet.org

*Application for Admission Pro Hac Vice Pending*

*Attorney for Computer & Communications Industry Association*

Gregory L. Ewing, Esq.
D.C. Bar No. 484684
Potomac Law Group, PLLC
1717 Pennsylvania Avenue, N.W.
Suite 1025
Washington, DC 20006
Phone: 202-558-5557
Email: gewing@potomaclaw.com

*Attorney for Computer & Communications Industry Association and INCOMPAS*

Dated: August 31, 2023

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Local Rule 7(o)(5) and Rules 29(a)(4)(A) and 26.1 of the Federal Rules of Appellate Procedure, Computer & Communications Industry Association states that it is a non-stock, non-profit Virginia Corporation under section 501(c)(3) of the Internal Revenue Code and therefore no publicly held corporation owns 10% or more of its stock.

Pursuant to Local Rule 7(o)(5) of this Court and Rules 29(a)(4)(A) and 26.1 of the Federal Rules of Appellate Procedure, INCOMPAS is a not-for-profit corporation and has not issued shares or debt securities to the public. INCOMPAS does not have any parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

## STATEMENT OF *AMICI CURIAE* INDEPENDENCE

Pursuant to Local Rule 7(o)(5) and FRAP 29(a)(4)(E), Computer & Communications Industry Association and INCOMPAS state that:

(i) no party's counsel authored the brief in whole or in part;

(ii) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and

(iii) no person—other than the amici curiae and its counsel—contributed money that was intended to fund preparing or submitting the brief.

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................. **iv**

**INTRODUCTION AND INTERESTS OF** *AMICI CURIAE* ...................................................... **1**

**ARGUMENT**.................................................................................................................................**2**

    **I.**    **THE COURT HELD THAT DIVESTITURE OF THE 800 MHz LICENSES WILL FOSTER COMPETITION IN WIRELESS SERVICES AND IS IN THE PUBLIC INTEREST.** ............................................... **2**

    **II.**    **THE RELIEF SOUGHT IN THE MOTION IS THE BEST MEANS FOR ENSURING COMPETITION IN WIRELESS SERVICES.** ................................... **3**

**CONCLUSION** ........................................................................................................................... **5**

## TABLE OF AUTHORITIES

**Cases**

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) .................................................. 2

**Statutes**

15 U.S.C. § 16(e) ............................................................................................................................ 3

**Other Authorities**

GN Docket No. 22-203, 2022 FCC Communications Marketplace Report, FCC 22-103
 (rel. Dec. 30, 2022) .................................................................................................................... 4

T-Mobile, *America's Leading Wireless Network Tops Competitors in New Industry
 Expert Report* (Apr. 17, 2023) ................................................................................................... 5

## INTRODUCTION AND INTERESTS OF *AMICI CURIAE*

*Amici curiae* Computer & Communications Industry Association ("CCIA") and INCOMPAS support DISH Network Corporation ("DISH") in its Motion for Relief from Judgment (the "Motion").

CCIA is an international, not-for-profit trade association representing a broad cross-section of communications and technology firms. For more than fifty years, CCIA has promoted open markets, open systems, and open networks. CCIA members employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy.[1] As a membership organization representing a broad range of leading providers of digital and communications services, CCIA has a vested interest in seeing robust competition in the wireless space.

INCOMPAS is the leading industry association representing competitive telecommunications carriers, including fixed and mobile voice and broadband carriers, throughout the United States. Composed of more than 70 members, INCOMPAS advocates for laws and policies that promote competition, innovation and economic development. Many INCOMPAS members are small providers, serving low-income and senior consumers in rural areas. INCOMPAS works to ensure that competitive communications and technology providers can continue to develop and deliver better service and greater innovation to consumers and businesses.[2]

The Motion requests a reasonable, 10-month extension of time for DISH to exercise its right, granted by the Court, to purchase several 800 MHz Spectrum Licenses from T-Mobile. CCIA and INCOMPAS urge the Court to grant the Motion as the best means to replace the competition

---

[1] DISH is a member of CCIA. The list of CCIA members is available at www.ccianet.org/members/.
[2] DISH is a member of INCOMPAS. The list of INCOMPAS members is available at https://www.incompas.org/memberlist.asp.

lost via the T-Mobile-Sprint merger, preserve consumer choice, and encourage broad-reaching, cost-effective wireless service.

This brief shall be filed if the Court grants the accompanying Unopposed Motion for Leave to File Brief Amici Curiae.

## ARGUMENT

**I. THE COURT HELD THAT DIVESTITURE OF THE 800 MHz LICENSES WILL FOSTER COMPETITION IN WIRELESS SERVICES AND IS IN THE PUBLIC INTEREST.**

In its Tunney Act review of the negotiated settlement resolving challenges to the T-Mobile-Sprint merger lodged by the United States and several states, the Court acknowledged that the merger would result in "anticompetitive effects" and "lost competition." Memorandum Opinion at 3, 14 (Apr. 14, 2020) (ECF 86). After careful consideration of "hundreds of pages of public comments, amicus briefs, and responsive filings from the parties," *id*. at 10, the Court approved the Final Judgment, which ordered, *inter alia*, that the merged entity must "divest the 800 MHz Spectrum Licenses" to DISH. Final Judgment ¶ 1 (Apr. 1, 2020) (ECF 85). This divestiture, along with the other terms of the Final Judgment, would "preserve competition by enabling the entry of another national facilities-based mobile wireless network operator." *Id*. at 2.

The Court was mindful that "a district court's Tunney Act review should not be merely an act of 'judicial rubber stamping.'" ECF 86 at 7 (quoting *United States v. Microsoft Corp*., 56 F.3d 1448, 1458 (D.C. Cir. 1995)).  The Court was committed to making "'an independent determination as to whether or not entry of a proposed consent decree is in the public interest.'" *Id*. (citing 56 F.3d at 1458).  Employing that standard, the Court held that the required divestiture of 800 MHz Spectrum Licenses is "reasonably designed to remedy the alleged loss of competition" and "is thus in the public interest." ECF 86 at 8.

The merger eliminated a significant portion of head-to-head competition in retail wireless

2

services, leaving the United States with only three national, facilities-based providers. *E.g.*, ECF 86 at 3. All parties agreed that the way to mitigate this loss of competition was "to replace one competitor with another" – "[w]here once there was Sprint, they say, there will soon be DISH." ECF 86 at 9. For its part, DISH, being committed to its accepted role of restoring the wireless market to a state of robust competition, subjected itself to the jurisdiction of the Court and became a co-defendant in this action. ECF 85 at 2.

The Court approved and entered the Final Judgment after concluding that divestiture of several assets, including the 800 MHz Spectrum Licenses, to DISH is "reasonably designed" to replace the competition that was lost via the merger. ECF 86 at 15. It was aware, however, of the magnitude of that lost competition and how much work was necessary. The plan would take time. "Sprint's entire competitive impact may not be replaced as quickly as commenters—or even the Court—would like. But that does not render the proposed Final Judgment unreasonable or inconsistent with the public interest." ECF 86 at 14.

The goal of Tunney Act review, in the context of merger challenges, is to ensure that settlements are approved only if the ultimate goal of antitrust law – preservation of a competitive market – is served. *See* ECF 86 at 6-7 (quoting 15 U.S.C. § 16(e)). The Court found that DISH's purchase of the 800 MHz Spectrum Licenses would meet this goal, and that finding is now and should remain settled law.

## II. THE RELIEF SOUGHT IN THE MOTION IS THE BEST MEANS FOR ENSURING COMPETITION IN WIRELESS SERVICES.

The Motion demonstrates that the Court was prudent in its reasonable prediction that DISH would restore competition in wireless services. In the last three years, DISH has made substantial progress in furtherance of the Final Judgment, spending more than $1 Billion in development and deployment of the facilities that will use the 800 MHz Spectrum Licenses as part of a nationwide

3

service offering that already covers more than 73% of the U.S. population – more than 246 million Americans. Motion at 10.

But competition in the wireless industry remains in a delicate state. In December 2022, the Federal Communications Commission ("FCC") released its 2022 Communications Marketplace Report,[3] stating that "the U.S. communications marketplace is in a substantial state of change and re-examination," *id*. ¶ 3, and citing the T-Mobile-Sprint merger as one of "the recent major transactions that have had and will continue to have an effect on the competitive landscape." *Id*. ¶¶ 63, 66-67. The "anticompetitive effects" of that merger (ECF 86 at 3) persist: "As of December 2021, there were three facilities-based mobile wireless service providers in the United States that this Report refers to a 'nationwide service providers.'" FCC 22-103 ¶¶ 64. But the FCC found a bright spot to highlight in the Report: DISH's work and investment since entry of the Final Judgment.  The Report states that BOOST Mobile, which DISH acquired from T-Mobile via a separate provision of the Final Judgment, has enabled continuation of service to at least nine million customers and is "the largest MVNO [Mobile Virtual Network Operators] in the United States." *Id*. ¶ 66.  The FCC also stated that DISH reported deployment of facilities serving "at least 20% of the U.S. population with 5G coverage" "available in more than 120 cities" as of June 14, 2022. *Id*. ¶ 67.

But AT&T, Verizon, and T-Mobile continue to own the non-resale wireless market. The post-merger T-Mobile has fared particularly well: "The Un-carrier's 5G network covers 325 million people across 1.9 million square miles – more than AT&T and Verizon combined."[4] The Court's decision to adopt the well-designed relief proposed by Department of Justice – to enable

---

[3]    GN Docket No. 22-203, 2022 FCC Communications Marketplace Report, FCC 22-103 (rel. Dec. 30, 2022), available at  https://www.fcc.gov/document/2022-communications-marketplace-report.

[4]    T-Mobile, *America's Leading Wireless Network Tops Competitors in New Industry Expert Report* (Apr. 17, 2023), https://www.t-mobile.com/news/network/americas-leading-wireless-network-tops-competitors-in-new-report.

4

DISH's entry into this market – thus remains vitally necessary. The briefs opposing the Motion fail to persuade otherwise, elevating the interests of particular businesses over the interests of the market and the general public.

The Motion explains in close detail the extraordinary effort DISH has made in fulfilling the role given to it by the Court, including with regard to the 800 MHz Spectrum Licenses. Motion at 10-11. CCIA need not repeat those details here, but rather emphasizes that the need for DISH's continued deployment, via the approved facilities-based strategy resting in part on divestiture of the 800 MHz Spectrum Licenses, has not diminished since entry of the Final Judgment. Being so close to completion, DISH seeks only a small adjustment to the Final Judgment. Weighing the proposed relief – a 10-month extension – against the significant and much-needed benefit of restoring competition in the wireless services market, the decision is easy. The Court should grant the Motion as the best way forward for restoring wireless competition to pre-merger levels.

## CONCLUSION

For all these reasons, the Court should grant the Motion for Relief from Judgment.

Dated: August 31, 2023                                    Respectfully submitted,

COMPUTER & COMMUNICATIONS                     INCOMPAS
  INDUSTRY ASSOCIATION

 /s/ Gregory L. Ewing                                     /s/ Gregory L. Ewing
Gregory L. Ewing Esq. (D.C. Bar No. 484684)               Gregory L. Ewing Esq. (D.C. Bar No. 484684)
Potomac Law Group, PLLC                                   Potomac Law Group, PLLC
1717 Pennsylvania Avenue NW, Suite 1025                   1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006                                      Washington, DC 20006
Phone: 202-558-5557                                       Phone: 202-558-5557
Email: gewing@potomaclaw.com                              Email: gewing@potomaclaw.com

Stephanie A. Joyce, Esq.
D.C. Bar No. 464778

Computer & Communications Industry Association
25 Massachusetts Avenue, N.W.
Suite 300C
Washington, DC 20001
Email: stephaniejoyce@ccianet.org

*Application for Admission Pro Hac Vice Pending*