**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEUTSCHE TELEKOM AG, et al., <br><br> *Defendants*. | Civil Action No. 1:19-cv-02232-TJK |

**T-MOBILE'S AND DEUTSCHE TELEKOM'S RESPONSE TO THE UNITED STATES' RESPONSE TO DISH'S MOTION FOR RELIEF FROM JUDGMENT AND OPPOSITION TO THE UNITED STATES' MOTION FOR MODIFICATION OF JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ......................................................................................................... 1
ARGUMENT ....................................................................................................................................... 3
I.   The Court should deny DISH's Motion, as it is now clear that no party to this case believes it should be granted. ............................................................................................................... 3
II.  The DOJ's requested modification should likewise be denied. ............................................... 3
      A.   The DOJ's proposed modification, like DISH's proposed modification, does not further the intended result of the Final Judgment. ................................................... 4
      B.   The DOJ's proposed modification does not satisfy the *Rufo* standard ................... 6
           1.   The DOJ must, but cannot, show that its requested modification is warranted by changed circumstances. .......................................................... 6
           2.   The DOJ's newly proposed compromise modification is no more suitably tailored to the alleged changed circumstances than DISH's requested modification. ................................................................................................ 9
III. The DOJ's requested "clarification" is procedurally improper and substantively incorrect .. 12
CONCLUSION .................................................................................................................................. 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Pigford v. Veneman*,
 292 F.3d 918 (D.C. Cir. 2002) ............................................................................................. 14

*Rufo v. Inmates of Suffolk Cnty. Jail*,
 502 U.S. 367 (1992) ................................................................................................... 2, 4, 6-7

*United States v. Baroid Corp.*,
 130 F. Supp. 2d 101 (D.D.C. 2001) ............................................................................... 2, 6-7

*United States v. Signature Flight Support Corp.*,
 607 F. Supp. 2d 56 (D.D.C. 2009) .................................................................................... 8-9

*United States v. W. Elec. Co.*,
 46 F.3d 1198 (D.C. Cir. 1995) ............................................................................................ 4, 7

Defendants T-Mobile US, Inc. and Deutsche Telekom AG submit this Response to the United States' Response to DISH's Motion for Relief from Judgment and Opposition to the United States' Motion for Modification of Judgment, ECF No. 132 ("DOJ Resp.").

## PRELIMINARY STATEMENT

The DOJ's Response presents no evidence, misstates applicable law, is inconsistent with the DOJ's own prior commitments, and is procedurally improper. It is nothing more than an attempt to broker a compromise by rewriting an extensively negotiated deal that was previously found by the Court to be in the public interest and that has been relied on for over three years by T-Mobile and by third parties. This is not, as the DOJ suggests, merely a "commercial dispute" between T-Mobile and DISH. It is an attempt by DISH to renege on its obligations because it wants T-Mobile to continue to incur the costs and risks of carrying a multi-billion-dollar asset on its books well beyond the three years previously agreed to by the parties.

The DOJ provides no support for its statement that DISH would be better able to compete if it owned the 800 MHz spectrum licenses at issue here. The DOJ has known about DISH's plan to seek more time to acquire the 800 MHz spectrum licenses since March 2023 and has at its disposal subpoena authority and the broad powers of the Monitoring Trustee appointed by this Court. Yet the DOJ offers no evidentiary support for its arguments.

Moreover, while the DOJ appears to defer to DISH's claims that it wants to buy the spectrum licenses, the DOJ does not propose to require DISH to complete the purchase, nor has DISH committed to do so. In fact, DISH has told its investors that it does not need 800 MHz spectrum. This is remarkable given that the premise of DISH's Motion, the DOJ's Response, and supporting amici is that the public interest is better served by DISH owning the spectrum licenses than by allowing them to be sold sooner to another qualified buyer at auction.

The DOJ's unsupported statements regarding the public interest and DISH's hypothetical actions are not evidence. Nor is the DOJ's subjective opinion sufficient to carry its heavy burden to prove that the Final Judgment should be disturbed. "This is only logical, as the unelected antitrust officials must be constrained in some way from imposing their interpretation of the 'public interest' on unwilling parties." *United States v. Baroid Corp.*, 130 F. Supp. 2d 101, 103-04 (D.D.C. 2001). Far from proving anything, the DOJ bases its argument on a non-sequitur. It correctly argues that because DISH has not explained "how or why it will be able to exercise its option by June 30, 2024," DISH's requested modification should be denied. DOJ Resp. at 12. Yet the DOJ suggests a shorter extension also without explaining how or why DISH would be better positioned to purchase the spectrum licenses three months earlier than DISH itself proposed.

The DOJ's arguments are also premised on an incorrect legal standard. The DOJ takes the view that it can change the terms of a settlement merely because it thinks the public interest might be better served by new terms, without regard to the fact that the Final Judgment itself already reflects an extensively negotiated compromise agreed to by all parties, including the DOJ. Despite its efforts to portray this as a unique circumstance based on macroeconomic developments, which boil down to DISH having to pay a higher interest rate now, the DOJ's interpretation of the law would throw the finality of all settlements with the Government into doubt. T-Mobile is entitled to rely on the contractual commitments made by DISH and the DOJ absent a sufficient showing under the standards set forth in *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992).

Finally, the DOJ's motion for modification and clarification is procedurally improper. The Court's briefing schedule invited the DOJ to submit a "brief containing the views of the United States," not an independent motion for relief. Aug. 21, 2023 Minute Order; *see also* Joint Status Report, ECF 98 (requesting the briefing schedule entered by the Court). Moreover, the DOJ's

"motion" is simply a brief containing ambiguous requests for relief and a Proposed Order that does not match. In spite of the ambiguity and procedural impropriety, T-Mobile wishes to avoid further delay and therefore responds in the four days allotted under the Court's order to both the DOJ's response to DISH's Motion and its new purported motion for modification and clarification.

## ARGUMENT

**I.   The Court should deny DISH's Motion, as it is now clear that no party to this case believes it should be granted.**

No party supports DISH's Motion anymore, not even DISH. Kansas, Nebraska, and Oklahoma (the "Opposing States") oppose DISH's Motion, States' Opp., ECF 131, the DOJ agrees that "DISH's requested modification is not suitably tailored to the present circumstances" as required for modification, DOJ Resp. at 12, and DISH consents to the DOJ's requested relief, *id.* at 4 n.9. The DOJ argues that June 30, 2024 is too long of an extension because it extends beyond the "Outside Date" in the LPA. DOJ Resp. at 12; *see* Bennett Decl., Ex. B § 7.1(a)(ii) (LPA), ECF 107-2 (defining "Outside Date"). The DOJ also argues that because DISH has not explained "how or why it will be able to exercise its option by June 30, 2024," an extension alone without additional modification "undermines the Final Judgment's auction provision." DOJ Resp. at 12. Colorado and DISH consent to the DOJ's motion, and five states (Arkansas, Florida, Ohio, South Dakota, and Louisiana) have taken no position on it. *See* DOJ Resp. at 4 n.9. Therefore, T-Mobile, the DOJ, DISH, and all States that have offered a view agree that DISH should not receive the modification it requested in its Motion. In short, no party supports DISH's proposed modification and DISH's Motion should be denied.

**II.   The DOJ's requested modification should likewise be denied.**

The DOJ's motion is subject to the same legal standard as DISH's Motion and fails for the same reasons. The DOJ emphasizes that its proposed modification seeks to "'tighten the decree

3

in order to accomplish its intended result' rather than 'relieve the [enjoined] party of the decree's constraints." DOJ Resp. at 7 (quoting *United States v. W. Elec. Co.*, 46 F.3d 1198, 1202 (D.C. Cir. 1995)). The DOJ then suggests that as a government enforcer it "may move to modify a consent decree in order to 'accomplish its intended result,'" without regard to whether changed circumstances warrant modification or whether the modification is suitably tailored. DOJ Resp. at 7 (quoting *New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 168 (D.D.C. 2008)). But the DOJ's modification does not actually seek to "tighten the decree in order to accomplish its intended result," and even if it did, there is no separate standard for government enforcers seeking to do so in contested cases, as the DOJ concedes by reciting the *Rufo* standard. DOJ Resp. at 7-8.

### A. The DOJ's proposed modification, like DISH's proposed modification, does not further the intended result of the Final Judgment.

First, the DOJ, like DISH and amici, fails to distinguish between the general purpose of the Final Judgment and the specific purpose of DISH's option to buy the 800 MHz spectrum licenses. The DOJ quotes from the Competitive Impact Statement regarding the former, but omits any statements from the Competitive Impact Statement regarding the latter. DOJ Resp. at 1-2. Specifically, the DOJ ignores that the Competitive Impact Statement provides that the purpose of DISH's option was to "ensure DISH has sufficient spectrum to meet its buildout and service requirements and provide mobile wireless service to customers." Competitive Impact Statement, ECF 20 at 9. It further explained that "DISH may, at its option, elect not to acquire the spectrum if DISH can meet certain network buildout and service requirements without it." *Id.* And DISH has, just as the Final Judgment contemplated might occur, met its network buildout and service requirements without the spectrum. T-Mobile's Opp. to DISH's Motion ("Opp.") at 7, 25-26, ECF 106. The Opposing States likewise recognize the specific purpose of the 800 MHz spectrum

4

licenses option and that DISH apparently no longer needs it to compete. States' Opp. at 3-4, ECF 131.

Second, the DOJ's premise for modification is that "DISH is more likely to succeed as a national carrier if it obtains the 800 MHz spectrum that is the subject of the dispute." DOJ Resp. at 3. But the DOJ has no evidence to support this statement. That fact is remarkable given that DOJ has broad latitude to investigate these issues through its own subpoena power or that of the Monitoring Trustee. Instead of citing actual evidence, the DOJ resorts to citing statements from T-Mobile from 10 years ago, and seven years prior to the entry of the Final Judgment, that generically refer to the value of "lower-band spectrum." DOJ Resp. at 6-7. It is undisputed that low-band spectrum is valuable. After all, the 800 MHz spectrum licenses themselves are valued by DISH at more than $5 billion. *See* Opp. at 10. But DISH has substantial amounts of low-band 600 MHz spectrum that it is currently using to provide 5G services to 73% of the country in accordance with its FCC commitments. *Monitoring DISH's Compliance with Conditions Granting an Extension of Time to Complete Construction of Facilities and Buildout Commitments* at 1-2, WT Docket No. 22-212 (July 14, 2023), https://www.fcc.gov/ecfs/document/10714483010865/1.

In light of DISH's success in exceeding its buildout and service commitments, significant doubts exist about the following issues, among others: (1) whether DISH intends to purchase the spectrum; (2) whether DISH needs the spectrum to service customers; and (3) why, if the 800 MHz spectrum is so critical to DISH's ability to compete, DISH has publicly and repeatedly told the world that the spectrum would be a "nice to have" and not a "must have." Opp. at 4, 26. The DOJ's mere assertion, unsupported by any evidence whatsoever, that DISH would be a better competitor with the spectrum than without should not be credited by this Court. For example,

neither the DOJ nor DISH present any evidence why DISH, which is admittedly already deep in debt, will be better able to compete after adding to its debt burden by spending $3.6 billion (regardless of interest rates) to buy the 800 MHz spectrum licenses. Nor is the DOJ the sole arbiter of what would make DISH more competitive. The Opposing States plainly disagree with the DOJ's assessment, and there is no basis to prioritize the DOJ's opinions over those of the Opposing States.

> **B.    The DOJ's proposed modification does not satisfy the *Rufo* standard.**
>
> > **1.    The DOJ must, but cannot, show that its requested modification is warranted by changed circumstances.**

The DOJ, like DISH, is required to present a changed circumstance justifying modification of the decree. *See Baroid*, 130 F. Supp. 2d at 104. Although the DOJ points out that the hardship prohibition in the Final Judgment is limited to Defendants, it relies entirely on hardship assertions that were improperly raised by Defendant DISH. In any event, this has no bearing on the requirement that the DOJ prove unforeseen changed circumstances warranting modification.

The DOJ's attempt to distinguish *Baroid* by asserting that its requested modification in that case was somehow not in furtherance of "the competitive purpose of the consent decree" is incorrect. DOJ Resp. at 10. The DOJ in *Baroid* specifically argued: "[T]he relevant question before the court therefore is whether modification of the Judgment would serve the public interest in 'free and unfettered competition as the rule of trade.'" Mem. of the United States in Support of Mot. to Modify Final Judgment at 5, *United States v. Baroid*, Case No. 93-2621 (D.D.C. Mar. 30, 2000) (citations and quotations omitted), https://www.justice.gov/atr/case-document/memorandum-united-states-support-motion-modify-final-judgment. The DOJ then argued that the modification in that case would further the public interest. *Id.* at 6.

6

In the face of these arguments, the *Baroid* court squarely held that the DOJ must show that "a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Baroid*, 130 F. Supp. 2d at 104 (quoting *Rufo*, 502 U.S. at 393). Indeed, "[t]his is only logical, as the unelected antitrust officials must be constrained in some way from imposing their interpretation of the 'public interest' on unwilling parties." *Id.* at 103-04. The DOJ's conclusory, unsupported, and incorrect statements regarding the "public interest" here do not excuse it from showing the requisite changed circumstances.

The DOJ's reliance on *Western Electric* is equally perplexing. Nothing in that case supports an argument that the DOJ need not show changed circumstances when arguing for a modification to an antitrust consent decree. The portions of *Western Electric* that the DOJ quotes in its Response merely explain why the D.C. Circuit decided to unambiguously adopt the *Rufo* standard in antitrust consent decree cases and have nothing to do with the actual application of the *Rufo* standard to the facts of that case. DOJ Resp. at 8-9 (discussing *W. Elec.*, 46 F.3d at 1203). And factually, *Western Electric* addressed the requested waiver of a consent decree requirement on an enjoined party, which the DOJ claims is distinct from its efforts here. *W. Elec.*, 46 F.3d at 1204 (addressing party's request for "waiver" of consent decree provision).

Despite the requirement under *Rufo*, the DOJ does not address the real question: whether a rise in interest rates of several percentage points, whatever its cause, is such an unanticipated changed circumstance that it warrants the extraordinary step of modifying a consent decree. The DOJ never addresses this issue or whether DISH is, in fact, unable to purchase the spectrum licenses now—something DISH tellingly was unwilling to say even after T-Mobile raised it in opposition, presumably because it is not true. Rather, the DOJ states in a single sentence that "no

7

one involved in negotiating the Final Judgment in July 2019 could have foreseen the global pandemic and resulting macroeconomic environment that have weakened DISH's ability to purchase the spectrum, as detailed in DISH's briefs." DOJ Resp. at 9.

The DOJ later walks back even this unsupported assertion by stating that "T-Mobile/Sprint settlement's proponents *likely* did not expect the macroeconomic conditions that ensued as a result of the COVID-19 pandemic." DOJ Resp. at 10 (emphasis added). In any event, the DOJ attempts to summarily dispense with the requirement to present changed circumstances warranting modification by concluding that "[i]f the Court agrees with DISH's explanation for why it is unable to purchase the option, then those circumstances are sufficient to justify the minor adjustments sought here that seek to make the order more effective." DOJ Resp. at 9. DISH never stated in its Motion that it is "unable to purchase the option," and the DOJ presents no evidence that DISH is "unable to purchase" it now.

The DOJ's arguments regarding *Signature*, an undeniably on-point case, States' Opp. at 5-6, likewise fail. The moving party's receipt of lower-than-expected bids for the divestiture asset was not a changed circumstance both because "the final judgment was negotiated in the midst of troubling economic news, and the parties specifically countenanced the possibility that [the movant] would have difficulty selling" the divestiture asset. *United States v. Signature Flight Support Corp.*, 607 F. Supp. 2d 56, 59 (D.D.C. 2009). Both are also true here. The Final Judgment was entered "in the midst of" the Covid-19 pandemic, and the parties likewise "countenanced" the possibility that DISH may not exercise its option for the same reasons relied upon by the court in *Signature. See id.*; States' Opp. at 4. As evidence that the parties contemplated the movant's difficulty in selling the asset, the *Signature* court cited a hardship clause identical to the hardship

8

clause in the Final Judgment here and a clause providing for next steps if the movant failed to divest the asset akin to the auction provision in the Final Judgment.

The court also emphasized that the movant, like DISH, had not said it was unable to comply with the consent decree; instead it complained that divesting the asset would be less profitable than it anticipated, "a problem that does not constitute a changed circumstance necessary to modify a final judgment." *Signature*, 607 F. Supp. 2d at 60.  Here, too, the Final Judgment does not require DISH to acquire the spectrum, so there is no argument that DISH cannot comply.  But even putting that aside, there is also no evidence that DISH actually cannot acquire the spectrum, which alone precludes modification.  Opp. at 13-14.  DISH's Motion alleged only that it cannot "responsibly" finance the purchase—that is, that DISH would have to pay more to finance the purchase and so it would be less profitable.  And the DOJ, despite having been engaged with DISH on this issue since March 2023, is apparently in no position to address whether DISH is actually unable to pay.  The *Signature* court did not, as the DOJ suggests, rely on the length of the requested extension to the divestiture period to deny the requested modification.  *See* DOJ Resp. at 9.

### 2. The DOJ's newly proposed compromise modification is no more suitably tailored to the alleged changed circumstances than DISH's requested modification.

The DOJ argues that DISH's requested extension until June 30, 2024 is not suitably tailored because "DISH has not provided further explanation for how or why it will be able to exercise its option by June 30, 2024." DOJ. Resp. at 12.  But the DOJ likewise never explains "how or why" DISH will be able to exercise its option by April 1, 2024.  According to the DOJ's own reasoning, the DOJ's proposed modification is no more suitably tailored than DISH's.  In addition, nothing about the DOJ's proposed compromise modification actually renders it more suitably tailored than DISH's.

First, the DOJ's argument that an extension to April 1, 2024 is somehow automatically appropriate because it is the Outside Date in the LPA makes no sense. An outside date is standard in contract negotiation and in this context the Outside Date provides a fail-safe permitting the parties to walk away without paying a penalty if, due to no fault of either party, FCC approval of the transfer takes an inordinate amount of time. It does not somehow render irrelevant the commitments DISH made to meet other deadlines; nor did it contemplate that DISH and the DOJ would seek to change their commitments under the Final Judgment. Moreover, while FCC approval has not yet occurred, as the parties previously told this Court, they believe it is likely to occur well before April 1, 2024. *See* Joint Status Report, ECF 98 (requesting a decision by October 16, 2023 so that the parties may have the benefit of the Court's decision in advance of a decision from the FCC).

Second, the DOJ's actual proposed modification extends the date beyond April 1, 2024 in any event. The DOJ's requested modification permits DISH time until "April 1, 2024 or within five (5) business days of the approval by the FCC of the transfer of the 800 MHz licenses, *whichever is later*." DOJ Resp. at 14 (emphasis added). This completely disregards the intent of the Outside Date to be a failsafe if the FCC were delayed beyond that date.

Third, the DOJ cites no case law supporting its argument that the Court can modify a consent decree so long as the modification is something that the parties thought might happen. In fact, the opposite is true: modifications require unforeseen circumstances. The deal that was struck required DISH to exercise the option within three years, regardless of hardship and regardless of available financing. DISH has reneged on that, plain and simple.

Fourth, the "additional modifications" that the DOJ faults DISH for not seeking are not actually sought by the DOJ either. *See* DOJ Resp. at 12; DOJ Proposed Order, ECF 134-1. These

include DISH's agreement: (1) to make a $100 million advance payment to T-Mobile, creditable to the purchase of the spectrum, an amount that is woefully inadequate to compensate T-Mobile for the cost of the delay the DOJ seeks to impose on it; (2) that it will not seek additional relief from the April 1, 2024 deadline; and (3) that it will waive its non-solicitation rights under the LPA, permitting T-Mobile to run a concurrent auction process. DOJ Resp. at 3 n.8, 14. These modifications are not all included in the DOJ's Proposed Order, and in their brief they take "no position" on whether the $100 million advance payment is "appropriate" and merely do not "oppose" the Court including the other points in its modification order. DOJ Resp. at 3 n.8, 14.

Nor does the DOJ even fully explain the $100 million advance payment, including if DISH declines to purchase the spectrum licenses, whether it is refundable or how it interacts with the termination fee payable under the LPA. DOJ's partially-formed quasi-compromise resting on vague conditions not included in its Proposed Order and buried in footnotes in its brief is not suitably tailored to carry out the intent of the Final Judgment.

Fifth, there is still no reason to believe DISH will buy the spectrum if it is given an extension. DISH has said it does not need it; the idea that DISH will be better able to finance it in seven months is nothing other than sheer speculation; and DISH still has made no commitment to actually purchase it. Nothing about releasing T-Mobile from the non-solicitation clause under the LPA would ameliorate the harm to T-Mobile and the public from delaying divestiture of the 800 MHz spectrum licenses. Running a concurrent auction where bidders would be aware that the asset might not even be available at the end of the auction is likely impractical in the commercial reality of selling a multi-billion dollar asset. If this process deterred the best bidder from competing, that would be unfair to T-Mobile and the public, both of whom deserve the best buyer

for the spectrum. The one potential bidder to file an amicus brief opposes any extension. *See* Br. of Burns & McDonell Engineering Co., Inc. as Amicus Curiae, ECF 111.

The DOJ's nonchalant references to the purported "minor" modifications here ignore the substantial harm to T-Mobile in terms of additional unexpected carrying costs and adverse ramifications of prolonged ownership of the 800 MHz spectrum licenses, Opp. at 23-25, and the harm to the public of tying up this valuable spectrum for the foreseeable future on the hope that DISH might purchase it by April 1, Opp. at 20-23. T-Mobile, the States, and the public relied on the promises made in 2020 and the DOJ's motion is not suitably tailored to address that harm.

### III. The DOJ's requested "clarification" is procedurally improper and substantively incorrect.

The DOJ's surprise ending to its brief requesting "clarification" of Section XVI.D of the Final Judgment to give it unilateral power to withhold consent for termination of the LPA until April 1, 2024 is improper and inconsistent with positions the DOJ previously took regarding that provision. DOJ Resp. at 13; Notice of Submission of Clarified Proposed Order, ECF 134 (explaining submission of revised Proposed Order clarifying that "T-Mobile may terminate the License Purchase Agreement after April 1, 2024, without the consent of the United States"). Previously, the DOJ "declin[ed] to exercise any right it may have to withhold its consent to T-Mobile's termination of the License Purchase Agreement according to the terms of that Agreement." ECF 94-10 (July 28, 2023 letter from the DOJ). Nothing in the Final Judgment gives the DOJ authority to provide consent and then retract it. If the DOJ was attempting to reserve a future right to exercise a consent right after "declin[ing] to . . . withhold its consent" there is likewise no basis for that in the Final Judgment. As a result, the DOJ has effectively already consented to termination of the LPA and offers no reason to revisit that decision now.

In addition, although neither the DOJ's brief nor its Proposed Order make this clear, the DOJ's requested clarification only applies if the Court grants an extension. If the Court does not grant an extension, then the DOJ's clarification request will be moot. As the DOJ has previously stated to counsel for T-Mobile, including the undersigned, if the Court does not grant an extension, the DOJ's consent right expired on August 30, 2023 at the conclusion of the 60-day extension period, and the DOJ declined to exercise it. Otherwise, Section XVI.D would conflict with the 60-day limitation in Section IV.B.1.

Finally, to the extent the Court grants the DOJ's motion, any consent right it gives to the DOJ should be subject to the 30-day deadline in Section XVI.D of the Final Judgment. Otherwise, T-Mobile and potential auction participants could be stuck in indefinite limbo while the DOJ makes up its mind. The notification provision in Section XVI.D requires "thirty (30) days written notice to the United States" prior to modifying agreements between the parties. But the DOJ has previously taken the position that there is no deadline on the timeline for its review under that provision, even where T-Mobile and DISH have jointly submitted modifications and urged a prompt review. That has resulted in approval timelines of up to nearly three months.[1]

---

[1] On February 22, 2022, DISH and T-Mobile jointly submitted proposed changes to several agreements and did not obtain the DOJ's approval until May 13, 2023. DISH publicly complained about the fact that the DOJ's extended review time was taking too long and harming DISH's ability to compete. DISH Q1 2022 Earnings Call Transcript, May 6, 2022, https://news.alphastreet.com/dish-network-corporation-dish-q1-2022-earnings-call-transcript/, ("Before we and T-Mobile can enter into this proposed settlement and amendment, we're required to obtain the approval of the Department of Justice, which has been reviewing it since February 22, 2022. The CDMA shutdown, along with the delay in approval, has materially negatively impacted our ability to compete."); *id.* at 7 ("So I know that the [Department of] Justice has a lot of things on their plate, and maybe this isn't the most important thing that they're looking at. But for us, obviously, it's a very important thing. And we'll never get back to square one, regardless of when they rule, and there's no guarantee they're going to rule. So I do think that's a risk that everybody should be concerned about.").

In light of prior experiences based on uncontested amendments to agreements, T-Mobile is concerned that granting the DOJ approval rights over the LPA termination (where T-Mobile and DISH will likely be opposed to one another) will result in additional delay and uncertainty. Given that every additional day of delay harms the public and T-Mobile, to the extent the Court grants the DOJ prior approval rights over termination of the LPA, the Court should clarify that the DOJ should be subject to the 30-day deadline under Section XVI.D of the Final Judgment.

## CONCLUSION

Throughout its engagement with the DOJ and DISH since March 2023, T-Mobile has tried to be a good corporate citizen, granted extension after extension, held back on terminating the LPA pending the DOJ's decision, and bent over backwards to make this process work. But at some point, enough is enough. A deal is a deal, and it is time for DISH and the DOJ to live up to the deal that they made.

For the foregoing reasons, the Court should deny DISH's request to modify the Final Judgment and reject the DOJ's efforts to broker a compromise. If the Court were inclined to grant any extension, however, then at a minimum the Court should require DISH to compensate T-Mobile for that delay at a rate of $21.57 million per month of delay. As T-Mobile explained in the supporting declaration of Steve Sharkey, the cost of delay to T-Mobile is approximately $21.57 million per month, and neither the DOJ nor DISH has presented any evidence disputing that. *See* Sharkey Decl. ¶ 20, ECF 107-20; *Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002) (explaining a requested modification must protect all parties' interests and "preserve the essence of the parties' bargain").

<table>
<tr><td>Dated: September 22, 2023</td><td>Respectfully submitted,<br><br>/s/ David I. Gelfand<br>David I. Gelfand (D.C. Bar No. 416596)<br>Daniel P. Culley (D.C. Bar No. 988557)<br>Elsbeth Bennett (D.C. Bar No. 1021393)<br>Cleary Gottlieb Steen & Hamilton LLP<br>2112 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>Telephone: (202) 974-1500<br>Email:   dgelfand@cgsh.com<br>           dculley@cgsh.com<br>           ebennett@cgsh.com<br><br>*Counsel for T-Mobile US, Inc. and Deutsche Telekom AG*</td></tr>
</table>

15