UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

DEUTSCHE TELEKOM AG, *et al.*,

    *Defendants*.

Case No. 1:19-cv-02232 (TJK)

**DEFENDANT DISH NETWORK CORPORATION'S MEMORANDUM OF LAW IN REPLY TO THE BRIEFS FILED BY THE UNITED STATES AND PLAINTIFF STATES**

Steven L. Holley
Bradley P. Smith
Sean P. Fulton
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
holleys@sullcrom.com
smithbr@sullcrom.com
fultons@sullcrom.com

Adam Paris
SULLIVAN & CROMWELL LLP
1888 Century Park East, 21st Floor
Los Angeles, California  90067-1725
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800
parisa@sullcrom.com

September 22, 2023

*Attorneys for DISH Network Corporation*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................4

I.   THE UNITED STATES' ASSESSMENT OF THE PROCOMPETITIVE
     EFFECT OF A MODEST EXTENSION SHOULD BE GIVEN SUBSTANTIAL
     WEIGHT BY THE COURT ..............................................................................................4

II.  THE FINAL JUDGMENT REQUIRES THE DIVISION'S CONSENT BEFORE
     T-MOBILE CAN TERMINATE THE LPA .....................................................................8

CONCLUSION .................................................................................................................................9

## TABLE OF AUTHORITIES

                                                                                                                                                                 **Page(s)**

**Cases**

*Baltimore Gas & Elec. Co.* v. *Nat. Res. Def. Council, Inc.*,
    462 U.S. 87 (1983)..................................................................................................4

*United States* v. *Archer-Daniels-Midland Co.*,
    272 F. Supp. 2d 1 (D.D.C. 2003)............................................................................5

\*   *United States* v. *Deutsche Telekom AG*,
    2020 WL 1873555 (D.D.C. Apr. 14, 2020)........................................................3, 5

\*   *United States* v. *W. Elec. Co.*,
    46 F.3d 1198 (D.C. Cir. 1995).............................................................................7, 8

*United States* v. *W. Elec. Co.*,
    846 F.2d 1422 (D.C. Cir. 1988)...............................................................................8

\*   *United States* v. *W. Elec. Co.*,
    993 F.2d 1572 (D.C. Cir. 1993).............................................................................3, 4

**Rules**

Federal Rule of Civil Procedure 60 ..................................................................................4

**Other Authorities**

*Boost Infinite Brings Its $25/Month Unlimited Postpaid Plan to Amazon with
Exclusive Prime Member Deal*, DISH (July 26, 2023),
    https://tinyurl.com/BoostInf..................................................................................3

*The iPhone 15 Lineup is Available to Pre-order at Boost Infinite Starting on
Friday, September 15*, DISH (Sept. 12, 2023), https://tinyurl.com/iPhoneI5 ............................2

\*  Pursuant to Local Rule 7(a), an asterisk in the margin to the left of the case identifies cases or authorities on which counsel chiefly relies.

Defendant DISH Network Corporation ("DISH"),[1] through its undersigned counsel, respectfully submits this memorandum of law in reply to the briefs filed by the United States and the Objecting Plaintiff States (defined below), and in further support of its Motion for Relief from Judgment (ECF No. 94; the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

The United States embraces the concept that "changed circumstances justify an order modification to maximize the likelihood the Final Judgment creates a fourth national mobile wireless company," and agrees that "a limited order of modification would support the goal of the option provision in the Final Judgment." ECF No. 132 at 3–4 (hereinafter, the "U.S. Response"). The United States was correct to recommend that this Court approve the Final Judgment in 2020; it is also correct now to advise that a modest modification is necessary to fulfill the Final Judgment's purpose. That purpose was, and is, "'to remedy [ ] the loss of competition' from T-Mobile's acquisition of Sprint," and to "enabl[e] the entry of another national facilities-based mobile wireless network carrier." U.S. Response at 2 (first quoting Final Judgment, ECF 85, at 2, then quoting Competitive Impact Statement, ECF 20, at 2). "[T]he preferred outcome under the Final Judgment was for the [800 MHz] spectrum to be divested to DISH." *Id.* at 9. Now—more than three years after entry of the Final Judgment, and having seen DISH's steady progress in deploying a state-of-the-art 5G wireless network—the United States again concludes that divestiture of the 800 MHz spectrum licenses to DISH is the best way to "maximize the likelihood the Final Judgment creates a fourth national mobile wireless company." *Id.* at 3.

---

[1]   Capitalized terms used but not defined herein have the meanings given to them in the Motion.

As the United States explains, "the risk that the consent decree may fail to protect the competition lost by the elimination of Sprint as a competitor," *id.* at 3, persists. Indeed, it is especially heightened in light of the inevitable "complexity" of the remedy. *See id.* Recent statements by T-Mobile's management highlight this risk: "[W]e're really comfortable in this competitive environment, and it is not rapidly changing" (Ex. 1 at 6),[2] "in terms of the overall competitive environment, we see that being very, very stable," (Ex. 2 at 9). Financial analysts have also emphasized the ability of the three facilities-based incumbent carriers to raise prices: "the moves to increase price are logical, inevitable and have already begun." (Ex. 3 at 3.) But a three-player facilities-based market structure can lead to a variety of harms to the public, including higher prices, and is the antithesis of the Final Judgement's purpose.

The Final Judgement can succeed, and DISH believes it will be able to enhance its competitive position as a facilities-based carrier if given more time to exercise its option to purchase the 800 MHz frequencies. Contrary to T-Mobile's claims, there have been significant recent developments that rebut the idea that more time would be futile. These include (1) Apple's announcement that its new iPhone (*i.e.*, the iPhone 15) is equipped and certified to work on DISH's facilities-based network,[3] an imminent likely boost to DISH in light of the iPhone's popularity; (2) DISH's partnership with Amazon to enable distribution of DISH's wireless service on Amazon's

---

[2]     Unless otherwise noted, all exhibits refer to the declaration of Sean P. Fulton filed contemporaneously herewith.

[3]     *See The iPhone 15 Lineup is Available to Pre-order at Boost Infinite Starting on Friday, September 15*, DISH (Sept. 12, 2023), https://tinyurl.com/iPhoneI5 ("For the first time, iPhone is certified for the Boost Wireless Network.").

online platform;[4] and (3) the merger between DISH and EchoStar, which will, among other benefits, increase capital availability (*see* Mot. at 5, 23).

The United States' conclusion that a modest extension of the 800 MHz divestiture deadline is entitled to deference, consistent with this Court's determination in approving the Final Judgment.  Courts have given substantial weight to the Antitrust Division's predictive judgments when it comes to the competitive effects of a specific course of action. *See, e.g.*, *United States* v. *W. Elec. Co.*, 993 F.2d 1572, 1577 (D.C. Cir. 1993); *United States* v. *Deutsche Telekom AG*, 2020 WL 1873555, at *4 (D.D.C. Apr. 14, 2020).  Indeed, in this case, more than half of the Plaintiff States that helped craft the Final Judgment have deferred to the United States' assessment of the need for modification.[5]  The United States reviewed the competitive effects of the proposed modification to the Final Judgment, obtained DISH's consent to actions that the United States believes are needed to ameliorate any anticipated harm to the public resulting from a limited extension of the option period to purchase the 800 MHz spectrum, and concluded that the Final Judgment is best served by a modest modification.  That assessment should be given substantial weight in the Court's analysis.

---

[4]  *Boost Infinite Brings Its $25/Month Unlimited Postpaid Plan to Amazon with Exclusive Prime Member Deal*, DISH (July 26, 2023), https://tinyurl.com/BoostInf.

[5]  The State of Colorado consented to the United States' Response, and the States of Arkansas, Florida, Ohio, and South Dakota implicitly deferred to the United States by taking no position.  *See* U.S. Response at n.9.  The States of Kansas, Nebraska, and Oklahoma (the "Objecting Plaintiff States") oppose the Motion and the United States' Response, adopting the same arguments that T-Mobile made in its opposition to the Motion.  ECF No. 131.  DISH's Reply (ECF No. 119) already addressed the arguments advanced by the Objecting Plaintiffs States.  DISH also notes that the Objecting Plaintiff States did not incorporate the modifications proposed by the United States in their Opposition.  As described herein, these modifications ameliorate any purported harms raised by T-Mobile and the Objecting Plaintiff States.

Finally, the Court should grant the United States' request for clarification of Section XVI.D of the Final Judgment. Although DISH believes that the broad authority of the United States to enforce the Final Judgment is unambiguous, clarifying that the United States must consent to any termination of the LPA prior to April 1, 2024 will ensure that the remedial purposes of the Final Judgment are not thwarted by T-Mobile's unilateral actions.[6]

## ARGUMENT

I. **THE UNITED STATES' ASSESSMENT OF THE PROCOMPETITIVE EFFECT OF A MODEST EXTENSION SHOULD BE GIVEN SUBSTANTIAL WEIGHT BY THE COURT**

The United States correctly determined that "[a] modest extension of the deadline for DISH to acquire the [800 MHz] spectrum licenses until April 1, 2024, will serve the competition goals of the Final Judgment." U.S. Response at 6. When an executive agency is "making predictions[] within its area of special expertise . . . a reviewing court must generally be at its most deferential." *Baltimore Gas & Elec. Co.* v. *Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983). While the position taken by the Antitrust Division on a Rule 60 motion is not agency action, the D.C. Circuit has given great weight to "the Antitrust Division's assessment of likely competitive effect, [which] involves the same kind of predictive judgment." *W. Elec.*, 993 F.2d at 1577. In approving the Final Judgment, this Court reiterated that core principle: "[T]he Court's public interest analysis is circumscribed, [and] 'must accord due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its view

---

[6]   *See Clarified Proposed Order for United States' Response to Defendant DISH Network Corp.'s Motion for Relief From Judgment and Motion for Modification of Final Judgment*, ECF No. 134 ("The revised order clarifies that T-Mobile may terminate the License Purchase Agreement after April 1, 2024, without the consent of the United States.").

of the nature of the case.'" *Deutsche Telekom AG*, 2020 WL 1873555, at *4 (quoting *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003)).

Prior to entry of the Final Judgment, the Antitrust Division conducted a comprehensive investigation into the anticompetitive effects of T-Mobile's acquisition of Sprint. U.S. Response at 1.[7] At the conclusion of its 15-month examination, the Antitrust Division (along with the Federal Communications Commission (hereinafter, the "FCC") and the Attorneys General of ten states) "determined that the merger should be blocked absent substantial modifications to the merger, including the divestiture of certain assets and myriad additional terms and provisions." U.S. Response at 1. Among the various divestitures, the Final Judgment provides DISH with the option to purchase the 800 MHz spectrum licenses from T-Mobile, which the Antitrust Division explained was necessary to "ensure DISH has sufficient spectrum to meet its buildout and service requirements and provide mobile wireless service to customers." Competitive Impact Statement at 9; *see also* U.S. Response at 2 ("[T]he Final Judgment allows DISH the opportunity to use the [800 MHz] spectrum to build a competitive facilities-based mobile wireless network to replace the competition lost by T-Mobile's acquisition of Sprint . . . ."). The 800 MHz spectrum licenses are thus important to enabling DISH to compete as a fourth facilities-based nationwide wireless carrier. This was true at the time the Final Judgment was entered, and the United States (and DISH) agrees that it remains true today. *See* U.S. Response at 1–3.

Importantly, neither T-Mobile nor the Objecting Plaintiff States argue that a modest extension of the 800 MHz divestiture deadline would <u>not</u> promote competition. Instead,

---

[7]   *See also Response of Plaintiff United States to Public Comments on the Proposed Final Judgment*, ECF No. 42 ("The proposed Final Judgment is the culmination of a comprehensive, fifteen-month investigation conducted by the Antitrust Division of the U.S. Department of Justice into T-Mobile's proposed acquisition of Sprint.").

T-Mobile's opposition boils down to a simple rejoinder: the request for additional time is simply too much of an inconvenience for T-Mobile, regardless of whether such action would further the goals or intent of the Final Judgment. *See* ECF No. 106 (the "Opposition" or "Opp.") at 20–25. But, as the United States makes clear, "there is no more cost-effective way for DISH to catch up to the Big Three carriers and replace the competition that was lost when T-Mobile acquired Sprint than to purchase the 800 MHz spectrum." *See* U.S. Response at 7. T-Mobile knows this all too well, having consistently taken the position—since at least 2013—that lower-band spectrum (like the 800 MHz licenses) is necessary for an insurgent facilities-based nationwide wireless carrier to compete in the market. *See* U.S. Response at 6–7 & n.14. T-Mobile admitted this as recently as last month in its joint application to the FCC for approval of the assignment of the 800 MHz spectrum licenses to DISH—wherein T-Mobile unequivocally stated that DISH acquiring the spectrum would "**substantially enhance**" its ability to compete. DISH Reply at 20–21 & Swieringa Decl. Ex. 10 at 2 (emphasis added).

T-Mobile and the Objecting Plaintiff States ignore the procompetitive goals of the Final Judgment, asking the Court to base its analysis on "contract interpretation" instead of "the competitive impact of" the consent decree. *Compare* Objecting Plaintiff States Br., ECF No. 131 at 3 ("contract interpretation . . . should be the basis of the Court's analysis"), *with* 15 U.S.C. § 16(e)(1)(A) ("the court shall consider the competitive impact of [its final] judgment"). But DISH remains focused on accomplishing the Final Judgment's ultimate purpose: to provide competition in the wireless market as the nation's fourth facilities-based carrier. To that end, as the U.S. Response acknowledges, DISH has made several concessions to modify the relief requested in its Motion, including:

- Agreeing to exercise the option no later than April 1, 2024 (rather than June 30, 2024, as originally requested by DISH in its Motion);

- Agreeing to make a $100 million up-front payment to T-Mobile, creditable to the purchase of the 800 MHz spectrum licenses, if the option is extended until April 1, 2024, as a good-faith demonstration of DISH's commitment to completing the acquisition;

- Agreeing not to seek a further extension of the 800 MHz divestiture period if the Motion is granted; and

- Waiving its right to enforce the non-solicitation clause in the LPA, so that T-Mobile can concurrently conduct an auction process if it wishes to do so.

DISH agreed to these changes in order to reach a resolution that would further the procompetitive goals of the Final Judgment by providing additional time to exercise its option to acquire this important competitive input, while also addressing issues raised by the United States and T-Mobile. T-Mobile objects to the Motion because of the purported "unfair[ness]" of a delay in determining the disposition of the 800 MHz spectrum. Opp. at 23–25. The modifications described above resolve any such concerns. By aligning the option date with the "outside date" in the LPA (ECF 107–2, at § 7.1(a)(ii)), T-Mobile will have certainty by the date it originally bargained for. At the same time, by waiving the LPA's non-solicitation provision, T-Mobile will actually be <u>advantaged</u> by being able to conduct an auction for this spectrum <u>prior</u> to the LPA's outside date if it wishes, thereby accelerating its timeline to find an alternative buyer should DISH be unable to exercise the option by April 1, 2024. Further, DISH's offer to provide a $100 million creditable down-payment will provide interim compensation to T-Mobile. And, as noted above, the additional time will also permit DISH to capitalize on three other significant developments that are either recent or imminent—the iPhone 15 launch on DISH's network, the Amazon Prime agreement, and the merger with EchoStar. *See supra* at 2–3.

As the United States makes clear, the modest modification to the 800 MHz divestiture deadline, together with DISH's several additional concessions, will "tighten the [Final Judgment] in order to accomplish its intended result." *United States* v. *W. Elec. Co.*, 46 F.3d 1198,

1202 (D.C. Cir. 1995). T-Mobile will suffer no prejudice, as it will be free to conduct an auction to identify an alternative buyer and begin the process of seeking regulatory approval for that buyer before April 1, 2024—the outside date contemplated by the LPA. The limited modification to the Final Judgment requested by DISH—and supported by the United States—"would support the goal of the option provision in the Final Judgment" (U.S. Response at 4), and this Court should give the appropriate amount of deference to the United States' assessment.

## II.  THE FINAL JUDGMENT REQUIRES THE DIVISION'S CONSENT BEFORE T-MOBILE CAN TERMINATE THE LPA

DISH supports the United States' request that the Court "clarify that the United States must consent to termination of the License Purchase Agreement." U.S. Response at 13. The Final Judgment vests the Court with continuing jurisdiction "to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out **or construe** this Final Judgment." Final Judgment § XVII (emphasis added). In construing the Final Judgment, the Court should "give full effect to the procompetitive purposes of the antitrust laws and to restore all competition harmed by the challenged conduct." Final Judgment § XVIII.B.

"[I]nterpretation of the [Final Judgment] must . . . be grounded in the text of the agreement and contemporaneous understandings of its purposes." *United States* v. *W. Elec. Co.*, 846 F.2d 1422, 1427 (D.C. Cir. 1988). Section XVI.D of the Final Judgment states:

> Notwithstanding any provision to the contrary in the agreements between Divesting Defendants or Parent Defendants and Acquiring Defendant, **Divesting Defendants or Parent Defendants may not** amend, supplement, **terminate**, or modify **any of the agreements or any portion thereof without obtaining the consent of the United States in its sole discretion**. (Emphases added.)

The plain language of this section is clear: termination of any agreement between the parties relating to Final Judgment may <u>not</u> occur without the consent of the United States in its

sole discretion. Private contracts cannot trump a court order like the Final Judgment. *See* DISH Reply at 11–12. This reading also comports with contemporaneous understandings of the Final Judgment's purpose—to "ensure that DISH can begin to offer competitive services and grow to replace Sprint as an independent and vigorous competitor in the retail mobile wireless service market in which the proposed merger would otherwise lessen competition." Competitive Impact Statement at 3. Allowing T-Mobile to unilaterally terminate the LPA (or any other agreement that furthers the goals of the Final Judgment) without first obtaining approval from the United States would be at odds with the plain language of the Final Judgment and inconsistent with its remedial purpose.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in its Motion, Reply, and the U.S. Response, DISH respectfully requests that the Court modify Section IV.B of the Final Judgment to require divestiture of the 800 MHz licenses by April 1, 2024, or within five (5) business days of the approval by the FCC of the transfer of the 800 MHz licenses, whichever is later. If the Motion is granted, DISH confirms that it will not seek any further extension of this deadline and waives it right to enforce the non-solicitation clause in the LPA so that T-Mobile can begin an auction process immediately. Finally, DISH joins in the United States' request that the Court clarify that Section XVI.D of the Final Judgment prohibits T-Mobile from terminating the LPA prior to April 1, 2024 without the Division's prior consent.

|  |  |
|---|---|
| Date:  September 22, 2023 | By: */s/ Steven L. Holley*<br>Steven L. Holley<br>Bradley P. Smith<br>Sean P. Fulton<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York  10004<br>Telephone:  (212) 558-4000<br>Facsimile:  (212) 558-3588<br>holleys@sullcrom.com<br>smithbr@sullcrom.com<br>fultons@sullcrom.com<br><br>Adam Paris<br>SULLIVAN & CROMWELL LLP<br>1888 Century Park East, 21st Floor<br>Los Angeles, California  90067-1725<br>Telephone:  (310) 712-6600<br>Facsimile:  (310) 712-8800<br>parisa@sullcrom.com<br><br>*Attorneys for DISH Network Corporation* |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

**CERTIFICATE OF SERVICE**

      Pursuant to Local Civil Rule 5.4(d), I hereby certify that on September 22, 2023, I caused the foregoing Reply Memorandum of Law in Further Support of DISH's Motion for Relief from Judgment to be electronically filed via the Court's CM/ECF system, which effected service of the document upon all counsel of record.

                                                  */s/ Sean P. Fulton*
                                                  Sean P. Fulton