**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEUTSCHE TELEKOM AG, T-MOBILE US, INC., SOFTBANK GROUP CORP., SPRINT CORPORATION, and DISH NETWORK CORPORATION, <br><br> *Defendants*. | Case No. 1:19-cv-2232-TJK |

**[PROPOSED] SECOND AMENDED FINAL JUDGMENT**

WHEREAS, Plaintiffs, United States of America and the States of Kansas, Nebraska, Ohio, Oklahoma, and South Dakota, filed their Complaint on July 26, 2019, the Plaintiffs and Defendants Deutsche Telekom AG, T-Mobile US, Inc., SoftBank Group Corp., and Sprint Corp., by their respective attorneys, have consented to the entry of this Amended Final Judgment without trial or adjudication of any issue of fact or law, and without this Amended Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, the Court has previously granted successive consent motions for leave to add the states of Louisiana, Florida, Colorado, Arkansas, and Texas (together with Kansas, Nebraska, Ohio, Oklahoma, and South Dakota, "Plaintiff States") as Plaintiffs in this action;

1

AND WHEREAS, pursuant to a Stipulation and Order among Deutsche Telekom AG, T-Mobile US, Inc., SoftBank Group Corp., Sprint Corp., and DISH Network Corp. (collectively, "Defendants") and the United States, the Court has joined DISH Network Corp. as a defendant to this action for the purposes of settlement and for the entry of this Amended Final Judgment;

AND WHEREAS, Defendants agree to be bound by the provisions of this Amended Final Judgment pending its approval by the Court;

AND WHEREAS, the purpose of this Amended Final Judgment is to preserve competition by enabling the entry of another national facilities-based mobile wireless network operator;

AND WHEREAS, Plaintiffs require Divesting Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to Plaintiffs that the divestitures and other relief required by this Amended Final Judgment can and will be made and carried out, and that Defendants will not later raise any claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    <u>JURISDICTION</u>

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Divesting Defendants and Parent Defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18.  Pursuant to the

Stipulation and Order filed on July 26, 2019, joining DISH as a defendant to this action, DISH

has consented to this Court's exercise of specific personal jurisdiction over DISH in this matter

solely for the purposes of settlement and for the entry and enforcement of the Amended Final

Judgment.

## II.    DEFINITIONS

As used in this Amended Final Judgment:

A.      "Acquiring Defendant" or "Acquirer" or "DISH" mean Defendant DISH Network

Corporation, a Nevada corporation with its headquarters in Englewood, Colorado; its successors

and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures,

and their directors, officers, managers, agents, and employees.

B.      "Assurance Wireless" means the prepaid wireless business conducted by Virgin

Mobile under the Assurance Lifeline brand.

C.      "Cell Site" or "Tower Site" mean any wireless communications towers, rooftops,

water towers, or other wireless communications facilities owned or leased by Divesting Defendants

and the physical location and wireless equipment thereto.

D.      "Decommissioned" or "Decommissioning" means, with respect to a Cell Site,

when the Cell Site is no longer transmitting on Divesting Defendants' networks.  With respect to

Retail Locations, Decommissioned or Decommissioning means when Divesting Defendants

cease customer service operations.

E.      "Deutsche Telekom" means Deutsche Telekom AG, a German corporation

headquartered in Bonn, Germany, that is the controlling shareholder of T-Mobile; its successors

3

and assigns; and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F.      "Divesting Defendants" means T-Mobile and Sprint.

G.      "Divestiture Assets" means the Prepaid Assets, the 800 MHz Spectrum Licenses, the Decommissioned Retail Locations, and the Decommissioned Cell Sites.

H.      "Extension Fee" means a nonrefundable $100 million fee, payable in accordance with the LPA (as amended).

I.      "Final Judgment" means the Final Judgment filed in this matter on July 26, 2019, and entered by the Court on April 1, 2020.

J.      "Fifth Generation Broadband Services" or "5G Services" means at least 3GPP Release 15, capable of providing enhanced mobile broadband (eMBB) functionality.

K.      "Full MVNO Agreement" means an agreement that (1) provides the Acquiring Defendant the ability to sell retail mobile wireless services as an MVNO using the Divesting Defendants' wireless networks, (2) provides Acquiring Defendant the option to deploy its own core network with all associated service platforms to be offered in combination with services provided by Divesting Defendants' wireless networks, and (3) requires Divesting Defendants to provide network connectivity between Divesting Defendants and Acquiring Defendant's network for all traffic.

L.      "LPA" means the License Purchase Agreement, dated as of July 1, 2020, as amended on October 15, 2023, by and between T-Mobile USA, Inc. and DISH.

4

M.      "MVNO" means a mobile virtual network operator, such as TracFone and Google Fi, that obtains network access from facilities-based providers like T-Mobile and Sprint and resells that mobile wireless service to consumers under its own brand name.

N.      "Parent Defendants" means Deutsche Telekom and SoftBank.

O.      "Prepaid Assets" means all tangible and intangible assets primarily used by the Boost Mobile, Sprint-branded prepaid, and Virgin Mobile businesses today, including but not limited to Boost and Virgin Mobile Retail Locations, licenses, personnel, facilities, data, and intellectual property, as well as all relationships and/or contracts with prepaid customers served by Sprint, Boost Mobile, and Virgin Mobile.  Prepaid Assets do not include the Assurance Wireless business and the prepaid wireless customers of Shenandoah Telecommunications Company and Swiftel Communications, Inc.

P.      "Prepaid Assets Personnel" means all employees whose jobs currently focus on the support of the Prepaid Assets, or whose jobs have previously focused on supporting the Prepaid Assets at any time between January 1, 2016 and the date on which the Prepaid Assets are divested to the Acquirer.  Prepaid Assets Personnel shall include no fewer than 400 current employees of the Divesting Defendants, which shall include employees involved in sales management, marketing management, distribution support, sales support, and finance.

Q.      "Retail Locations" means any retail locations owned or operated by Divesting Defendants and from which either T-Mobile or Sprint sells mobile wireless service under any of their affiliated brands, including Sprint, Boost Mobile, Virgin Mobile, T-Mobile, Metro by T-Mobile, and MetroPCS.

5

R.    "800 MHz Spectrum Licenses" means all of Sprint's 800 MHz spectrum holdings as listed and described in Attachment A to the Final Judgment.

S.    "600 MHz Spectrum Licenses" means all of DISH's 600 MHz spectrum holdings as listed and described in Attachment B to the Final Judgment.

T.    "SoftBank" means SoftBank Group Corp., a Japanese corporation and controlling shareholder of Sprint; its successors and assigns; and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

U.    "Sprint" means Defendant Sprint Corporation, a Delaware corporation with its headquarters in Overland Park, Kansas; its successors and assigns; and its subsidiaries, divisions, groups, affiliates (other than SoftBank), partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

V.    "T-Mobile" means Defendant T-Mobile US, Inc., a Delaware corporation with its headquarters in Bellevue, Washington; its successors and assigns; and its subsidiaries, divisions, groups, affiliates (other than Deutsche Telekom), partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

### III.    APPLICABILITY

A.    This Amended Final Judgment applies to the Divesting Defendants, Parent Defendants, and Acquiring Defendant, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of the Final Judgment or this Amended Final Judgment by personal service or otherwise.

6

B.      If any of the terms of an agreement between (i) Divesting Defendants and the Acquiring Defendant to effectuate the divestitures required by the Amended Final Judgment or (ii) Defendants and the Federal Communications Commission (FCC) to effectuate the divestitures required by the Amended Final Judgment varies from the terms of this Amended Final Judgment then, to the extent that Defendants cannot fully comply with both terms due to a conflict between the terms, this Amended Final Judgment will determine Defendants' obligations.  Provided, however, that if there is an inconsistency between this Amended Final Judgment and any commitment any of the Defendants have made to the FCC, the more stringent obligations will control.

## IV.   **DIVESTITURES**

### A.   **Prepaid Assets**

1.      The Divesting Defendants shall take all actions required to enable Acquiring Defendant to have, within ninety (90) days after notice of the entry of the Final Judgment by the Court, the ability to provision any new or existing customer of the Prepaid Assets holding a compatible handset device onto the T-Mobile network pursuant to the terms of any Full MVNO Agreement.  Divesting Defendants are ordered and directed, not more than fifteen (15) days after Divesting Defendants can provide Acquiring Defendant the ability to provision any new or existing customer of the Prepaid Assets holding a compatible handset device onto the T-Mobile network pursuant to the terms of any Full MVNO Agreement, or the first business day of the month following the later of the consummation of the merger of T-Mobile and Sprint and the receipt of any approvals required for the divestiture of the Prepaid Assets from the FCC and any

material state public utility commission, or five (5) calendar days after notice of the entry

of the Final Judgment by the Court, whichever is later, to divest the Prepaid Assets to

Acquiring Defendant in a manner acceptable to the United States, in its sole discretion.

    2.    <u>Employees</u>

    a.    Within ten (10) business days following the filing of the Complaint

in this matter, Divesting Defendants shall provide to Acquiring Defendant, the

United States, the Plaintiff States, and the Monitoring Trustee, organization charts

covering all Prepaid Assets Personnel for each year from January 1, 2016 to

present.  Within ten (10) business days of receiving a request from Acquiring

Defendant, Divesting Defendants shall provide to Acquiring Defendant, the

United States, the Plaintiff States, and the Monitoring Trustee, additional

information related to identified Prepaid Assets Personnel, including name, job

title, reporting relationships, past experience, responsibilities from January 1,

2016 through the date on which the Prepaid Assets are transferred to Acquirer,

training and educational history, relevant certifications, job performance

evaluations, and current salary and benefits information to enable Acquiring

Defendant to make offers of employment.  If Divesting Defendants are barred by

any applicable laws from providing any of this information to Acquiring

Defendant, within ten (10) business days of receiving Acquiring Defendant's

request, Divesting Defendants will provide the requested information to the

greatest extent possible under applicable laws and also provide a written

explanation of their inability to comply fully with Acquiring Defendant's request for information regarding Prepaid Assets Personnel.

b.        Upon request, Divesting Defendants shall make Prepaid Assets Personnel available for interviews with Acquiring Defendant during normal business hours at a mutually agreeable location. Divesting Defendants will not interfere with any negotiations by Acquiring Defendant to employ any Prepaid Assets Personnel. Interference includes but is not limited to offering to increase the salary or benefits of or offering bonuses to Prepaid Assets Personnel other than as part of a company-wide increase in salary or benefits or company-wide provision of bonuses granted in the ordinary course of business. If Divesting Defendants have offered Prepaid Assets Personnel incentives to remain employed with Divesting Defendants until a certain date (e.g., retention bonuses), Divesting Defendants must warrant to those Prepaid Assets Personnel and the Acquiring Defendant that the Prepaid Assets Personnel will receive all promised incentives if they accept an offer of employment with the Acquiring Defendant and remain employed with the Acquiring Defendant until the date contemplated by the originally agreed-upon incentive. Divesting Defendants shall be responsible for reimbursing Acquiring Defendant the costs associated with such incentives.

c.        For any Prepaid Assets Personnel who elect employment with Acquiring Defendant, Divesting Defendants shall waive all non-compete and non-disclosure agreements, vest all unvested pension and other equity rights, and

9

provide all benefits to which Prepaid Assets Personnel would be provided if transferred to a buyer of an ongoing business.

d.    For a period of two (2) years from the date of filing of the Complaint in this matter, Divesting Defendants may not solicit to hire, or hire, any Prepaid Assets Personnel who was hired by Acquiring Defendant, unless (a) such individual is terminated or laid off by Acquiring Defendant or (b) Acquiring Defendant agrees in writing that Divesting Defendants may solicit or hire that individual.

e.    Nothing in this Section prohibits Divesting Defendants from maintaining any reasonable restrictions on the disclosure by any employee who accepts an offer of employment with Acquiring Defendant of Divesting Defendants' proprietary non-public information that is (a) not otherwise required to be disclosed by this Amended Final Judgment, (b) related solely to Divesting Defendant's businesses and clients, and (c) unrelated to the Divestiture Assets.

f.    Acquiring Defendant's right to hire Prepaid Assets Personnel pursuant to Paragraph IV(A)(2) and Divesting Defendants' obligations under Paragraphs IV(A)(2)(a)-(c) lasts for a period of one hundred and eighty (180) days after the closing of the divestiture of the Prepaid Assets.

3.    Divesting Defendants shall warrant to Acquiring Defendant that the Prepaid Assets will be fully operational on the date of transfer.

4.    At the option of Acquiring Defendant, Divesting Defendants shall enter into one or more transition services agreements to provide billing, customer care, SIM

card procurement, device provisioning, and all other services used by the Prepaid Assets prior to the date of their transfer to Acquirer for an initial period of up to two (2) years after the transfer of the Prepaid Assets. During the initial two-year term of the agreement, Divesting Defendants shall provide the transition services at no greater than cost to Acquiring Defendant. All other terms and conditions of any such agreement must be reasonably related to market conditions for the provision of the relevant services and must be acceptable to the United States in its sole discretion, after consultation with the affected Plaintiff States. Upon Acquiring Defendant's request, the United States, in its sole discretion, after consultation with the affected Plaintiff States, may approve one or more extensions of such agreement(s) for a total of up to an additional one (1) year.

5.    At Acquiring Defendant's option, on or before the divestiture of the Prepaid Assets, Divesting Defendants shall assign or otherwise transfer to Acquiring Defendant all transferable or assignable agreements, or any assignable portions thereof, related to the Prepaid Assets, including, but not limited to, all supply contracts, licenses, and collaborations. Divesting Defendants shall use best efforts to expeditiously obtain from any third parties any consent necessary to transfer or assign to Acquiring Defendant all agreements related to the Prepaid Assets. To the extent consent cannot be obtained and the agreement is not otherwise assignable, Divesting Defendants shall use best efforts to obtain or provide for Acquiring Defendant, as expeditiously as possible, the full benefits of any such agreement as it relates to the Prepaid Assets by assisting Acquiring Defendant to secure a new agreement and by taking any other steps necessary to ensure that Acquiring Defendant obtains the full benefit of the agreement as it relates to the

11

Prepaid Assets.  Divesting Defendants will not assert, directly or indirectly, any legal claim that would interfere with Acquiring Defendant's ability to obtain the full benefit from any transferred third-party agreement to the same extent enjoyed by Divesting Defendant prior to the transfer.

6.     At Acquiring Defendant's option, on or before the divestiture of the Prepaid Assets, Divesting Defendants shall provide contact information and make introductions to distributors and suppliers that support the Prepaid Assets.  Divesting Defendants shall not interfere with Acquiring Defendant's attempts to negotiate with these distributors or suppliers.

B.     **800 MHz Spectrum License Transfer**

1.     Divesting Defendants are ordered and directed to divest the 800 MHz Spectrum Licenses in a manner acceptable to the United States, in its sole discretion, after consultation with the affected Plaintiff States, to Acquiring Defendant prior to 11:59 p.m. (New York City time) on April 1, 2024 (the "Closing Deadline") or, if Acquiring Defendant does not purchase the 800 MHz Spectrum Licenses, according to the terms of Section IV.B.4 of this Amended Final Judgment. Acquiring Defendant's option to purchase the 800 MHz Spectrum Licenses is subject to payment by Acquiring Defendant of the Extension Fee under the LPA. If either (a) Acquiring Defendant fails to pay Divesting Defendants the Extension Fee in a timely manner as required under the LPA or (b) the sale of the 800 MHz Spectrum Licenses contemplated by the LPA has not occurred by the Closing Deadline, and notwithstanding any other provision in this Amended Final Judgment, the LPA will automatically terminate unless T-Mobile USA,

Inc. and DISH mutually agree otherwise to extend the terms, with any such extension being subject to the consent of the United States. In addition, and notwithstanding any other provision in this Amended Final Judgment, if Acquiring Defendant materially breaches the LPA prior to the Closing Deadline, Divesting Defendants shall have the right to terminate the LPA with the consent of the United States. Acquiring Defendant and Divesting Defendant will make reasonable efforts to secure timely approval by the FCC of the transfer of the spectrum to comply with this Paragraph. Notwithstanding any other provision in this Amended Final Judgment, there shall be no extension of the Closing Deadline for any reason, whether foreseeable or not, except at the sole discretion of Divesting Defendants and with the consent of the United States.

2.      Acquiring Defendant shall pay a penalty of $360,000,000 to the United States if it elects not to purchase the 800 MHz Spectrum Licenses.  The Acquiring Defendant shall pay the penalty within thirty (30) days of declining to purchase the 800 MHz Spectrum Licenses.  Notwithstanding the foregoing, the Acquiring Defendant will not be required to pay such penalty if it has deployed a core network and offered 5G Service to at least 20% of the U.S. population over DISH's facilities-based network within three (3) years of the closing of the divestiture of the Prepaid Assets.

3.      If, at the expiration of this Amended Final Judgment, Acquiring Defendant has acquired the 800 MHz Spectrum Licenses, but has not deployed all of the 800 MHz Spectrum Licenses for use in the provision of retail mobile wireless services, Acquiring Defendant shall forfeit to the FCC, at the United States' sole discretion, after consultation with the affected Plaintiff States, all of the 800 MHz Spectrum Licenses that are not

13

being used to provide retail mobile wireless services, unless Acquiring Defendant already is providing nationwide retail mobile wireless services over DISH's facilities-based network.

4.      Except as otherwise provided in this Paragraph, if Acquiring Defendant does not purchase the 800 MHz Spectrum Licenses, Divesting Defendants must divest the 800 MHz Spectrum Licenses to an alternative purchaser to be determined by auction. Divesting Defendants may solicit interested buyers and conduct an auction of the 800 MHz Spectrum Licenses at any time after entry of this Amended Final Judgment; provided that Divesting Defendants may not complete the sale of the 800 MHz Spectrum Licenses pursuant to such auction on or before the Closing Deadline unless Acquiring Defendant has informed Divesting Defendants and the United States that it will not be purchasing the 800 MHz Spectrum Licenses. Divesting Defendants shall conduct the auction of the 800 MHz Spectrum Licenses within six (6) months of Acquiring Defendant declining to purchase the licenses, or by October 1, 2024, whichever is earlier. In such auction, Divesting Defendants will not divest the 800 MHz Spectrum Licenses to any other national facilities-based mobile wireless network operator, without the prior written approval of the United States, in its sole discretion, after consultation with the affected Plaintiff States, and will not be required to divest the 800 MHz Spectrum Licenses at a price that is lower than the price the Acquiring Defendant originally agreed to pay for such licenses.  In addition, Divesting Defendants may apply to the United States to be relieved from the commitment to sell the 800 MHz Spectrum Licenses if (i) Acquiring Defendant declines to purchase the 800 MHz Spectrum License and (ii) the

sale of the 800 MHz Spectrum Licenses is no longer needed fully to remedy the competitive harms of the merger, as determined by the United States in its sole discretion, after consultation with the affected Plaintiff States.

## C.    Decommissioned Cell Sites

1.    Divesting Defendants shall make all Cell Sites Decommissioned by Divesting Defendants within five (5) years of the closing of the divestiture of the Prepaid Assets, which shall not be fewer than 20,000 Cell Sites, available to Acquiring Defendant immediately after such Decommissioning.

2.    Divesting Defendants shall provide, no later than the closing of the Prepaid Assets divestiture, the Acquiring Defendant and Monitoring Trustee with a detailed schedule identifying, over the next five (5) years: (i) each Cell Site that the Divesting Defendants plan to Decommission; (ii) the forecasted date for Decommissioning; and (iii) whether a given Cell Site is freely transferrable.  For a period of five (5) years following the closing of the divestiture of the Prepaid Assets, on the first day of each month Divesting Defendants shall submit to the Acquiring Defendant and Monitoring Trustee updated Cell Site Decommissioning schedules that include a rolling monthly forecast projected out two hundred and seventy (270) days.  All forecasted Decommissionings within one hundred and eighty (180) days will be binding, subject to any mandatory restrictions on transfer imposed by federal or state law, unless the Monitoring Trustee determines that the Decommissioning was changed for good cause, and the changes and justifications are reported by the Divesting Defendants to the United States.

3.      Divesting Defendants are ordered to pay to the United States, within ninety (90) days following the end of each fiscal quarter, $50,000 multiplied by the total number of Cell Sites in excess of two (2) percent of Cell Sites in any 180-day Cell Site forecast: (a) for which the Acquiring Defendant exercised its option to acquire such Cell Site that was Decommissioned more than ten (10) days after the date forecasted in the 180-day Cell Site forecast or (b) that were Decommissioned but did not appear on any 180-day Cell Site forecast.  If Divesting Defendants are incorrect, and have not cured within ten (10) days, on more than ten (10) percent of Cell Sites in any three 180-day Cell Site forecasts, the penalty shall increase to $100,000 per incorrect Cell Site for which the Acquiring Defendant exercised its option to acquire such Cell Site starting on the fourth 180-day Cell Site forecast that is incorrect on at least ten (10) percent of Cell Sites and continuing at that level for any penalties imposed pursuant to this Paragraph.  If Divesting Defendants demonstrate that there was good cause for the forecast to have been inaccurate with regard to an individual Cell Site, the United States may, in its sole discretion, after consultation with the affected Plaintiff States, waive some or all of the payments.

4.      Divesting Defendants shall assign or transfer any rights that are assignable or transferrable and are useful for Acquiring Defendant to deploy infrastructure on the Decommissioned Cell Sites and will waive or terminate any rights Divesting Defendants may have to impede or prevent Acquiring Defendant from doing so.  Where Divesting Defendants do not have the right to assign or transfer such rights, Divesting Defendants will cooperate with Acquiring Defendant in its attempt to obtain the rights.

16

5.    Divesting Defendants shall Decommission unnecessary Cell Sites promptly.  Divesting Defendants will vacate a Decommissioned Cell Site as soon as reasonably possible after the site is no longer in use on any of the Divesting Defendants' networks.  As soon as reasonably possible after making Decommissioned Cell Sites available to the Acquiring Defendant, Divesting Defendants shall also make any Decommissioned transport-related equipment (including microwave backhaul gear and network switches) on such cell sites available for purchase by the Acquiring Defendant. If the Monitoring Trustee determines that Divesting Defendants have not complied with this Paragraph, the Monitoring Trustee may recommend and the United States may impose a fine of up to $50,000 per Cell Site per week for which Acquiring Defendant exercised its option to acquire such Cell Site or transport-related equipment for any violation.

6.    Subject to the terms and conditions of the applicable lease or easement for such Cell Site, Divesting Defendants shall provide Acquiring Defendant reasonable access to inspect Decommissioned Cell Sites prior to the deadline for Acquiring Defendant to exercise its option on the Decommissioned Cell Sites.

D.    **Decommissioned Retail Locations**

1.    Divesting Defendants shall make all assignable or transferrable Retail Locations Decommissioned by Divesting Defendants within five (5) years of the closing of the divestiture of the Prepaid Assets, which will not be fewer than four hundred (400) Retail Locations, available to Acquiring Defendant immediately after such Decommissioning.

17

2.      Divesting Defendants shall notify Acquiring Defendant of Retail Locations that Divesting Defendants plan to Decommission as soon as the locations are identified.

3.      Divesting Defendants shall waive or terminate any rights they have to impede or prevent Acquiring Defendant from using the Retail Locations.

4.      Subject to the terms and conditions of the applicable lease for such Retail Location, Divesting Defendants shall provide Acquiring Defendant reasonable access to inspect Decommissioned Retail Locations prior to the deadline for Acquiring Defendant to exercise its option on the Decommissioned Retail Locations.

E.      Unless the United States otherwise consents in writing or the Acquiring Defendant declines its option to purchase certain Decommissioned Cell Sites or Decommissioned Retail Locations, the divestitures pursuant to this Amended Final Judgment will include the entire Divestiture Assets.  The divestitures will be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquiring Defendant as part of a viable, ongoing operation relating to the provision of retail mobile wireless service.  The divestitures will be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between Acquiring Defendant and Divesting Defendants gives the Divesting Defendants the ability unreasonably to raise the Acquiring Defendant's costs, to lower the Acquiring Defendant's efficiency, or otherwise to interfere with the ability of the Acquiring Defendant to compete.

F.      Acquiring Defendant shall use the Divestiture Assets to offer retail mobile wireless services, including offering nationwide postpaid retail mobile wireless service within one (1) year of the closing of the sale of the Prepaid Assets.

G.      Divesting Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

H.      Divesting Defendants shall warrant to Acquiring Defendant (1) that there are no material defects known to the Divesting Defendants in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets, (2) that following the sale of the Divestiture Assets, Divesting Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets in a manner adverse to the Acquiring Defendant, and (3) that the Divestiture Assets will be capable of full operation on the date of transfer.  For purposes of this Paragraph, the Divestiture Assets shall not include any Decommissioned Cell Sites or Decommissioned Retail Locations as to which the Acquiring Defendant declined its option to acquire the assets.

I.      For a period of up to one (1) year following the divestiture closing, if the Acquiring Defendant determines that any assets not included in the Divestiture Assets were previously used by the divested business and are reasonably necessary for the continued competitiveness of the Divestiture Assets, it shall notify the United States, the Plaintiff States, and the Divesting Defendants in writing that it requires such assets.  Provided, however, that such assets shall not include any tangible or intangible wireless network or spectrum assets (except as provided herein), or any tangible or intangible IT assets or software licenses used by the remaining Sprint business.  The United States, in its sole discretion, after consultation with the affected Plaintiff States, taking into account Acquiring Defendant's assets and business, shall determine whether any of the assets identified should be divested to Acquiring Defendant.  If the United States determines that such assets should be divested, Divesting Defendants and

19

Acquiring Defendant will negotiate an agreement within thirty (30) calendar days providing for the divestiture of such assets in a period to be determined by the United States in consultation with the affected Plaintiff States and Divesting Defendants and Acquiring Defendant.

## V.   600 MHz SPECTRUM DEPLOYMENT

A.   Acquiring Defendant and Divesting Defendants agree to negotiate in good faith to reach an agreement for Divesting Defendants to lease some or all of Acquiring Defendant's 600 MHz Spectrum Licenses for deployment to retail consumers by Divesting Defendants. Defendants shall report to the Monitoring Trustee within ninety (90) days after the filing of the Final Judgment regarding the status of these negotiations.  If, at the end of one hundred and eighty (180) days, Defendants have not reached an agreement to lease some or all of Acquiring Defendant's 600 MHz Spectrum Licenses for deployment by Divesting Defendants and use by retail consumers, the Monitoring Trustee shall report to the United States, which may then resolve any dispute at the United States' sole discretion, provided such resolution shall be based on commercially reasonable and mutually beneficial terms for both parties, recognizing that the lease(s) must be for a sufficient period of time for Divesting Defendants to make adequate commercial use of the 600 MHz Spectrum Licenses.

## VI.   FULL MOBILE VIRTUAL NETWORK OPERATOR

A.    Divesting Defendants and Acquiring Defendant shall enter into a Full MVNO Agreement for a term of no fewer than seven (7) years.  The terms and conditions of the Acquiring Defendant's use of Divesting Defendants' wireless networks pursuant to any Full MVNO Agreement shall be commercially reasonable and must be acceptable to the United States, in its sole discretion, after consultation with the affected Plaintiff States.

B.      In carrying out its obligations under any Full MVNO Agreement, Divesting Defendants:

1.      shall not reject any of Acquiring Defendant's lawful traffic, unless authorized to do so by any Full MVNO Agreement and accepted by the United States, in its sole discretion, after consultation with the affected Plaintiff States;

2.      shall not unreasonably discriminate against Acquiring Defendant or Acquiring Defendant's subscribers, including by blocking, throttling, or otherwise deprioritizing the Acquiring Defendant's customers differently than Divesting Defendants' own similarly situated customers, unless authorized to do so by any Full MVNO Agreement;

3.      shall use reasonable best efforts to provide Acquiring Defendant all operational support required for Acquiring Defendant's customers (including, but not limited to, customers of the Prepaid Assets) to be able to use the Divesting Defendants' wireless networks;

4.      shall not unreasonably refuse to allow any device used by Acquiring Defendant's customers to access the Divesting Defendants' wireless networks, or otherwise unreasonably refuse to approve or support any such devices, and shall approve such devices for use upon request as soon as reasonably practicable, and shall use commercially reasonable efforts to provide technical support or other assistance to the Acquiring Defendant as requested to facilitate approval of any devices for use on Divesting Defendants' wireless networks;

5.      shall configure its wireless network as necessary to enable the provision of handover mobility for the Acquiring Defendant's customers in the boundary areas between the Acquiring Defendant's network, built out in contiguous coverage areas (e.g., city-wide coverage), and the Divesting Defendants' wireless networks; and

6.      shall not otherwise unreasonably delay, impede, or frustrate Acquiring Defendant's ability to use any Full MVNO Agreement and the Divesting Defendants' networks to become a nationwide facilities-based retail mobile wireless services provider.

## VII.    MOBILE VIRTUAL NETWORK OPERATOR COMPETITION

A.      Divesting Defendants shall abide by all terms of their existing MVNO agreements.  Divesting Defendants shall agree to extend existing MVNO agreements on their existing terms (other than any "most favored nation" provisions) until the expiration of this Amended Final Judgment unless the Divesting Defendants demonstrate to the Monitoring Trustee that doing so will result in a material adverse effect, other than as a result of competition, on the Divesting Defendants' ongoing business.  For the avoidance of doubt, Divesting Defendants are not required to extend any MVNO agreements beyond the expiration of this Amended Final Judgment or any existing infrastructure-based MVNO agreement that includes a reciprocal facility sharing arrangement unless it includes a mutually beneficial reciprocal facility sharing arrangement for the duration of the MVNO agreement.  Any disputes arising from the negotiation of an agreement pursuant to this Paragraph shall be resolved by the United States in its sole discretion.

B.       Divesting Defendants and Acquiring Defendant agree to support eSIM technology on smartphones, including working with handset equipment manufacturers to support

eSIM-capable phones to the extent such phones are technically capable of operating on Divesting Defendants or Acquiring Defendant's wireless networks.

C.      Divesting Defendants and Acquiring Defendant shall not discriminate against devices for the reason that the device uses remote SIM provisioning and eSIM technology to connect to the Defendants' wireless networks.  Examples of discrimination would include, but are not limited to, refusing to sell a device because it contains or uses an eSIM, and refusing to certify for network access a device because it uses an eSIM, but discrimination would not include the application of the Defendant's generally applicable device-locking policies to devices sold or leased by Defendant, provided that the locking policy is consistent with Paragraph VII(F), below.

D.      Divesting Defendants and Acquiring Defendant shall not discriminate against devices for the reason that the device allows multiple active profiles or for the reason that the device allows automatic switching between those profiles.  Examples of discrimination would include, but are not limited to, refusing to sell a device because it has these functions, and refusing to certify for network access a device because it has these functions.  For avoidance of doubt, nothing contained in this provision will prohibit Defendants from exercising discretion to determine whether a device or technology will harm or impede the operation of their respective wireless networks.

E.      Divesting Defendants and Acquiring Defendant shall make their network plans available to consumers who use on-screen selection software or applications from devices capable of being remotely provisioned on the same terms as offered to other consumers in that

geographic area.  This provision will apply to any device that is the same make and model as any device Defendants sell or otherwise certify for network access.

F.        Divesting Defendants and Acquiring Defendant agree to abide by the following unlocking principles for all methods of locking (including any limitation on the use of an eSIM to switch between profiles) for any postpaid or prepaid mobile wireless device that they lock to their network:  (i) Divesting Defendants and Acquiring Defendant will post on their respective websites their clear, concise, and readily accessible policies on postpaid and prepaid mobile device unlocking; (ii) Divesting Defendants and Acquiring Defendant will unlock mobile wireless devices for their customers and former customers in good standing and individual owners of eligible devices after the fulfillment of the applicable postpaid service contract, device financing plan, or payment of applicable early termination fee; (iii) Divesting Defendants and Acquiring Defendant will unlock prepaid mobile wireless devices no later than one (1) year after initial activation, consistent with reasonable time, payment, or usage requirements; and (iv) Divesting Defendants and Acquiring Defendant will automatically unlock devices remotely within two (2) business days of devices becoming eligible for unlocking, and without additional fee, provided, however, that if not technically possible to automatically unlock devices remotely, Divesting Defendants and Acquiring Defendant shall instead provide immediate notice to consumers that the devices are eligible to be unlocked.

## VIII.    FACILITIES-BASED EXPANSION AND ENTRY

A.——Divesting Defendants shall comply with all network build commitments made to the FCC related to the merger of T-Mobile and Sprint or the divestiture to Acquiring Defendant as of the date of entry of the Final Judgment, subject to verification by the FCC.  Acquiring

~~Defendant shall comply with the June 14, 2023 AWS-4, 700 MHz, H Block, and Nationwide 5G Broadband network build commitments made to the FCC as of the date of entry of the Final Judgment, subject to verification by the FCC.~~ Defendants shall provide to the United States and the Plaintiff States copies of any reports or submissions to the FCC that are associated with any FCC order(s) within three (3) business days of submission to the FCC.

~~B.      Divesting Defendants shall not interfere with Acquiring Defendant's efforts to deploy a nationwide facilities-based mobile wireless network, or to operate that network. Acquiring Defendant shall use its best efforts to serve subscribers over its facilities-based wireless network rather than over Divesting Defendants' wireless networks.~~

~~C.      On the first day of the first fiscal quarter following the entry of the Final Judgment and every one hundred and eighty (180) days thereafter, Acquiring Defendant shall submit to the United States and the Plaintiff States an update on the status of its wireless network deployment. This update will include a description of Acquiring Defendant's deployment efforts since Acquiring Defendant's last report, including (a) the number of towers and small cells deployed by Acquiring Defendant; (b) the spectrum bands over which Acquiring Defendant has deployed equipment; (c) Acquiring Defendant's progress in obtaining subscriber devices that operate on each of its licensed spectrum bands; (d) the percentage of the population of the United States covered by Acquiring Defendant's wireless network; (e) the number of mobile wireless subscribers served by Acquiring Defendant; (f) the amount of traffic transmitted to and from these subscribers over Acquiring Defendant's facilities-based wireless network; (g) the amount of traffic transmitted to and from these subscribers over Divesting Defendants' network pursuant~~

~~to a Full MVNO Agreement; and (h) any efforts by Divesting Defendants to interfere with Acquiring Defendant's efforts to deploy and operate its facilities-based wireless network.~~

## IX.    FINANCING

Divesting Defendants and Parent Defendants shall not finance any part of any purchase made pursuant to this Amended Final Judgment, unless the United States approves such financing in its sole discretion.

## X.    STIPULATION AND ORDER

Until the divestitures required by this Amended Final Judgment have been accomplished, Divesting Defendants shall take all steps necessary to comply with the Stipulation and Order entered by the Court.  Defendants shall take no action that would jeopardize the divestiture ordered by the Court.

## XI.    AFFIDAVITS

A.    Within twenty (20) calendar days of the filing of the Complaint in this matter, Divesting Defendants shall deliver to the United States and the Plaintiff States an affidavit that describes in reasonable detail all actions Divesting Defendants have taken and all steps Divesting Defendants have implemented on an ongoing basis to comply with Section X of this Amended Final Judgment.  Divesting Defendants shall deliver to the United States and the Plaintiff States an affidavit describing any changes to the efforts and actions outlined in Divesting Defendants' earlier affidavits filed pursuant to this Section within fifteen (15) calendar days after the change is implemented.

B.    Divesting Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one (1) year after such divestiture has been completed.

## XII.    APPOINTMENT OF MONITORING TRUSTEE

A.      Upon application of the United States, after consultation with the Plaintiff States, the Court shall appoint a Monitoring Trustee selected by the United States and approved by the Court.

B.      The Monitoring Trustee shall have the power and authority to monitor Defendants' compliance with the terms of this Amended Final Judgment and the Stipulation and Order entered by the Court, and shall have such other powers as the Court deems appropriate. The Monitoring Trustee shall be required to investigate and report on the Defendants' compliance with this Amended Final Judgment and the Stipulation and Order, and the Defendants' progress toward effectuating the purposes of this Amended Final Judgment, including but not limited to: Divesting Defendants' sale of the Divestiture Assets, Divesting Defendants' compliance with its requirements to make Cell Sites and Retail Locations available to Acquiring Defendant, and Acquiring Defendant's progress toward using the Divestiture Assets and other company assets to operate a retail mobile wireless network.

C.      Subject to Paragraph XII(E) of this Amended Final Judgment, the Monitoring Trustee may hire at the cost and expense of Divesting Defendants any agents, investment bankers, attorneys, accountants, or consultants, who will be solely accountable to the Monitoring Trustee, reasonably necessary in the Monitoring Trustee's judgment. Any such agents or consultants shall serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

D.      Defendants shall not object to actions taken by the Monitoring Trustee in fulfillment of the Monitoring Trustee's responsibilities under any Order of the Court on any

27

ground other than the Monitoring Trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the United States and the Monitoring Trustee within ten (10) calendar days after the action taken by the Monitoring Trustee giving rise to Defendants' objection.

E.	The Monitoring Trustee shall serve at the cost and expense of Divesting Defendants pursuant to a written agreement with Divesting Defendants and on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.  The compensation of the Monitoring Trustee and any agents or consultants retained by the Monitoring Trustee shall be on reasonable and customary terms commensurate with the individuals' experience and responsibilities.  If the Monitoring Trustee and Divesting Defendants are unable to reach agreement on the Monitoring Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of the appointment of the Monitoring Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Monitoring Trustee shall, within three (3) business days of hiring any agents or consultants, provide written notice of such hiring and the rate of compensation to Divesting Defendants and the United States.

F.	The Monitoring Trustee shall have no responsibility or obligation for the operation of Defendants' businesses.

G.	Defendants shall use their best efforts to assist the Monitoring Trustee in monitoring Defendants' compliance with their individual obligations under this Amended Final Judgment and under the Stipulation and Order.  The Monitoring Trustee and any agents or

28

consultants retained by the Monitoring Trustee shall have full and complete access to the personnel, books, records, and facilities relating to compliance with this Amended Final Judgment, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges.  Defendants shall take no action to interfere with or to impede the Monitoring Trustee's accomplishment of its responsibilities.

H.      After its appointment, the Monitoring Trustee shall file reports monthly, or more frequently as needed, with the United States setting forth Defendants' efforts to comply with Defendants' obligations under this Amended Final Judgment and under the Stipulation and Order.  To the extent such reports contain information that the Monitoring Trustee deems confidential, such reports will not be filed in the public docket of the Court.

I.      The Monitoring Trustee shall serve until the divestiture of all the Divestiture Assets is finalized pursuant to this Amended Final Judgment, until the buildout requirements are complete pursuant to Section VIII of this Amended Final Judgment, until any Full MVNO Agreement expires or otherwise terminates, or until the term of any transition services agreement pursuant to Paragraph IV(A)(4) of this Amended Final Judgment has expired, whichever is later.

J.      If the United States determines that the Monitoring Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend that the Court appoint a substitute Monitoring Trustee.

## XIII.    FIREWALL

A.      During the term of this Amended Final Judgment, the Divesting Defendants and Acquiring Defendant shall implement and maintain reasonable procedures to prevent

competitively sensitive information from being disclosed by or through implementation and execution of the obligations in this agreement or any associated agreements to components or individuals within the respective companies involved in the marketing, distribution, or sale of competing products.

B.      Divesting Defendants and Acquiring Defendant each shall, within thirty (30) business days of the entry of the Stipulation and Order, submit to the United States, the Plaintiff States, and the Monitoring Trustee a document setting forth in detail the procedures implemented to effect compliance with this Section.  Upon receipt of the document, the United States shall inform Divesting Defendants and Acquiring Defendant within thirty (30) business days whether, in its sole discretion, it approves of or rejects each party's compliance plan.  In the event that Divesting Defendants' or Acquiring Defendant's compliance plan is rejected, the United States shall provide Divesting Defendants or Acquiring Defendant, as applicable, the reasons for the rejection.  Divesting Defendants or Acquiring Defendant, as applicable, shall be given the opportunity to submit, within ten (10) business days of receiving a notice of rejection, a revised compliance plan.  If Divesting Defendants or Acquiring Defendant cannot agree with the United States on a compliance plan, the United States shall have the right to request that this Court rule on whether Divesting Defendants' or Acquiring Defendant's proposed compliance plan fulfills the requirements of this Section.

C.      Divesting Defendants and Acquiring Defendant shall:

1.      furnish a copy of this Amended Final Judgment and related Competitive Impact Statement, within sixty (60) calendar days of entry of the Stipulation and Order to (a) each officer, director, and any other employee that will receive competitively sensitive

information; and (b) each officer, director, and any other employee that is involved in (i) any contacts with the other companies that are parties to any transition services agreement contemplated by this Amended Final Judgment, or (ii) making decisions under any transition services agreement entered into pursuant to this Amended Final Judgment;

2.      furnish a copy of this Amended Final Judgment and related Competitive Impact Statement to any successor to a person designated in Paragraph XIII(C)(1) upon assuming that position;

3.      annually brief each person designated in Paragraph XIII(C)(1) and Paragraph XIII(C)(2) on the meaning and requirements of this Amended Final Judgment and the antitrust laws; and

4.      obtain from each person designated in Paragraph XI(C)(1) and Paragraph XI(C)(2), within thirty (30) calendar days of that person's receipt of the Amended Final Judgment, a certification that he or she (a) has read and, to the best of his or her ability, understands and agrees to abide by the terms of this Amended Final Judgment; (b) is not aware of any violation of the Amended Final Judgment that has not been reported to the company; and (c) understands that any person's failure to comply with this Amended Final Judgment may result in an enforcement action for contempt of court against each Defendant or any person who violates this Amended Final Judgment.

## XIV.    COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Amended Final Judgment, or of any related orders such as any Stipulation and Order, or of determining whether the Amended Final Judgment should be modified or vacated, and subject to any legally-

31

recognized privilege, from time to time authorized representatives of the United States, including agents and consultants retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

      1.    access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Amended Final Judgment; and

      2.    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews will be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Amended Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this Section will be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Amended Final Judgment, or as otherwise required by law.

D.      If at the time that Defendants furnish information or documents to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XV.    NO REACQUISITION OR SALE TO COMPETITOR

A.      Divesting Defendants and Parent Defendants shall not reacquire any part of the Divestiture Assets during the term of this Amended Final Judgment.

B.      Divesting Defendants and Parent Defendants shall not acquire any other assets that are substantially similar to the Divestiture Assets from the Acquiring Defendant during the terms of this Amended Final Judgment.

C.      Acquiring Defendant shall not sell, lease, or otherwise provide the right to use the Divestiture Assets (including, but not limited to, selling wholesale wireless network capacity) to any national facilities-based mobile wireless provider during the term of this Amended Final Judgment, except for a roaming arrangement, without prior approval of the United States; provided, however, that following the divestiture of the 800 MHz Spectrum Licenses, the Divesting Defendants will be permitted to lease back from the Acquiring Defendant up to 4 MHz of spectrum as needed for up to two (2) years following the divestiture of the 800 MHz Spectrum Licenses.

## XVI.    NOTIFICATIONS

33

A.    Acquiring Defendant shall notify the United States at least thirty (30) calendar days prior to any change in the corporation(s) that may affect compliance obligations arising under this Amended Final Judgment, including, but not limited to: a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Amended Final Judgment; the proposed filing of a bankruptcy petition; or a change in the corporate name or address.  Provided, however, that, with respect to any proposed change in the corporation(s) about which Acquiring Defendant learns fewer than thirty (30) calendar days prior to the date such action is to take place, Acquiring Defendant shall notify the United States as soon as is practicable after obtaining such knowledge.

B.    For transactions that are not subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Divesting Defendants shall not, without providing advanced notification to the United States, directly or indirectly acquire a financial interest, including through securities, loan, equity, or management interest, in any company that competes for the provision of mobile wireless retail services.  Acquiring Defendant shall not sell any of the Divestiture Assets or any currently held substantially similar assets, directly or indirectly, without providing advance notification to the United States.

C.    Such notification will be provided to the United States in the same format as, and per the instructions relating to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended.  Notification will be provided at least thirty (30) calendar days prior to acquiring any such interest, and will include,

34

beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within thirty (30) calendar days after notification, the United States makes a written request for additional information, Defendants shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting and certifying, in the manner described in Part 803 of Title 16 of the Code of Federal Regulations as amended, the truth, correctness, and completeness of all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section will be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section will be resolved in favor of filing notice. Defendants may, however, provide informal notice and request that the United States waive the requirement of formal notice for any transaction.

D. Defendants represent and warrant to the United States that they have disclosed all agreements between Acquiring Defendant and either Divesting Defendants or Parent Defendants related to the settlement of this action and their obligations and commitments put forth in this Amended Final Judgment. Defendants will provide thirty (30) days written notice to the United States of any intent to enter into or execute any amendment, supplement, or modification to any of the agreements between Divesting Defendants or Parent Defendants and Acquiring Defendant. Notwithstanding any provision to the contrary in the agreements between Divesting Defendants or Parent Defendants and Acquiring Defendant, Divesting Defendants or Parent Defendants may

35

not amend, supplement, terminate, or modify any of the agreements or any portion thereof without obtaining the consent of the United States in its sole discretion.  The United States will not withhold consent to amendment, supplementation, modification, or termination of any of the agreements or portion thereof if Divesting Defendants demonstrate to the United States, in its sole discretion, that a refusal to amend, supplement, modify, or terminate the agreements would prevent Divesting Defendants from meeting any build out requirements imposed by the FCC.

## XVII.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Amended Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Amended Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XVIII.    ENFORCEMENT OF AMENDED FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Amended Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Amended Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefore by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.    The Amended Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition harmed by the challenged conduct.  Defendants agree that they may be held in contempt of, and that the Court

36

may enforce, any provision of this Amended Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Amended Final Judgment should not be construed against either party as the drafter.

C.      In any enforcement proceeding in which the Court finds that Defendants have violated this Amended Final Judgment, the United States may apply to the Court for a one-time extension of this Amended Final Judgment, together with such other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Amended Final Judgment against a Defendant, whether litigated or resolved prior to litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.      For a period of four (4) years after the expiration or termination of the Amended Final Judgment pursuant to Section XIX, if the United States has evidence that a Defendant violated this Amended Final Judgment before it expired or was terminated, the United States may file an action against that Defendant in this Court requiring that the Court order (i) Defendant to comply with the terms of this Amended Final Judgment for an additional term of at least four (4) years following the filing of the enforcement action under this Section, (ii) any appropriate contempt remedies, (iii) any additional relief needed to ensure that Defendant complies with the terms of the Amended Final Judgment, and (iv) fees or expenses as called for in Paragraph XVIII(C).

### XIX.    EXPIRATION OF AMENDED FINAL JUDGMENT

Unless the Court grants an extension, this Amended Final Judgment expires April 1, 2027, except that after April 1, 2025, this Amended Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestitures, buildouts and other requirements have been completed and that the continuation of the Amended Final Judgment no longer is necessary or in the public interest.

### XX.    PUBLIC INTEREST DETERMINATION

Entry of this Amended Final Judgment is in the public interest.  The parties have previously complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of the Final Judgment, the related Competitive Impact Statement, any comments thereon, and the United States' responses to comments.  Based upon the record before the Court, entry of this Amended Final Judgment is in the public interest.

Date: _____

_____

United States District Judge