**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA, *et al.*,

     *Plaintiffs,*

v.

DEUTSCHE TELEKOM AG, *et al.*,

     *Defendants.*

Case No. 1:19-cv-02232-TJK

---

**UNOPPOSED MOTION AND MEMORANDUM OF THE UNITED STATES
<u>FOR ENTRY OF SECOND AMENDED FINAL JUDGMENT</u>**

On May 19, 2026, Plaintiff the United States filed an Unopposed Motion for Partial

Termination of Amended Final Judgment (Dkt. 149) ("Motion") seeking partial termination of the

Amended Final Judgment ("AFJ") in this matter to terminate certain AFJ provisions to relieve

Defendant EchoStar Corporation ("EchoStar") of the obligation to build and operate a mobile

wireless radio network. As explained in the Motion and accompanying memorandum, the United

States asked the Court to defer ruling on the Motion until after a 30-day period to allow for public

comment. The comment period has now expired and no comments were received.

With no party opposed to the motion and no public comment having been received, the

United States now respectfully moves for entry of the Proposed Second Amended Final Judgment.

Attached for the Court's convenience are the Proposed Order granting the Motion (in the same

1

form as filed with the Motion, Dkt. 149-4) and the Proposed Second Amended Final Judgment (also in the same form as filed with the Motion, Dkt. 149-1). As summarized below and described in more detail in the Motion, granting this relief will allow EchoStar to continue as a mobile wireless services provider and for the remaining provisions of the AFJ to continue in effect until the Second Amended Final Judgment expires on April 1, 2027.

## I.    BACKGROUND

The Final Judgment, jointly proposed by the parties on July 26, 2019 and entered by the Court on April 1, 2020, sought to address the harm the United States alleged would result from the merger of T-Mobile US, Inc. ("T-Mobile") and Sprint Corporation ("Sprint").[1] Among other provisions, the AFJ required EchoStar Corporation[2] to enter as a new provider of mobile wireless services and to build and operate a new nationwide mobile wireless radio network using spectrum that it had spent many years and billions of dollars acquiring but had not previously put into use. Since then, EchoStar acquired the Boost wireless business from Sprint, launched its service using T-Mobile's network, and built, by June 2023, a new 5G mobile wireless radio network covering 70% of the United States population.

EchoStar was not, however, able to satisfy the FCC that it met separate buildout requirements agreed to with the FCC at the same time as the initial Final Judgment was proposed. Under these FCC commitments, which were due to be met by June 2025, EchoStar agreed that its network would cover a certain percentage of the population within each individual license area, not

---

[1] The current Amended Final Judgment was entered on October 23, 2023 (Dkt. 139) after the Court granted the parties' consent motion to modify the original consent decree. (Dkt. 138)
[2] On December 31, 2023, EchoStar Corporation acquired DISH Network Corporation, the entity named in the Amended Final Judgment. *See* EchoStar Corp. 2023 Annual Report/10-K (Feb. 29, 2024), *available at* https://ir.echostar.com/static-files/c0c6367b-a6dc-455c-87c4-5d30a5127048.

just nationally. By September 2024, EchoStar recognized that, while it expected to meet its June 2025 deadlines for many spectrum license areas, it might not meet them for a substantial number of license areas. In September 2024 the FCC granted extensions to these deadlines, contingent on EchoStar meeting interim commitments in December 2024 and June 2025.

Although EchoStar has asserted that it met its December 2024 interim commitments and would meet those due in June 2025, in May 2025 the FCC expressed concern that EchoStar had not done so, and that, by extension, it would not meet the original June 2025 deadlines. Under the FCC's licensing rules, failure to meet buildout deadlines for any spectrum license results in automatic forfeiture of the license, and EchoStar's failure to meet its June 2025 deadlines could have resulted in automatic forfeiture of several hundred spectrum licenses across the country in multiple spectrum bands. Automatic forfeiture of this spectrum would have forced EchoStar to shut down the radio network it built pursuant to the AFJ, and the prospect of this forfeiture led EchoStar to express doubt in its SEC filings about its ability to continue as a going concern, raising the prospect of bankruptcy, liquidation, and its exit as a mobile wireless services provider.

To avoid these consequences, in September 2025 EchoStar agreed to sell the bulk of the spectrum supporting its radio network in separate transactions with AT&T Inc. ("AT&T") and Space Exploration Technologies, Inc. ("SpaceX"). After EchoStar announced these transactions, the FCC informed EchoStar that it would be taking steps to conclude its compliance investigations, and the FCC approved EchoStar's spectrum sales to AT&T and SpaceX on May 12, 2026. Because these transactions will effectively foreclose EchoStar's ability to operate a nationwide mobile wireless radio network, the United States moved to terminate the portion of the AFJ that requires EchoStar to build and operate its radio network.

3

## II.    OPPORTUNITY FOR PUBLIC COMMENT

Although the Antitrust Procedures and Penalties Act ("Tunney Act"), 15 U.S.C. § 16(b)-(h), does not by its terms apply to the modification and termination of consent decrees,[3] the United States recognized that seeking public comment may nevertheless be appropriate here.[4] The United States posted the motion papers on its public website as soon as the Motion was filed and invited comments to be submitted by June 18, 2026.[5] In addition to service via the ECF system on interested third parties who have previously appeared in this matter, the Motion was reported in competition law and telecommunications industry publications, which included reporting the opportunity for public comment.[6] Given that these publications reach a wide audience within the competition law and communications industry communities,[7] the United States believes that

---

[3] *See United States Am. Cyanamid*, 719 F.2d 558, 565 & n.7 (2d Cir. 1983) (noting that the Tunney Act can provide "useful guidance" to the court with respect to decree terminations).

[4] The parties filed a previous consent motion to modify the AFJ to extend the deadline for EchoStar to acquire certain 800 MHz spectrum from T-Mobile, which the Court granted after the parties suggested that further public comment was not necessary. *See* Consent Motion to Modify Final Judgment at 5-6, Dkt. 137 (Oct. 18, 2023); Order Granting Consent Motion to Modify Final Judgment, Dkt. 138 (Oct 23, 2023). The United States suggested inviting public comment here because the proposed termination of EchoStar's radio network obligations represents a more substantial modification to the AFJ than the previous consent motion.

[5] *See* Department of Justice webpage, "U.S. and Plaintiff States v. Deutsche Telekom AG, et al." ("DOJ Case Webpage"), *available at* https://www.justice.gov/atr/case/us-et-al-v-deutsche-telekom-ag-et-al.

[6] *See* Law360, "DOJ Looks to Nix Dish's Requirement to Operate 5G Network" (May 20, 2026) (also posting a copy of the United States' Motion and memorandum inviting public comment), *available at* https://www.law360.com/articles/2479761/doj-looks-to-nix-dish-s-requirement-to-operate-5g-network; Communications Daily, "FCC's AWS-3 Reauction Nets Only $54M in Bids on Day 1" (June 3, 2026) (noting that "comments are due June 18 on DOJ's proposed elimination of a federal obligation that EchoStar build and operate a mobile wireless radio network" and providing a link to the DOJ Case Webpage), *available at* https://communicationsdaily.com/news/2026/06/03/fccs-aws3-reauction-nets-only-54m-in-bids-on-day-1-2606020068.

[7] *See* Law360 "Competition" webpage (noting Competition Law360 "provides breaking news and analysis on antitrust law" and that coverage "includes high-stakes antitrust litigation and

anyone who might have an interest in the pending Motion would have been informed of the

opportunity to provide comment, and that no further comment period or proceedings are necessary

before the Court decides the Motion.

### III.    STANDARD OF JUDICIAL REVIEW

Where the parties to a consent decree later consent to a proposed modification, the issue

before the Court is whether the modification is in the public interest.[8] This public interest standard

is the same standard that a court applies in reviewing an initial consent judgment in a federal

government antitrust case.[9] The "relevant inquiry" for the Court is limited to determining "whether

there is a factual foundation for the government's decisions such that its conclusions regarding the

proposed settlement are reasonable."[10]

The D.C. Circuit has advised that a district court "should not reject an agreed-upon

modification unless 'it has exceptional confidence that adverse antitrust consequences will

---

government enforcement actions, as well as legislative and regulatory developments"), *available at* https://www.law360.com/about/competition; "About Communications Daily" webpage (noting that it has been "[d]ubbed 'the bible of the telecom industry' by the Washington Post," and asserting that it is "the authoritative source for telecom regulation, legislation and policy development news"), *available at* https://communicationsdaily.com/about.

[8] "When all parties to a decree assent to a particular modification, the relevant inquiry for the court is whether the resulting array of rights and liabilities comports with the 'public interest.'" *United States v. W. Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990) (citations omitted) (finding that the district court erred by not applying the public interest standard to the court's review of the Bell Operating Companies' unopposed motion to lift a restriction in the decree). *See also United States v. Paramount Pictures, Inc.*, 2020 WL 4573069, at *3 (S.D.N.Y. Aug. 7, 2020) (citing *United States v. Loew's Inc.*, 783 F. Supp. 211, 213 (S.D.N.Y. 1992), explaining that the court's role is to determine whether consent termination of a decree is "in the public interest").

[9] *See United States v. W. Elec.*, 900 F.2d at 295; 15 U.S.C. § 16(e)(1).

[10] *United States v. XCL Res. Holdings, LLC*, No. 25-CV-00041, 2026 WL 29073, at *5 (D.D.C. Feb. 4, 2026), *judgment entered,* No. 25-CV-00041, 2026 WL 352678 (D.D.C. Feb. 4, 2026) (quoting *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 15–16 (D.D.C. 2007)); s*ee also United States v. U.S. Airways Grp., Inc.*, 38 F. Supp. 3d 69, 75 (D.D.C. 2014) (explaining that the "court's inquiry is limited" in Tunney Act settlements).

result.'"[11] Similarly, it is "not up to the court to reject an agreed-on change simply because the proposal diverge[s] from *its* view of the public interest."[12] The "court should also bear in mind the *flexibility* of the public interest inquiry: the court's function is not to determine whether the resulting array of rights and liabilities 'is the one that will *best* serve society,' but only to confirm that the resulting settlement is 'within the *reaches* of the public interest.'"[13] The district court's analysis, therefore, "must accord due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its view of the nature of the case."[14]

## IV.    ENTRY OF THE PROPOSED SECOND AMENDED FINAL JUDGMENT IS IN THE PUBLIC INTEREST

Entry of the proposed Second Amended Final Judgment is in the public interest because it aligns the requirements of this Court's order with the consequences of EchoStar's inability to satisfy the FCC that it met its buildout obligations. The United States has determined that there is no available outcome that would allow EchoStar to continue as a mobile radio network operator, and that the proposed transactions represent the best outcome for competition under the circumstances. Rather than declaring bankruptcy and exiting the marketplace altogether, EchoStar can now remain in business as a mobile wireless services provider for years after the AFJ

---

[11] *United States v. Microsoft Corp.*, 56 F.3d 1448, 1460 (D.C. Cir. 1995) (quoting *United States v. W. Elec. Co.*, 993 F.2d 1572, 1577 (D.C. Cir. 1993)).

[12] *United States v. W. Elec. Co.*, 993 F.2d at 1577 (emphasis in original). The D.C. Circuit went on to state that a district court is to approve an uncontested modification "so long as the resulting array of rights and obligations is within the zone of settlements consonant with the public interest *today*." *Id.* at 1576 (quoting *W. Elec. Co.*, 900 F.2d at 307 (emphasis in original)).

[13] *United States v. Microsoft Corp.*, 56 F.3d at 1460 (quoting *W. Elec. Co.*, 900 F.2d at 309 (emphasis in original) (citations omitted)). *See also United States v. Baroid Corp.*, 130 F. Supp. 2d 101, 103 (D.D.C. 2001) (noting that if all parties consent to the modification, the public interest standard "is necessarily deferential, as the expertise of the Antitrust Division must be respected").

[14] *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003).

expires.[15] In conjunction with the agreement to acquire EchoStar's spectrum, AT&T agreed to host

EchoStar's mobile wireless customers on AT&T's network at least until 2031, with extensions at

EchoStar's option through 2035. EchoStar will also be able to offer its subscribers SpaceX's

planned "direct-to-cell" ("D2C") mobile satellite service when that service is expected to come

online in 2028, relying on the spectrum SpaceX is acquiring from EchoStar. Termination of

EchoStar's radio network obligation can be accomplished with targeted revisions to Section VIII of

the AFJ, as set forth in the Proposed Order, and all other provisions of the AFJ will remain in place

---

[15] Entities affiliated with EchoStar recently made a bankruptcy filing. *See* Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation, DISH Wireless L.L.C., and Their Respective Affiliated Debtors and Debtors in Possession, No. 26-90627 (CML) (Bankr. S.D. Tex., Jun. 30, 2026) *available at* https://document.epiq11.com/document/getdocumentsbydocket/?docketId=1232528&projectCode=PNY&docketNumber=6&source=DM; Declaration of John Swieringa in Support of the Chapter 11 Petitions and Requests for First Day Relief, No. 26-90627 (CML), Document 19, at ¶ 49 ("Swieringa Decl.") (Bankr. S.D. Tex., Jun. 30, 2026), *available at* https://document.epiq11.com/document/getdocumentbycode?docId=4588844&projectCode=PNY&source=DM). This filing is unrelated to the issues before the Court on this Motion or to EchoStar's ongoing obligations under the Second Amended Final Judgment because EchoStar's core mobile network (i.e., not its radio network) and subscribers were contributed in August 2025 by DISH Wireless L.L.C. to Boost SubscriberCo LLC, a wholly owned subsidiary of EchoStar that is unaffected by the bankruptcy. *See* Swieringa Decl. ¶ 13.

Instead, the Chapter 11 Plan submitted with the filing implements an agreement with certain creditors to "effectuate a balance sheet restructuring" for EchoStar's direct-broadcast satellite TV business, and it establishes a centralized, court-supervised process for addressing claims from infrastructure providers arising from EchoStar's inability to continue operating its mobile wireless radio network. *See* Swieringa Decl. at ¶ 120. The Chapter 11 filing was prompted in part by the inability of EchoStar's DBS satellite TV business to make a $2 billion payment due July 1, 2026, and the proceeds from the AT&T spectrum sale are expected to fund that payment and to fund an escrow account established by the FCC for payments to eligible infrastructure providers affected by the events described in the Motion. *See id.* at ¶¶ 16, 49; *see also id.* at ¶¶ 110-111 (describing the FCC escrow account); *see also* Motion at 5-10 (discussing events leading to the AT&T and SpaceX spectrum transactions) and 10-17 (discussing EchoStar's new identity and the portions of the Second Amended Final Judgment that will remain in effect notwithstanding the partial termination sought in the Motion).

until the decree expires on April 1, 2027.

## V.   CONCLUSION

With no party to this case opposing this Motion and no public comment having been

received, the United States respectfully requests that the Court now grant the Motion and enter

the Proposed Second Amended Final Judgment.

Dated: July 10, 2026                          Respectfully submitted,

                                              FOR PLAINTIFF
                                              UNITED STATES OF AMERICA


                                              _____/s/_____
                                              Frederick S. Young (D.C. Bar No. 421285)
                                              U.S. Department of Justice
                                              Antitrust Division
                                              450 Fifth Street NW, Suite 7000
                                              Washington, D.C. 20530
                                              (202) 725-2503
                                              Frederick.young@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Frederick S. Young, hereby certify that on July 10, 2026, I caused a copy of the foregoing Unopposed Motion and Memorandum of the United States for Entry of Second Amended Final Judgment, together with the Proposed Order and Proposed Second Amended Final Judgment, to be served upon all counsel of record via the Court's CM/ECF system.

/s/
_____
Frederick S. Young (D.C. Bar No. 421285)
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7000
Washington, D.C. 20530
(202) 725-2503
Frederick.young@usdoj.gov

9